ACCEPTED
15-25-00030-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
3/19/2025 4:35 PM
CHRISTOPHER A. PRINE
CLERK

NO. _____

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
3/19/2025 4:35:10 PM
CHRISTOPHER A. PRINE
Clerk

IN RE CITY OF DENTON; GERARD HUDSPETH, Mayor of Denton; BRIAN BECK, Mayor Pro Tem of Denton, VICKI BYRD, PAUL MELTZER, JOE HOLLAND, BRANDON CHASE McGEE, and CHRIS WATTS, Members of the City Council of Denton; SARA HENSLEY, City Manager of Denton; and DOUG SHOEMAKER, Chief of Police of Denton, in their official capacities,
***RELATORS***

Original Proceeding from the 481st Judicial District Court,
Denton County, Texas
Cause No. 24-1005-481

## PETITION FOR WRIT OF MANDAMUS

Mack Reinwand
State Bar No. 24056195
Devin Alexander
State Bar No. 24104554
**DENTON CITY**
  **ATTORNEY'S OFFICE**
215 East McKinney
Denton, Texas 76201
Telephone:  (940) 349-8333
Facsimile:   (940) 382-7923

Jose E. de la Fuente
State Bar No. 00793605
James F. Parker
State Bar No. 24027591
Gabrielle C. Smith
State Bar No. 24093172
Sydney P. Sadler
State Bar No. 24117095
**LLOYD GOSSELINK**
  **ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone: (512) 322-5800
Facsimile:  (512) 472-0532

**ATTORNEYS FOR RELATORS**
**TEMPORARY RELIEF REQUESTED**

## IDENTITY OF PARTIES AND COUNSEL

**Relators:**
Gerard Hudspeth, Mayor of Denton, Brian Beck, Mayor Pro Tem of Denton, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee and Chris Watts, Members of the City Council of Denton, Sara Hensley, City Manager of Denton, and Doug Shoemaker, Chief of Police of Denton[1]

**Attorneys for Relators:**
Jose E. de la Fuente
James F. Parker
Gabrielle C. Smith
Sydney P. Sadler
**LLOYD GOSSELINK**
 **ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701

Mack Reinwand
State Bar No. 24056195
Devin Alexander
State Bar No. 24104554
**DENTON CITY**
 **ATTORNEY'S OFFICE**
215 East McKinney
Denton, Texas 76201

**Real Party in Interest:**
State of Texas

**Counsel for Real Party in Interest:**
Zachary L. Rhines
Kyle Tebo
**OFFICE OF THE ATTORNEY**
 **GENERAL OF TEXAS**
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

**Respondent:**
Honorable Crystal Levonius
Judge Presiding
481st Judicial District Court
Denton County, Texas

1450 E. McKinney St.
4th Floor
Denton, Texas 76209

---

[1]   Doug Shoemaker is no longer the Chief of Police of Denton, and thus is not a proper defendant.  The current Chief of Police of Denton is Jessica Robledo.

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................2

TABLE OF CONTENTS.................................................................3

INDEX OF AUTHORITIES...........................................................5

STATEMENT OF THE CASE..........................................................9

STATEMENT OF JURISDICTION AND STANDARD OF REVIEW...11

INTRODUCTION.....................................................................12

ISSUES PRESENTED FOR REVIEW ...............................................16

STATEMENT OF FACTS ...........................................................17

    A.    The Enforcement Ordinance immediately became law when approved by the voters through the ballot initiative process........................................17

    B.    The State sues over the Enforcement Ordinance.................17

    C.    The trial court ordered discovery before determining the matter of jurisdiction. ...............................18

SUMMARY OF THE ARGUMENT.................................................20

ARGUMENT & AUTHORITIES ....................................................21

    A.    The trial court's Discovery Order is a clear abuse of discretion. .....................................................21

        1.    The facts are not in dispute—only the law is—thus the trial court has everything it needs to determine the matter of jurisdiction. ...................................................22

        2.    The State has not identified what "jurisdictional" facts need to be explored. ...................33

        3.    The discovery ordered by the trial court exceeds the scope of permissible discovery under the Rules........................................41

    B.    Mandamus relief is appropriate here because Relators have no available or adequate remedy by appeal. ............................................................48

1.    It is not inequitable or inappropriate to refuse jurisdictional discovery when the undisputed facts and publicly available evidence established that Respondent lacks subject-matter jurisdiction over the case. ................... 48

2.    Delay of a decision on their Plea to the Jurisdiction to conduct discovery is prejudicial to Relators. ............................................... 50

3.    An appeal could not cure the ramifications of compliance of the improvidently granted Discovery Order. ........................................ 52

CONCLUSION AND PRAYER ............................................. 56

CERTIFICATE OF EVIDENCE ............................................ 58

CERTIFICATE OF COMPLIANCE ...................................... 59

INDEX OF APPENDICES ................................................... 60

# INDEX OF AUTHORITIES

**Cases**

*Becky, Ltd. v. City of Cedar Park,*
No. 03-15-00259-CV, 2017 LEXIS 4591
(Tex. App.—Austin May 19, 2017, no pet.) ....................................... 25

*Bland Indep. Sch. Dist. v. Blue,*
34 S.W.3d 547 (Tex. 2000). ..................................................... 23

*Bybee v. Fireman's Fund Ins. Co.,*
331 S.W.2d 910 (1960) ......................................................... 23

*Cent. Power & Light Co. v. City of San Juan,*
962 S.W.2d 602
(Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.) .................... 30, 52

*City of Austin v. Whittington,*
384 S.W.3d 766 (Tex. 2012) .................................................... 30

*City of Corpus Christi v. Bayfront Assocs.,*
814 S.W.2d 98 (Tex.App.—Corpus Christi 1991, writ denied) .......... 22

*City of Dall. v. Turley,*
316 S.W.3d 762 (Tex. App.—Dallas 2010, pet. denied) ..................... 24

*City of Dall. v. Russell (In re City of Dall.),*
No. 05-18-00289-CV, 2018 LEXIS 8784
(Tex. App.—Dallas Oct. 26, 2018, no pet.) ...................................... 43

*City of Denton v. Grim,*
694 S.W.3d 210 (Tex. 2024), reh'g denied (Aug. 30, 2024) ............... 30

*City of El Paso v. Heinrich,*
284 S.W.3d 366 (Tex. 2009) .................................................... 26

*City of Galveston v. Gray,*
93 S.W.3d 587
(Tex. App.—Houston [14th Dist.] 2002, pet. denied) ............. 14, 34, 54

*City of San Angelo v. Smith,*
    69 S.W.3d 303
    (Tex. App.—Austin 2002, pet. denied) ..............................................23

*City of San Benito v. Rio Grande Valley Gas Co.,*
    109 S.W.3d 750 (Tex. 2003) ...........................................................30

*Clear Lake City Water Authority v. Salazar,*
    781 S.W.2d 347
    (Tex.App.--Houston [14th Dist.] 1989, writ denied)..........................22

*Dall. Area Rapid Transit v. Whitley,*
    *104 S.W.3d 540 (Tex. 2003)* ...........................................................24

*Dohlen v. City of San Antonio,*
    643 S.W.3d 387 (Tex. 2022) ...........................................................24

*El Paso v. Madero Dev.,*
    803 S.W.2d 396 (Tex.App.-El Paso 1991, writ denied) .....................22

*Eli Lilly & Co. v. Marshall,*
    829 S.W.2d 157 (Tex. 1992) (orig. proceeding)..................................14

*In re Bexar Medina Atascosa Cntys. Water Control &*
    *Improvement Dist. No. One,*
    No. 04-24-00538-CV, 2025 LEXIS 787
    (Tex. App.—San Antonio Feb. 12, 2025, no pet. h.) ............... 34, 44, 53

*In re CSX Corp.,*
    124 S.W.3d 149 (Tex. 2003) ...........................................................41

*In re Guetersloh,*
    326 S.W.3d 737
    (Tex. App.—Amarillo 2010, orig. proceeding) ...................................14

*In re Greenwell,*
    160 S.W.3d at 288.........................................................................14

*In re Lamar Univ.*,
   No. 09-18-00241-CV, 2018 LEXIS 6495
   (Tex. App.—Beaumont Aug. 16, 2018, orig. proceeding) ............. 34, 54

*In re Prudential Ins. Co. of Am.*,
   148 S.W.3d 124 (Tex. 2004) ........................................................... 21

*Joe v. Two Thirty Nine J.V.*,
   145 S.W.3d 150 (Tex. 2004) .......................................................... 36

*Klumb v. Houston Mun. Emples. Pension Sys.*,
   405 S.W.3d 204 (Tex. App.—Houston [1st Dist.] 2013) ............... 29,35

*Lubbock County Water Control v. Church & Akin, L.L.C.*,
   442 S.W.3d 297 (Tex. 2014) .......................................................... 24

*Mayhew v. Sunnyvale*,
   774 S.W.2d 284 (Tex.App.-Dallas 1989, writ denied) ........................ 22

*Quested v. City of Houston*,
   440 S.W.3d 275 (Tex. App.—Houston [14th Dist.] 2014, no pet.)...... 36

*Safety-Kleen Corp. v. Garcia*,
   945 S.W.2d 268 (Tex. App.—San Antonio 1997, orig. proceeding)... 14

*Sosa v. Corpus Christi*,
   739 S.W.2d 397 (Tex. App.—Corpus Christi 1987, no writ) .............. 22

*Southwestern Bell Tel., L.P. v. Emmett*,
   459 S.W.3d 578 (Tex. 2015) ...................................................... 25, 33

*Tabrizi v. City of Austin*,
   551 S.W.3d 290 (Tex. App.—El Paso 2018, no pet.)............... 25, 26, 29

*Tex. Ass'n of Bus. v. Texas Air Control Bd.*,
   852 S.W.2d 440 (Tex.1993) ........................................................... 22

*Tex. Dep't of Parks & Wildlife v. Miranda*,
   133 S.W.3d 217 (Tex. 2004) ................................................. 22, 37, 50

*Tex. Dep't of Transp.  v. Sunset Transp., Inc.*,
　357 S.W.3d 691 (Tex. App.—Austin 2011, no pet.) ............................ 25

*Tex. Nat. Res. Conservation Comm'n v. White*,
　46 S.W.3d 864 (Tex. 2001); ................................................................ 23

*Tex. S. Univ. v. Young*,
　682 S.W.3d 886 (Tex. 2023) (Young, J. concurring) ..................... 13, 42

*Texaco, Inc. v. Sanderson*,
　898 S.W.2d 813 (Tex. 1995) ............................................................. 42, 44

*Titan Transp., LP v. Combs*,
　433 S.W.3d 625 (Tex. App.—Austin 2014, pet. denied) ..................... 28

*Tooke v. City of Mexia*,
　197 S.W.3d 325 (Tex. 2006) ................................................................ 37

## Statutes

Tex. Gov't Code § 22.220 ........................................................................ 11

Tex. Gov't Code § 22.221 ........................................................................ 11

Tex. Gov't Code § 551.102 ......................................................... 30, 52, 60

Tex. Loc. Gov't Code § 370.003 ..................................................... *passim*

## Rules

Tex. R. Civ. P. 192.4 ................................................................. 45, 46, 60

## STATEMENT OF THE CASE

The State of Texas ("State") sued the City of Denton ("City") and certain named officials ("Officials") for declaratory and injunctive relief over an ordinance passed by the citizens of Denton regarding enforcement of low-level marijuana offenses ("Enforcement Ordinance"). The City and the Officials filed a Plea to the Jurisdiction based on governmental immunity. (MR 0029.) The Plea to the Jurisdiction was set for hearing, but the hearing was continued owing to the court running out of time on the hearing date. (MR 0251.)

The State subsequently served written discovery and notices of oral deposition, which Relators resisted by filing Motions for Protective Order. (MR 0249.) The State moved to compel discovery, and the trial court set a hearing on the discovery motions and Relators' Plea to the Jurisdiction to take place on December 12, 2024. (MR 0315.)

At the December 12, 2024 hearing on the discovery motions and the Plea to the Jurisdiction, Judge Crystal Levonius of the 481st Judicial District, Denton County, Texas, without conducting any jurisdictional analysis, broadly granted written discovery by direction from the bench and continued the hearing on the Plea to the Jurisdiction pending discovery.

9

(MR 0645:24–0646:4.) On February 6, 2025, Judge Levonius entered the Discovery Order, consistent with her direction from the bench at the December 12, 2024 hearing. (MR 0001.)

**STATEMENT OF JURISDICTION AND STANDARD OF REVIEW**

This Court has broad jurisdiction to issue a writ of mandamus pursuant to Texas Government Code Section 22.221(a), and jurisdiction over this particular case in which the State is a party pursuant to Texas Government Code Section 22.220(d)(1).

Mandamus is appropriate here because the trial court abused its discretion in ordering the City to respond to voluminous improper and unnecessary "jurisdictional" discovery when no jurisdictional facts are at issue.

## INTRODUCTION

*"[T]his is a case of pure law and discovery is unneeded."*

(MR 0010 ¶ 1 (emphasis added).)

Relators in this case are immune from the trial court's jurisdiction and filed a Plea to the Jurisdiction to that effect. Despite both the State's recognition cited above and a well-developed law limiting "jurisdictional discovery" to targeted discovery essential to resolving disputed jurisdictional fact(s), the trial court ordered Relators to respond to extensive discovery before it will consider their Plea. This Petition seeks relief from that order (the "Discovery Order").

The State claims that Relators acted *ultra vires*, but in this case, there is just one relevant act that could possibly be *ultra-vires*: the adoption of a policy. That is, Local Government Code Section 370.003, the basis of the State's suit, prohibits one thing.

Sec. 370.003. MUNICIPAL OR COUNTY POLICY REGARDING ENFORCEMENT OF DRUG LAWS. The governing body of a municipality, the commissioners court of a county, or a sheriff, municipal police department, municipal attorney, county attorney, district attorney, or criminal district attorney may not adopt a policy under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law.

The relevant legal question requires a simple two-part analysis: 1) did any defendant covered by Section 370.003 2) adopt a policy not to fully

12

enforce drug laws? In a case involving public entities and public acts, all of the facts are not only readily knowable, but known. Yet, the State now says it needs stacks of "jurisdictional discovery" to discover still undefined "jurisdictional facts." But the State was required by the rules to have a good-faith basis to claim that Relators wrongfully adopted such a policy *before* filing suit. The trial court thus can and should determine the single narrow question of law—which is dispositive of the question of jurisdiction—without the need for *any* discovery, as the State itself pleaded in its live Petition. (MR 0010 at ¶ 1.)

Though targeted jurisdictional discovery *can* be ordered in certain circumstances, "[t]argeted discovery **cannot be allowed** unless—and only to the extent that—it is **essential** to the resolution of a jurisdictional question." *Tex. S. Univ. v. Young*, 682 S.W.3d 886, 889 (Tex. 2023) (Young, J. concurring) (emphasis added).

The trial court never determined what targeted discovery was necessary and the City contends that targeted discovery is not necessary here, but the State went beyond *any* notion of "targeted" discovery, fishing to try to find *something*. The trial court has ordered the Relators to respond to <u>more than 50 distinct discovery requests</u> within sixty days of the date of

13

the Discovery Order, leaving the door open for City's officials – the City Manager and Council Members – to be deposed following the conclusion of written discovery. The trial court's Discovery Order constitutes a clear abuse of discretion.

Thus, this Court should order the trial court to withdraw its order requiring Relators to comply with the Discovery Order before the trial court takes up the City's Plea to the Jurisdiction. This Court should further order the trial court to hear the City's Plea to the Jurisdiction in its entirety, or alternatively, on the grounds that only need to be decided as a matter of law.[2]

---

[2] *See Eli Lilly & Co. v. Marshall*, 829 S.W.2d 157, 158 (Tex. 1992) (orig. proceeding) (granting mandamus to require a trial judge to consider and rule on a motion to seal documents containing alleged trade secrets when the trial judge had refused to consider the matter); *In re Guetersloh*, 326 S.W.3d 737, 741 (Tex. App.—Amarillo 2010, orig. proceeding) (granting mandamus to require the trial judge to hear and rule on a motion to transfer venue when he had refused to hear the matter); *In re Greenwell*, 160 S.W.3d 286, 288 (Tex. App.—Texarkana 2005, orig. proceeding) (granting mandamus to require the trial judge to rule on a city's motion for partial summary judgment based on governmental immunity when the judge refused to rule on the motion until after trial); *Safety-Kleen Corp. v. Garcia*, 945 S.W.2d 268, 269–70 (Tex. App.—San Antonio 1997, orig. proceeding) (granting mandamus to require a trial judge to hear and rule on a motion to compel answers to interrogatories when the trial judge had indicated that he would not consider the motion); *In re Greenwell*, 160 S.W.3d at 288; *see City of Galveston v. Gray*, 93 S.W.3d 587, 590 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) (granting mandamus to require the trial judge to rule on a city's plea to the jurisdiction based on governmental immunity when the judge refused to rule on the motion and ordered the parties to go forward with discovery).

Finally, to allow this Court sufficient time to evaluate this Petition for Mandamus, Relators further request that the Court stay the trial court's Discovery Order and any obligation imposed by the Discovery Order pending this Court's determination of the Petition. *See* Relators' Motion for Temporary Relief and Stay of Discovery Order, filed contemporaneously with this Petition.

# ISSUES PRESENTED FOR REVIEW

***Issue Presented:***   Did the trial court abuse its discretion and leave Relators without an adequate remedy by appeal by ordering "jurisdictional" discovery and continuing the hearing on the Plea to the Jurisdiction?

***Issue Presented:***   Did the trial court abuse its discretion by ordering discovery that violated the parameters of allowable discovery in the Texas Rules of Civil Procedure?

**STATEMENT OF FACTS**

**A.    The Enforcement Ordinance immediately became law when approved by the voters through the ballot initiative process.**

Consistent with the Denton City Charter, the City Secretary presented the City's voters an initiative petition for the proposed Enforcement Ordinance to the City Council on June 7, 2022. (MR 0080.) The City Council received a valid certification from the City Secretary, stating the petition was properly signed by the requisite number of qualified voters.  (MR 0080.)

The proposition was placed on the November 8, 2022 general election ballot as required by the City Charter.  (MR 0090–91, 0189.) Voters overwhelmingly approved Proposition B.  (MR 0120–170.)

On November 22, 2022, the City Council performed its ministerial, non-discretionary duty of canvassing and confirming the vote totals. (MR 0098.)  Upon confirmation of the fact that the voters had passed Proposition B, the provision automatically became an ordinance by operation of the Charter.  (MR 0099–190.)

**B.    The State sues over the Enforcement Ordinance.**

The State of Texas sued the City of Denton, the Mayor, the City Council, the City Manager, and the Chief of Police on January 31, 2024, for

temporary and permanent injunctive relief. The State sued the Relators for allegedly acting in violation of Section 370.003 of the Texas Local Government Code.

The City and Officials answered the suit on March 22, 2024, and filed a Plea to the Jurisdiction on May 20, 2024. (MR 0029.)

By agreement of the parties, Relators' Plea to the Jurisdiction and the State's application for temporary injunction were originally set for hearing on May 31, 2024, along with the State's Motion to Strike Intervention of a third party. No party requested discovery prior to that hearing. Only the Motion to Strike Intervention was heard on May 31, 2024, and the remaining items set were continued. (*See* MR 0031.)

## C. The trial court ordered discovery before determining the matter of jurisdiction.

The State served written discovery on Relators on August 30, 2024. See the State's Requests for Admission (App. Tab B,[3] MR 0372–80), Requests for Production (App. Tab B, MR 0361–70), and Interrogatories (App. Tab B, MR 0347–59). Relators moved for a Protective Order on

---

[3] Annotated versions of the Requests for Admission, Requests for Production, and Interrogatories are attached hereto at Tab B of the Appendix and are highlighted to show the specific requests that are the subject of the trial court's Discovery Order and thus this Petition for Writ of Mandamus, for the Court's convenience.

September 27, 2024.  (MR 0249.)  The State filed a Motion to Compel on October 17, 2024.  (MR 0315.)  The trial court set a hearing on the State's Motion to Compel, Relators' Motions for Protective Order, and Relators' Plea to the Jurisdiction for December 12, 2024.

At that hearing, the trial court issued direction granting the State's Motion to Compel in substantial part, denying the Motions for Protection in substantial part as they related to written discovery, and ordered the parties to submit a proposed order consistent with the trial court's direction from the bench.  On February 6, 2025, the trial court entered the Discovery Order. (MR 0001–05.)

## SUMMARY OF THE ARGUMENT

The State alleged that a single act—the act of the City Council codifying and publishing an ordinance passed by citizen initiative—violated Local Government Code Section 370.003, which prohibits the City Council from "adopt[ing] a policy" not to fully enforce the State's drug laws. (*see* MR 0012 at ¶ 22; Tex. Loc. Gov't Code § 370.003.) No discovery is needed for the Court to decide whether the act alleged violates Section 370.003.

Importantly, no other specific *ultra-vires* act taken by any defendant is alleged by the State in its Petition, and there is no authority for the proposition that a plaintiff may bring a claim that does not clear the hurdle of jurisdiction, but then go fishing via discovery *in that very non-jurisdictional case* for some fact that might turn its presently non-jurisdictional claim into a jurisdictional claim.

The Discovery Order issued by the trial court constitutes a clear abuse of discretion and leaves Relators no adequate remedy by appeal.

## ARGUMENT & AUTHORITIES

Relators ask for the Discovery Order, which requires responses to the State's Interrogatories Nos. 2–6 and 9–21, Requests for Admission Nos. 1–13, and Requests for Production Nos. 2–22, to be vacated and reversed in its entirety. (MR 0001–05.)

Mandamus is appropriate when a court abuses its discretion and the relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004). That is precisely the circumstance presented here where the trial court ordered broad discovery in the face of a limited challenge to jurisdiction based on governmental immunity. Jurisdiction comes first. Thus, Relators ask the Court to protect them from compliance with the Discovery Order pending a ruling on Relators' Plea to the Jurisdiction.

### A. The trial court's Discovery Order is a clear abuse of discretion.

As the State itself pleaded, "this is a case of pure law and discovery is unneeded." (MR 0010 at ¶ 1.) Yet the better part of the year after filing suit and months after the original setting for the hearing on Relators' Plea to the Jurisdiction (before which no discovery was requested or conducted), the State served more than 50 written discovery requests and sought

depositions of six witnesses[4]. While the State's live pleading is incurably defective on multiple fronts, one representation is true and relevant for purposes of this Petition—no discovery is needed.

### 1. The facts are not in dispute—only the law is—thus the trial court has everything it needs to determine the matter of jurisdiction.

The Relators are immune from the claims pleaded by the State, a defect that no amount of discovery can or would cure. To invoke a court's authority, a plaintiff must allege facts that affirmatively demonstrate that the court has jurisdiction to hear the cause. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex.2004); *Tex. Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993). To prevail on a plea to the jurisdiction, the defendant must show an incurable jurisdictional defect

---

[4] The depositions are not part of the Discovery Order as the trial court is carrying its decision on that question pending the responses to written discovery that the trial court ordered. However, should the trial court order any such depositions before the trial court rules on Relators' Plea to the Jurisdiction, Relators will be forced to return to this Court to seek mandamus relief again because the State seeks discovery on the subjective knowledge, motive, mental processes, individual knowledge, lack of knowledge, understanding or thought processes relating to the legislative body and the decisions and actions of the legislative body. *City of Corpus Christi v. Bayfront Assocs.*, 814 S.W.2d 98, 105 (Tex. App.—Corpus Christi 1991, writ denied); *El Paso v. Madero Dev.*, 803 S.W.2d 396, 401 (Tex. App.—El Paso 1991, writ denied); *Clear Lake City Water Authority v. Salazar*, 781 S.W.2d 347, 349–50 (Tex. App.—Houston [14th Dist.] 1989, writ denied); *Mayhew v. Sunnyvale*, 774 S.W.2d 284, 298–99 (Tex. App.—Dallas 1989, writ denied); *Sosa v. Corpus Christi*, 739 S.W.2d 397 (Tex. App.—Corpus Christi 1987, no writ).

apparent from the face of the pleadings, making it impossible for any amendment of the plaintiff's petition to confer jurisdiction on the trial court. *Bybee v. Fireman's Fund Ins. Co.*, 331 S.W.2d 910, 914 (1960); *City of San Angelo v. Smith*, 69 S.W.3d 303, 305 (Tex. App.—Austin 2002, pet. denied). Courts must consider evidence when necessary to decide jurisdictional issues. *Miranda*, 133 S.W.3d at 221; *Tex. Nat. Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 868 (Tex. 2001); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d, 547, 554–55 (Tex. 2000). If the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, a trial court rules on the plea to the jurisdiction as a matter of law. *Miranda*, 133 S.W.3d at 228.

The standard for an evidentiary plea to the jurisdiction mirrors the summary-judgment standard—there needs to be a *genuine* dispute of *material* fact for the non-movant's claim to survive challenge. Here, any "jurisdictional fact" the State would try to put at issue would be immaterial to the question before the Court and would confuse rather than clarify the question. The Discovery Order and continuance of the hearing on the Plea to the Jurisdiction were an abuse of the trial court's discretion.

### a. The State has not pleaded facts to support a waiver of governmental immunity.

Immunity is the default and waiver is the exception. *See Lubbock County Water Control v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014); *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003). In order to maintain a claim against a government entity or actor, the claimant must establish a valid and applicable waiver of or exception to governmental immunity. *See City of Dall. v. Turley*, 316 S.W.3d 762, 767–68 (Tex. App.—Dallas 2010, pet. denied) (noting that political subdivisions of the state are immune from suit unless immunity is waived, and suits against government actors asserting the *ultra-vires* exception to immunity must demonstrate that the actors actually violated a constitutional or statutory provision). Invoking such a waiver or exception requires more than including buzzwords in a petition—it must be supported by facts that would give rise to a viable claim waiving or invoking an applicable exception to immunity. *Dohlen v. City of San Antonio*, 643 S.W.3d 387, 397 n.4 (Tex. 2022) ("Our precedents do not allow parties to invoke a waiver of immunity on conclusory or barebones pleading—they require more detailed pleading that is simply absent from the petition.") "To determine whether a party has asserted a valid *ultra-vires* claim, [courts] must construe the relevant

24

statutory provisions, apply them to the facts as alleged in the pleadings, and determine whether those facts constitute acts beyond the official's authority or establish a failure to perform a purely ministerial act." *Tabrizi v. City of Austin*, 551 S.W.3d 290, 298 (Tex. App.—El Paso 2018, no pet.) (citing *Tex. Dep't of Transp. v. Sunset Transp., Inc.*, 357 S.W.3d 691, 701–02 (Tex. App.—Austin 2011, no pet.); *Becky, Ltd. v. City of Cedar Park*, No. 03-15-00259-CV, 2017 LEXIS 4591, at *8 (Tex. App.—Austin May 19, 2017, no pet.). For example, the Texas Supreme Court has previously analyzed this issue as follows:

> Although ordinarily we would first consider whether the Commissioners have governmental immunity from suit, which would implicate the trial court's subject matter jurisdiction, we begin by considering the proper construction of Texas Water Code § 49.223. That is because whether the Commissioners' conduct constitutes ultra vires actions that falls within an exception to governmental immunity depends on what the statute required of the District.

*Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).

The State has to plead a valid exception to the general bar to suit created by immunity and has failed to do so. Here, the State claims that the Officials acted *ultra vires* and violated Texas Local Government Code

Section 370.003 and that declaratory relief declaring the Enforcement Ordinance void is appropriate because it conflicts with State law.

"To fall within this ultra vires exception, a suit . . . must allege, and ultimately prove, that the officer **acted** without legal authority." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009) (emphasis added). There is no *ultra-vires* action undertaken by any of the Officials. There is <u>only one act</u> alleged as to <u>any</u> defendant(s): the allegation that the "Denton City Council codified and published the ordinance[,]" which is a pure ministerial act incapable of establishing jurisdiction as a matter of law. (MR 0012 at ¶ 22); *Tabrizi*, 551 S.W.3d at 298 (citations omitted); *Emmett*, 459 S.W.3d at 587. No other act by any other defendant is alleged. There is no dispute that the (1) citizens of Denton voted on Proposition B which resulted in the Enforcement Ordinance, and (2) ministerial act of canvassing the election was done. (*See* MR 0012 at ¶ 19.) That is all a matter of public record—public record already available to the State and filed before the court. Any other facts or issues are extraneous distractions. The State is bound by its pleadings. Accordingly, this Court should grant Relators' Petition and vacate any requirement that discovery take place before the trial court decides the matter of jurisdiction.

### b.     The alleged violative conduct here is limited.

All of the State's claims arise from alleged violations of Texas Local Government Code Section 370.003; fundamentally, all claims boil down to an assertion that defendants committed an *ultra-vires* act. Breaking the plain language of the statute down further makes clear that the issue, and thus the facts, before the trial court are narrow.

The statute spells out which actors and what actions are prohibited:

1. The governing body of a municipality, the commissioners court of a county, or a sheriff, municipal police department, municipal attorney, county attorney, district attorney, or criminal district attorney

2. may not adopt a policy

3. under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law.

Tex. Loc. Gov't Code § 370.003.

All three of these components together are the prohibition created by Texas Local Government Code Section 370.003.

But despite pleading and conceding that ***"this is a case of pure law and discovery is unneeded[,]"*** the State asserted the need for "jurisdictional discovery," asking the trial court to adopt and apply an expanded list of prohibited actions covered by Section 370.003 in an attempt

to create a factual dispute and keep its case alive. (MR 0010 at ¶ 1, 641:10–642:6, 643:4–5.) But "'the truest manifestation' of what lawmakers intended is what they enacted." *Titan Transp., LP v. Combs*, 433 S.W.3d 625, 636 (Tex. App.—Austin 2014, pet. denied) (cleaned up). The only facts needed to resolve this dispute center on what 1) the named Officials 2) <u>adopted</u>, or rather, <u>did not adopt</u>.

### c. *It is inappropriate for the trial court to order discovery after the State failed to establish a waiver of governmental immunity.*

In addition to the arguments above, the State was required by the rules to have a good-faith basis to claim that Relators committed the *ultra-vires* act of wrongfully adopting such a policy *before* filing suit. A plaintiff cannot file suit alleging that Relators—public officials, who act on matters of policy by public action—acted *ultra-vires* by committing a wrongful act, and only then go fishing for evidence of an act. That's not the order of operations for pleadings and discovery in Texas; pleadings matter.

Because pleadings matter, in determining whether it should allow discovery as to any "jurisdictional facts" about an *ultra-vires* act allegedly taken by any defendant, the Court should look only to what purported *ultra-*

28

*vires* acts are alleged in the State's Petition. (*Tabrizi v. City of Austin*, 551 S.W.3d 290, 298 (Tex. App.—El Paso 2018, no pet.).)

While courts may indeed sometimes consider and allow limited discovery as to certain disputed facts to rule upon a Plea to the Jurisdiction, such facts must be relevant to the question before the court. *See Klumb v. Houston Mun. Emples. Pension Sys.*, 405 S.W.3d 204, 227 (Tex. App.— Houston [1st Dist.] 2013), aff'd, 458 S.W.3d 1 (Tex. 2015) (discovery was not permissible "jurisdictional discovery" where "[n]one of the discovery mentioned by Plaintiffs could have raised a fact issue material to the determination of the jurisdictional plea."). That relevance is what makes them "jurisdictional facts." But here, the material facts are not in dispute. There is no dispute that the citizens of Denton voted on Proposition B which resulted in the Enforcement Ordinance. There is no dispute that the ministerial act of canvassing the election was done. That is all a matter of public record—public record already available to the State and filed before the court.

First, only "the governing body of a municipality . . . [or] municipal police department" (the only possible persons/entities in play in this case who are prohibited from adopting such a policy by 370.003) are the relevant

parties for the facts of this case. Second, the State is bound to the sole fact/act alleged in its Petition. Statements made by individual council members as to their beliefs about the effect of the citizen-passed ordinance etc.—as just one example of the discovery the State demands—are not relevant to the question of whether "the governing body of a municipality" "adopt[ed] a policy" by the sole alleged act of "codif[ying] and publish[ing] the ordinance." *City of Denton v. Grim*, 694 S.W.3d 210, 215 (Tex. 2024), reh'g denied (Aug. 30, 2024) ("'[c]ities can express and bind themselves only by way of a duly assembled meeting'") (quoting C*ity of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003)). As the State knows, a municipality's governing body can act only as a whole, and the statements and opinions of any one council member are not relevant to determining whether such act took place. *Id.* ("the words of one city council member or city employee do not ordinarily bind the entire city council'") (quoting *City of Austin v. Whittington*, 384 S.W.3d 766, 785 (Tex. 2012)); *Cent. Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 612 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.) (a city acts by votes of its council as a whole); *see also* Tex. Gov't Code § 551.102 (final action of a governmental body must be taken in open meeting). The State, in its

discovery requests, defines "adoption" as "passage of a measure into law." (*See, e.g.,* MR 0268.) Either the Denton City Council—which acts only as a whole, in open meetings—"adopt[ed] a policy" by taking the sole action alleged, or it did not. The facts of the actions of the Denton City Council are not in dispute; the minutes of every Denton City Council meeting are and always have been publicly available.[5]

A fact like the number of misdemeanor possession arrests that the Denton Police Department has conducted over time—another example of the discovery the State demands—does not establish whether the Police Department has "adopt[ed] a policy" either. More to the point, it does not establish whether there is any *"Denton Police Department general order or directive . . . under which Denton will not fully enforce laws relating to drugs."* (MR 0009, emphasis added.) Section 370.003 does not work in the inverse; it does not *require* any police department to "fully enforce laws relating to drugs," and it certainly does not require a police department to "arrest people for marijuana offenses in a number that satisfies the State." No such claim has been or could be pleaded in this case. Arrests may go up,

---

[5] City of Denton, Texas, *Public Meetings & Agendas*, https://www.cityofdenton.com/242/Public-Meetings-Agendas.

they may go down, they may remain static. Such circumstances do not answer the only relevant question: *did the Denton Police Department <u>adopt a policy by issuing a general order or directive</u> not to fully enforce drug laws?* Importantly, the State's Petition does not (and could not) allege that the Denton Police Department actually has taken the action of issuing <u>any</u> such general order or directive. Again, Denton's Police Department is a public entity, which transparently publishes its policies (the General Orders of the Denton Police Department) online.[6] The State could easily ascertain by public record whether any such order had been issued, but of course, just as with the Denton City Council, no order reflects any such policy adopted by the Denton Police Department since the passage of the Enforcement Ordinance.

The question of whether the State has pleaded a valid *ultra-vires* claim against any defendant should be decided based on 1) the application of the pleaded statute[7] (Local Government Code Section 370.003) to 2) the sole act

---

[6] *See* Denton Police Department, *General Orders,* https://www.cityofdenton.com/DocumentCenter/View/814/General-Orders-Updated-Dec-5-2024-PDF?bidId= (Updated January 31, 2025, as reflected at the bottom of each page thereof).

[7] The State also contends that it separately alleges violations of the Texas Constitution and Chapter 481 and 483 of the Texas Health & Safety Code and a Declaratory Judgment action as to the validity of the Enforcement Ordinance, but all of those claims stem from the predicate purported violation of Section 370.003 by

actually pleaded as to specific defendants. No discovery is necessary to determine that question, as the sole act alleged (the codification and publishing of the ordinance) is not in dispute.

### 2. The State has not identified what "jurisdictional" facts need to be explored.

The trial court continued the hearing on the Plea to the Jurisdiction—which was set to be heard on December 12, 2024—for a second time, to allow the State to conduct "jurisdictional discovery," but neither the State nor the court ever articulated *why* or *what* discovery was needed to resolve the question of <u>jurisdiction</u>. In fact, during the hearing, the court even conceded that neither it nor the State knew what jurisdictional discovery was needed but that it could only be ascertained after full-blown discovery was conducted, which falls short of the guidelines established by the Texas Supreme Court when analyzing jurisdiction in an *ultra-vires* context. *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 459 (Tex. 2015); (MR 0711:19–0712:5).

The dispositive questions in determining Relators' jurisdictional challenge and the State's claims are addressed by "yes or no" answers

---

officials/entities who are prohibited from adopting a policy not to fully enforce drug laws, and the concept of preemption. The only questions are questions of law not fact.

33

concerning formal acts of government officials and public employees; no "jurisdictional facts" (or any other facts) are at issue other than the acts that the State alleges the Relators committed.

Texas courts have concluded "a trial court abuses its discretion when it delays ruling on a jurisdictional plea for the purpose of allowing discovery unnecessary to the jurisdictional challenge." *In re Bexar Medina Atascosa Cntys. Water Control & Improvement Dist. No. One*, No. 04-24-00538-CV, 2025 LEXIS 787, at *11 (Tex. App.—San Antonio Feb. 12, 2025, no pet. h.); *see also In re Lamar Univ.*, No. 09-18-00241-CV, 2018 LEXIS 6495, at *8 (Tex. App.—Beaumont Aug. 16, 2018, orig. proceeding) (held that trial court abused its discretion by allowing discovery unrelated to the jurisdictional issue); *see also City of Galveston v. Gray*, 93 S.W.3d 587, 592 (Tex. App.—Houston [14th Dist.] 2002, orig. proceeding) (held that trial court abused its discretion by continuing hearing and refusing to rule on pleas to jurisdiction).

At no point in its Motion to Compel nor in the hearing on the Motion to Compel did the State identify what facts needed to be discovered in order to resolve the issue of subject matter jurisdiction. (See MR 0315–479, 0617–716.)

Even if jurisdictional discovery was appropriate, which it isn't here, the law requires that it be limited and tailored to discovery only of jurisdictional facts. The transcript from hearing on the Motion to Compel makes evident that the discovery ordered isn't targeted to resolve some jurisdictional question of fact—it is nothing more than a wide-net fishing expedition.

> THE COURT: And I understand. Okay. So help me understand. Mr. Tebo, are you limiting the depositions to jurisdictional facts?
>
> MR. TEBO: That's right, Your Honor. After written discovery is gone and done, we will frame the topics that we would like to -- we will work up the topics that we would like to inquire into during these depositions. They will all be with respect to jurisdictional facts.
>
> THE COURT: And so is --
>
> MR. DE LA FUENTE: I mean it's the tautology. I don't know what they think the jurisdictional facts are going to be.
>
> THE COURT: Well, I'm sure they don't know at this time either. They haven't gotten the discovery.

(MR 0711:19–0712:5.)

Jurisdictional discovery is not needed in this case. *See Klumb v. Houston Mun. Emples. Pension Sys.*, 405 S.W.3d 204, 227 (Tex. App.—

Houston [1st Dist.] 2013), aff'd, 458 S.W.3d 1 (Tex. 2015) (the trial court did not abuse its discretion in denying the request for continuance to seek jurisdictional discovery where "[n]one of the discovery mentioned by Plaintiffs could have raised a fact issue material to the determination of the jurisdictional plea."); *see also Joe v. Two Thirty Nine J.V.*, 145 S.W.3d 150, 161–62 (Tex. 2004) (concluding that the trial court did not abuse its discretion in denying a motion for continuance for jurisdictional discovery when the discovery sought was not material to the issue of official immunity); *see also Quested v. City of Houston*, 440 S.W.3d 275, 283 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (trial court did not abuse discretion in denying discovery "based on purported need for jurisdictional discovery" where party could not show discovery sought "would be material to the trial court's assessment of the City's plea to the jurisdiction"). Nowhere in any of the filings or in the hearing did the State enumerate even a single one of the of the supposedly "significant unresolved fact issues that are material" to the trial court's jurisdiction. (MR 0624:16–19.)

The State has not articulated a reason it now needs this discovery, because there is no good reason for delaying a decision on the issue of immunity implicated by the pending pleadings. The goal of a plea to the

36

jurisdiction "is to defeat a cause of action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation)." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Immunity serves "to shield the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

Reviewing the written discovery requests, it is clear there is no need for the supposedly "jurisdictional discovery" the State seeks. The legal question is "did any of the Defendants adopt a policy in violation of Section 370.003 of the Texas Local Government Code?" The only "policy" the State identifies in its pleading is the Enforcement Ordinance. So, then the question is "did any of the Defendants adopt the Enforcement Ordinance?" The answer to that, based on already-available public records attached to Defendants' Plea to the Jurisdiction is "no." (MR 0061–0186.) The Enforcement Ordinance was adopted by the voters of the City of Denton. The State's written discovery requests to which the trial court ordered Relators respond are not aimed at answering that question; relevant examples of these improper requests are provided below:

> **TO DEFENDANTS:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo
>
> > **INTERROGATORY 6:** If you contend that the Marijuana Ordinance can, or cannot be changed to comply with the City Charter, Ordinance, or a policy, state the factual basis for your claim and identify all documents relied on for your response.
>
> Answer: _____
>
> _____

> **TO DEFENDANTS:** Sara Hensley and Jessica Robledo
>
> > **INTERROGATORY 9:** Identify all jobs to which you have applied from August 30, 2022 to Present, including the name of the employer, its location, and the ultimate outcome of your application for that job.
>
> Answer: _____
>
> _____

(MR 0293–0294.)

Hypotheticals about future action don't change what is done, nor does whether the City Manager or Chief of Police have applied for other jobs have any bearing on the dispositive jurisdictional question. Neither of those interrogatories would evoke an answer to the question of whether the governing body or the police department of Denton, Texas adopted a policy.

> **REQUEST 3**: Produce all communications and documents sent to or received from, or exchanged by and between you and citizens groups, including Ground Game Texas, Decriminalize Denton, any parties supporting the Marijuana Ordinance, or their agents, employees, or representatives, regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.
>
> **REQUEST 4**: Produce all communications and documents sent to or received from, or exchanged by and between you and the public relating to enforcement of the Marijuana Ordinance and the Marijuana laws of the State of Texas.

> **REQUEST 6**: Produce all communications and documents sent to or received from, or exchanged by and between you and the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos or their agents, employees, or representatives regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.
>
> **REQUEST 7**: Produce all communications and documents sent to or received from, or exchanged by and between you and the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos or their agents, employees, or representatives regarding codification, adoption, or implementation of a Marijuana Ordinance by the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos from November 2, 2021 to Present.

(MR 0368.)

Requiring production of all communications to and from the public about enforcement of marijuana laws is not only overbroad and unduly burdensome in the context of what would have to be narrowly tailored jurisdictional discovery, but it does nothing to aid in resolving the relevant question. What other cities did or did not do or discussion of same likewise has no bearing on the dispositive jurisdictional question. None of these requests would evoke an answer to the question of whether the governing body or the police department of Denton, Texas adopted a policy.

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 9.** Admit that City of Denton Police Department citations and arrests for misdemeanor possession of marijuana paraphernalia have decreased by over 50 percent since November 22, 2022.

ADMIT    OR    DENY

If "Deny" provide explanation: _____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 10.** Admit that you did not send out a document or communication to employees of the City of Denton Police Department that the Marijuana Ordinance has not been implemented.

ADMIT    OR    DENY

If "Deny" provide explanation: _____

_____

(MR 0379.)

None of these requests for admission speak to <u>adoption</u> of a policy not to fully enforce drug laws of this State. To the extent there is any change in the number of arrests for low-level marijuana offenses, that does not demonstrate any official action City Council or the Police Department took in adopting a policy to regarding enforcement of drug laws. Implementation and methods and means of enforcement are not the subject of Section 370.003.

The broad discovery ordered here and discussed in part above isn't to answer the narrow question of jurisdiction, it's a fishing expedition and an attempt to create an enormous burden on the City (to disincentivize it from continuing its defense against the State's claims) and to distract from the straightforward question before this Court. All of the relevant facts are a matter of public record—public record already provided to the State and the trial court. Allowing this discovery constitutes an abuse of discretion. The discovery ordered by the trial court exceeds the scope of permissible discovery under the Rules.

### 3. *The discovery ordered by the trial court exceeds the scope of permissible discovery under the Rules.*

The trial court never made a determination as to what "jurisdictional" discovery was needed. And even if the State had pleaded a proper waiver of governmental immunity, the discovery ordered far exceeds the parameters of targeted discovery. "Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution." *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003).

A party cannot simply assert the need to conduct "jurisdictional discovery" and call it open season; not in a case where the threshold matter of jurisdiction pursuant to immunity from suit is at issue as a question of

law. "Targeted discovery **cannot be allowed** unless—and only to the extent that—it is **essential** to the resolution of a jurisdictional question." *Tex. S. Univ. v. Young*, 682 S.W.3d 886, 889 (Tex. 2023) (Young, J. concurring) (emphasis added).

The State of Texas filed suit claiming the Ordinance violated and was preempted by Section 370.003 of the Texas Local Government Code, and specifically brought a claim against each of the Relators asserting that Relators acted *ultra vires* by "adopting" the Ordinance. The nature of the discovery sought by the State demonstrates that the State does not actually wish to engage in "jurisdictional discovery," but rather wishes to engage into a wide-ranging inquisition into all manner of city activities, beliefs and opinions (not official acts) of a number of individuals, and the like. That discovery would not be appropriate even if there *was* some disputed jurisdictional fact. As shown by the following, the discovery sought here is "not merely an impermissible fishing expedition; it is an effort to dredge the lake in hopes of finding a fish." *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995).

The discovery granted isn't cabined but rather opens the door for more fishing.

THE COURT: And I understand. Okay. So help me understand. Mr. Tebo, are you limiting the depositions to jurisdictional facts?

MR. TEBO: That's right, Your Honor. After written discovery is gone and done, we will frame the topics that we would like to -- we will work up the topics that we would like to inquire into during these depositions. They will all be with respect to jurisdictional facts.

(MR 0711:16–24.)

The record is devoid of any explanation of what those jurisdictional facts *are*; the State just restates the tautology of "because we're seeking discovery of facts, all of those are jurisdictional facts." The trial court never determined nor does the State's Original Petition plead facts that demonstrate it is entitled to any relief not barred by governmental immunity. *See City of Dall. v. Russell (In re City of Dall.)*, No. 05-18-00289-CV, 2018 LEXIS 8784, at *14 (Tex. App.—Dallas Oct. 26, 2018, no pet.). In *Russell*, the plaintiff filed a Rule 202 petition against the City of Dallas. The Court of Appeals determined that discovery under the 202 could only go forward if the claims underlying the Rule 202 waived governmental immunity, and that plaintiff failed to plead such facts to support such a claim. *Id.* at *13. Accordingly, the Fifth Court of Appeals held that the trial court abused its discretion in granting the Rule 202 petition because the

43

plaintiff failed to adequately plead a cause of action that would overcome the city's governmental immunity, and further held that mandamus was appropriate because the city had no adequate remedy by appeal, as waiting for the opportunity to appeal would violate the city's substantive and procedural rights. *Id.* at *15.

The same is true here. "[W]hether immunity from suit applies at all is a legal issue which the trial court must determine in the first instance before requiring a governmental entity to answer discovery." *In re Bexar Medina Atascosa Cntys. Water Control & Improvement Dist. No. One*, No. 04-24-00538-CV, 2025 Tex. App. LEXIS 787, at *14 (Tex. App.—San Antonio Feb. 12, 2025, no pet. h.).

The discovery sought by the State is not relevant to resolving the fundamental matter of jurisdiction, and thus exceeds the scope of permissible discovery under the circumstances. *See Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (the trial court's order "requiring production beyond that permitted by the rules of procedure was a clear abuse of discretion.").

### a. The Texas Rules of Civil Procedure permit the Court to limit the discovery sought here.

"The discovery methods permitted by these rules should be limited by the court if . . . the discovery sought is unreasonably cumulative or duplicative, or is obtainable form some other source that is more convenient, less burdensome, or less expensive." Tex. R. Civ. P. 192.4(a). As outlined above, the facts relevant to the sole dispositive jurisdictional question (did the City Council or Police Department adopt a policy not to fully enforce drug laws?) are undisputed, and all evidence of such facts has long been available to the State.

The City's Council's votes in connection with the Enforcement Ordinance passed by the voters are a matter of public record.

> A. ID 22-2447 Consider adoption of an ordinance of the City of Denton canvassing election returns and declaring results of the Special Elections held on November 8, 2022; and providing an effective date.

(MR 0094.)

On November 22, 2022, Council only voted on adoption of an ordinance "canvassing the election returns and declaring results of the Special Elections." And when presented with the opportunity to actually adopt the Ordinance by City Council vote, that action was voted down.

> A. ID 23-1121 Consider adoption of an ordinance of the City of Denton adopting Chapter 21, Article V, of the City of Denton code of ordinances, titled "Marijuana Enforcement"; providing repealer, cumulative, and severability clauses; and declaring an effective date.
> **DENIED**

(MR 0179.)

Any relevant information is best—and should *only* be—obtained not from overbroad and overreaching written discovery requests, but from the relevant public records (<u>which the State already has</u>). The discovery ordered here should be denied in its entirety, as the burden and expense of substantive responses and potential for additional discovery requests and discovery disputes regarding same outweighs the likely benefit given the needs of the case and the limited scope of the questions before this Court. *See* Tex. R. Civ. P. 192.4(b).

> **b.** ***The State's requests allowed by the Discovery Order signal a misunderstanding of the respective burdens in this case.***

Relators filed an evidentiary Plea to the Jurisdiction based solely on the public actions taken, and not taken, by Relators, and the legally correct argument that those actions do not constitute a violation of Section 370.003 of the Texas Local Government Code. The State has the burden to plead a claim for which the City's and Officials' immunity is waived. Here, the State must plead a specific act by a person or entity identified in the statute that

46

would violate Section 370.003 of the Texas Local Government Code. Other than pleading the ministerial act of the City "codifying and publishing" the Enforcement Ordinance already passed and enacted by the people, the State hasn't pleaded any specific acts by a person or entity identified in Section 370.003 or facts to support any alleged acts, only legal conclusions (like using the word from the statute—"adopted"—repeatedly). Legal conclusions (especially when they are wrong) do not support a claim; factual allegations do.

Here, the relevant facts regarding any action, or inaction, by the Relators are already fully before the Court. The State did not previously seek a continuance or serve discovery with respect to the City's Plea to the Jurisdiction when it was set for hearing on May 31, 2024—it filed a response and asked the Court to rule. (*See* MR 0229 ("Plaintiff, the State of Texas, by and through the Office of the Attorney General, asks that this Court deny City Defendants' Plea to the Jurisdiction.").) The only reason that the question of jurisdiction hasn't already been fully presented to and decided by the Court is because the proceedings ran long on May 31, 2024, leaving the scheduled hearing on the City's Plea to the Jurisdiction to be continued to a later date. There is no material or relevant discovery needed to

determine the exact same jurisdictional question that was pending and set to be decided on the first hearing date.

**B.      Mandamus relief is appropriate here because Relators have no available or adequate remedy by appeal.**

Relators have no adequate remedy by appeal in this case. The pending challenge is one based on immunity from suit because the State has not pleaded a valid claim based on an *ultra-vires* act by Relators. Allowing the broad discovery sought by the State and validating its arguments that this case should be carried through the entire litigation process, stands in direct contradiction with the concept of immunity and the fact that the question of jurisdiction comes first.

> *1.      It is not inequitable or inappropriate to refuse jurisdictional discovery when the undisputed facts and publicly available evidence established that Respondent lacks subject-matter jurisdiction over the case.*

The Enforcement Ordinance was passed on November 8, **2022**. The hearing on Relators' jurisdictional plea and the State's Request for Temporary Injunction were originally set to be heard on May 31, **2024**. All facts relating to the passage of the Ordinance by the voters and the City's official actions subsequent thereto have been known for well over a year, and are in fact pleaded in the State's Petition. (MR 0012–15.) While the Parties communicated often in the weeks and months leading up to the

48

May 31 hearing date, no written discovery was served by any party. Not only did the parties not seek written discovery prior to that hearing, the parties entered into a written agreement via e-mail not to exchange even initial disclosures until *after* those hearings were set to have occurred. (MR 0299–300.) Due to time constraints created by a lengthy hearing on the State's Motion to Strike Plea in Intervention as to a third-party intervenor on May 31, 2024, the State requested that the Court continue the hearing on Defendants' Plea to the Jurisdiction and State's Request for Temporary Injunction. Defendants' evidentiary Plea to the Jurisdiction at all times included certified public records and brief witness statements of the City Manager and Chief of Police consistent with those public records (that is, confirming that what the public records reflect remained true: no policy was adopted by the City Council or the Police Department) (MR 0061–186, 0193–203), but the State did not raise the need to conduct discovery to address the Plea to the Jurisdiction.

No pleadings have changed, and no facts have changed. The facts regarding the passage by the citizens of the Enforcement Ordinance and all official acts of the City and any of its Officials in connection with same are a matter of public record, and Defendants affirmatively supplied those records

to the State as part of their jurisdictional challenge.  (MR 0061–186.)  In fact, the only change that has occurred since the original May 31, 2024 hearing date is that district court judges in Hays and Travis Counties *granted* pleas to the jurisdiction filed by other cities and officials dismissing nearly identical claims brought by the State against cities in those jurisdictions whose citizens passed similar initiatives, with the exception that the City never enforced the Enforcement Ordinance.  (S*ee* MR 0309, 0311.)  This Court is familiar with those cases, as they are already before this Court on appeal.  *See State v. City of Austin, et al.*, No. 15-24-00077-CV; *State v. City of San Marcos, et al.*, No. 15-24-00084-CV.

### 2.  *Delay of a decision on their Plea to the Jurisdiction to conduct discovery is prejudicial to Relators.*

The State has not articulated a sound reason it now needs this discovery, because there is no good reason for delaying a decision on the legal issue of immunity implicated by the pending pleadings.  The goal of a plea to the jurisdiction "is to defeat a cause of action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation)."  *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004).

The legal question is "did any of the Defendants adopt a policy in violation of Section 370.003 of the Texas Local Government Code?" The only "policy" the State identifies in its pleading is the Enforcement Ordinance, and the only "act" alleged is the codifying and publishing of the ordinance passed by the citizens.[8] (MR 0012 at ¶ 22.) So, the question therefore is, by that alleged act, "did any of the Defendants adopt the Enforcement Ordinance?" The answer to that based on public records attached to Defendants' Plea to the Jurisdiction is "no." (MR 0061–186.)

The State does not cite what among the (limited, but complete) evidence filed by the City and Officials and attached to the State's Petition itself creates an issue or dispute of any material fact; the relevant facts of public actions taken by Relators are all undisputed. There is no dispute that the Proposition was on the ballot for the November 8, 2022 election. There is no dispute that the City canvassed and certified the results of that election. There is no dispute that the Enforcement Ordinance, being passed by a vote of the citizens, was then codified and published in the City's Code of Ordinances, as required by the City Charter. The public records show

---

[8] Again, the Enforcement Ordinance proposed by citizen initiative was fully enacted upon the affirmative vote of the people, regardless of any further ministerial action taken by the City.

51

that when given the opportunity to separately adopt the Enforcement Ordinance as an enactment of the City Council, that motion failed. (MR 0179.) There is *no allegation of any act taken by any defendant beyond those public and/or ministerial actions*. Thus, inquiry into any matters via discovery beyond these undisputed facts is not relevant to the applicability of Section 370.003, and thus is not needed to decide the matter of jurisdiction. The City should not be forced to expend significant public resources engaging in non-jurisdictional discovery trying to defend against a <u>lack</u> of action.

### 3. *An appeal could not cure the ramifications of compliance of the improvidently granted Discovery Order.*

The requests in the Discovery Order seek information from a number of sources about different actions and persons not identified in Section 370.003 of the Texas Local Government Code, and that do not and could not go toward proving whether or not it is more or less true that the City Council or Police Department adopted a policy like the one of which the State complains. As mentioned above, a municipality acts through its city council in and pursuant to open meetings. *Cent. Power & Light Co. v. City of San Juan,* 962 S.W.2d 602, 612 (Tex. App.—Corpus Christi 1998, pet. dism'd w.o.j.); *see also* Tex. Gov't Code § 551.102 (final action of a

governmental body must be taken in open meeting). These requests are not limited to records regarding City Council action in calling the election or the City Council vote choosing not to adopt the Ordinance. And in fact those records have always been publicly available and were already previously produced to the State. (MR 0091, 0179.) And the handful of public communications by the City upon passage of the Enforcement Ordinance were equally available, as the State attached them to its own Original Petition in the trial court. (*See* MR 0023–26.)

Here, where the matter of jurisdiction is the sole question, discovery that goes beyond that is clearly creates undue burden for a party that is immune from suit. Appeal is not an available remedy, because any opportunity to appeal, even an interlocutory appeal, would come after the improper discovery was already conducted. The Discovery Order impairs Relators' substantive and procedural rights. *In re Bexar Medina Atascosa Cntys. Water Control & Improvement Dist. No. One*, No. 04-24-00538-CV, 2025 Tex. App. LEXIS 787, at *16 (Tex. App.—San Antonio Feb. 12, 2025, no pet. h.) (holding that there was no adequate remedy by appeal of continuing the jurisdictional challenge to allow discovery because it impaired (1) right to have jurisdiction decided at the earliest possible

opportunity, and (2) the right to an accelerated appeal to review the trial court's jurisdictional ruling); *In re Lamar Univ.*, No. 09-18-00241-CV, 2018. LEXIS 6495, at \*8–9 (Tex. App.—Beaumont Aug. 16, 2018, no pet.) (holding that because "[r]elators have been deprived of their right to an accelerated appeal, [r]elators lack an adequate remedy by appeal."); *see also City of Galveston v. Gray*, 93 S.W.3d 587, 592 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding that a city and county had no adequate remedy by appeal to cure the delay of their right to interlocutory appeal where trial court continued hearing on their pleas to the jurisdiction).

Relators have a right to have their Plea to the Jurisdiction heard and then the right to an accelerated appeal without first being required to expend significant time and public resources responding to improper discovery, but the Discovery Order directly interferes with those rights. "The Legislature specifically granted governmental units . . . the right to an accelerated appeal from a ruling on plea to the jurisdiction for the purpose of avoiding the expense of unnecessary litigation, including pretrial discovery." *Bexar Medina Atascosa Cntys. WCID*, 2025 LEXIS 787, at \*16.

Relators do not have an adequate remedy by appeal to address the trial court's abuse of discretion, and thus mandamus is appropriate and writ should be issued.

## CONCLUSION AND PRAYER

As to the single act of "codifying and publishing" alleged against a single set of public official defendants, no "jurisdictional discovery" is necessary or appropriate. The State is not entitled to file suit first, and then go searching after-the-fact for unknown and un-pleaded facts that might support some future, amended *ultra-vires* suit. However, in direct contravention of the Rules of Civil Procedure and the jurisprudence of this State, that impermissible scenario is exactly what the Discovery Order allows and requires.

Relators respectfully request that the Court issue a writ of mandamus relieving them from complying with the Discovery Order, or any other discovery, pending ruling on their Plea to the Jurisdiction. Relators further respectfully request that the Court order the trial court to hear the City's Plea to the Jurisdiction in its entirety, or alternatively, on the grounds that only need to be decided as a matter of law. Relators further respectfully request that the Court grant them such other and further relief to which they may be justly entitled.

Respectfully submitted,

**LLOYD GOSSELINK**
  **ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone: (512) 322-5800
Facsimile: (512) 472-0532

By: */s/ Jose E. de la Fuente*
    Jose E. de la Fuente
    (Attorney-in-Charge)
    State Bar No. 00793605
    jdelafuente@lglawfirm.com
    James F. Parker
    State Bar No. 24027591
    jparker@lglawfirm.com
    Gabrielle C. Smith
    State Bar No. 24093172
    gsmith@lglawfirm.com
    Sydney P. Sadler
    State Bar No. 24117905
    ssadler@lglawfirm.com

**DENTON CITY**
  **ATTORNEY'S OFFICE**
215 East McKinney
Denton, Texas 76201
Telephone: (940) 349-8333
Facsimile: (940) 382-7923

Mack Reinwand
City Attorney
State Bar No. 24056195
mack.reinwand@cityofdenton.com
Devin Alexander
Deputy City Attorney
State Bar No. 24104554
devin.alexander@cityofdenton.com

For email contact and service
regarding this
case, please include email
addresses for all
listed attorneys in the
To: field, and include
amy.hoffee@cityofdenton.com
in the cc: field,
until requested otherwise.

**ATTORNEYS FOR RELATORS**

## CERTIFICATE OF EVIDENCE

Pursuant to Tex. R. App. P. 52.3(j), I hereby certify that I have reviewed the Petition for Writ of Mandamus and conclude that every factual statement in it is supported by competent evidence included in the Appendix or mandamus record.

/s/Jose E. de la Fuente

JOSE E. DE LA FUENTE

## CERTIFICATE OF COMPLIANCE

I, Jose E. de la Fuente, attorney for Relators, certify that this document was generated by a computer using Microsoft Word 365, which indicates that the word count of this document is 8,993 per Tex. R. App. P. 9.4(i).

*/s/Jose E. de la Fuente*
JOSE E. DE LA FUENTE

# INDEX OF APPENDICES

**Tab A**        Discovery Order (MR 0001–0005)

**Tab B**        Plaintiff's First Requests for Admission (MR 0372–0380),
First Requests for Production (MR 0361–0370), and First
Set of Interrogatories (MR 0347–0359)

**Tab C**        Plaintiff's Original Verified Petition, Application for
Temporary Injunction and Permanent Injunction
(MR 0009–0028)

**Tab D**        City of Denton's Plea to the Jurisdiction (MR 0029–0205)

**Tab E**        Tex. Gov't Code § 551.102

**Tab F**        Tex. Loc. Gov't Code § 370.003

**Tab G**        Tex. R. Civ. P. 192.4

# TAB A

FILED: 2/6/2025 10:26 AM
David Trantham
Denton County District Clerk
By: Aime Sanchez, Deputy

Cause No. 24-1005-481

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff,* | § § § § | IN THE DISTRICT COURT OF |
| v. | § § | DENTON COUNTY, TEXAS |
| CITY OF DENTON; GERARD HUDSPETH, Mayor of Denton; BRIAN BECK, Mayor Pro Tem of Denton; VICKI BYRD, PAUL MELTZER, JOE HOLLAND, BRANDON CHASE McGEE, and CHRIS WATTS, Members of the City Council of Denton; SARA HENSLEY, City Manager of Denton; and DOUG SHOEMAKER, Chief of Police of Denton; in their official capacities, *Defendants*. | § § § § § § § § § § § § § § | 481ST JUDICIAL DISTRICT |

## DISCOVERY ORDER

Before the Court is Plaintiff's Motion to Compel Depositions and Written Discovery and Response to Defendants' Motion to Quash and Motions for Protective Order and Defendants' Motion to Quash and Motion for Protection from Deposition Notices. After due consideration of each motion and applicable law, the Court finds that the Plaintiff's Motion should be and hereby is GRANTED IN PART and DENIED IN PART and that Defendants' Motion is GRANTED IN PART subject to reconsideration. The Court ORDERS as follows:

A. Defendants' objections are overruled as to Plaintiff's interrogatories 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 21. Defendants' objections are likewise overruled as to Plaintiff's requests for production 2, 3, 5, 6, 8, 11, 13, 14, 17, 18, 19, 20, and as to Plaintiff's requests for admission 2, 3, 5, 8, 9, 10, 11, 12, 13, and 15. Defendants shall respond to the foregoing discovery requests;

B. Defendants' objections are sustained as to Plaintiff's interrogatory 7, Plaintiff's request for production 23, Plaintiff's requests for admission 7 and 14;

Copy from re:SearchTX

C. Defendants' objections are sustained as to Plaintiff's interrogatory 8. Plaintiff may re-propound its interrogatory 8 using clearer language on or before the 10th day after the issuance of this Order;

D. The phrase "about confusion" is stricken from Plaintiff's interrogatory 20. The scope of Plaintiff's interrogatory 20 is limited to inquiries made after November 22, 2022. Defendants' objections are otherwise overruled as to Plaintiff's interrogatory 20. Defendants shall respond to Plaintiff's interrogatory 20 as if it did not contain the phrase "about confusion";

E. The scope of Plaintiff's requests for production 1 and 4 is limited to communications and documents that were sent after November 22, 2022. Defendants' objections are otherwise overruled as to Plaintiff's requests for production 1 and 4. Defendants shall respond to Plaintiff's requests for production 1 and 4;

F. The scope of Plaintiff's request for production 7 is limited to communications and documents that were produced or received by Defendants. Defendants' objections are otherwise overruled as to Plaintiff's request for production 7. Defendants shall respond to Plaintiff's request for production 7;

G. The scope of Plaintiff's request for production 9 is limited to documents that already exist or existed. Defendants' objections are otherwise overruled as to Plaintiff's request for production 9. Defendants shall respond to Plaintiff's request for production 9;

H. The scope of Plaintiff's request for production 10 is limited to communications and documents that were sent or received after November 22, 2022. Defendants' objections are otherwise overruled as to Plaintiff's request for production 10. Defendants shall respond to Plaintiff's request for production 10;

I. The scope of Plaintiff's request for production 12 is limited to communications and documents concerning enforcement of laws related to marijuana use. Defendants' objections are otherwise overruled as to Plaintiff's request for production 12. Defendants shall respond to Plaintiff's request for production 12;

Cause No. 24-1005-481; *Texas v. City of Denton, et al.*

Copy from re:SearchTX

J. The scope of Plaintiff's requests for production 15, 16, 21 and 22 is limited to exclude individualized reports of citations or arrests. Defendants' objections are otherwise overruled as to Plaintiff's requests for production 15, 16, 21 and 22. Defendants shall respond to Plaintiff's requests for production 15, 16, 21, and 22;

K. Plaintiff's requests for admission 1 and 4 shall be construed so that "adopt" is given its plain meaning. Defendants' objections are otherwise overruled as to Plaintiff's requests for admission 1 and 4. Defendants shall respond to Plaintiff's requests for admission 1 and 4;

L. The scope of Plaintiff's request for admission 6 is limited to instances when employees of the City of Denton have been directed by any Defendant or have acted at the direction of any Defendant to not cite or arrest individuals for misdemeanor levels of marijuana and misdemeanor possession of marijuana paraphernalia. Defendants' objections are otherwise overruled as to Plaintiff's request for admission 6. Defendants shall respond to Plaintiff's requests for admission 6;

M. Defendants shall complete their discovery responses on or before the 60th day after the issuance of this Order;

N. Defendants' objections to the depositions of Councilmembers Brian Beck and Joe Holland are sustained subject to reconsideration.

**SO ORDERED.**

2/6/2025
_____, 2025.

Crystal Levorius
_____

Page 3 of 5

Cause No. 24-1005-481; *Texas v. City of Denton, et al.*

Copy from re:SearchTX

**Agreed as to Form and Entry Requested:**

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Legal Strategy

RYAN D. WALTERS
Division Chief
Special Litigation and Division

/s/Zachary L. Rhines
ZACHARY L. RHINES
Special Counsel
Texas Bar No. 24116957
Zachary.Rhines@oag.texas.gov

KYLE S. TEBO
Special Counsel
Texas Bar No. 24137691
Kyle.Tebo@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: 512-463-2100
Fax: 512-457-4410

Cause No. 24-1005-481; *Texas v. City of Denton, et al.*

Copy from re:SearchTX

APPROVED AS TO FORM ONLY:

DEVIN Q. ALEXANDER
Denton City Attorney's Office
215 East McKinney
Denton, Texas 76201
(940) 349-8333
(940) 382-7923 Facsimile
For email contact and service regarding this
case, please include email addresses for all
listed attorneys in the To: field, and include
amy.hoffee@cityofdenton.com  in the cc: field,
until requested otherwise.

Mack Reinwand
City Attorney
State Bar No. 24056195
mack.reinwand@cityofdenton.com

Devin Alexander
Deputy City Attorney
State Bar No. 24104554
devin.alexander@cityofdenton.com

**LLOYD GOSSELINK**
  **ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone:     (512) 322-5800
Facsimile:     (512) 472-0532

By:     */s/ Jose E. de la Fuente*
        JOSE E. de la FUENTE
        (Attorney-in-Charge)
        State Bar No. 00793605
        jdelafuente@lglawfirm.com
        JAMES F. PARKER
        State Bar No. 24027591
        jparker@lglawfirm.com
        GABRIELLE C. SMITH
        State Bar No. 24093172
        gsmith@lglawfirm.com
        SYDNEY P. SADLER
        State Bar No. 24117905
        ssadler@lglawfirm.com

**ATTORNEYS FOR DEFENDANTS**

Cause No.  24-1005-481; *Texas v. City of Denton, et al.*

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bonnie Freymuth on behalf of Zachary Rhines
Bar No. 24116957
bonnie.freymuth@oag.texas.gov
Envelope ID: 97002047
Filing Code Description: ORDER
Filing Description: (Discovery)
Status as of 2/10/2025 8:36 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Richard Gladden | | richscot1@hotmail.com | 2/5/2025 10:26:15 AM | SENT |
| Richard Gladden | | richscot1@hotmail.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: The City Of Denton, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Amy Hoffee | | amy.hoffee@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |
| Mack Reinwand | | mack.reinwand@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |
| Jose E.de la Fuente | | jdelafuente@lglawfirm.com | 2/5/2025 10:26:15 AM | SENT |
| James F.Parker | | jparker@lglawfirm.com | 2/5/2025 10:26:15 AM | SENT |
| Gabrielle C.Smith | | gsmith@lglawfirm.com | 2/5/2025 10:26:15 AM | SENT |
| Sydney P.Sadler | | ssadler@lglawfirm.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Gerard Hudspeth

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Brian Beck

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Vicki Byrd

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bonnie Freymuth on behalf of Zachary Rhines
Bar No. 24116957
bonnie.freymuth@oag.texas.gov
Envelope ID: 97002047
Filing Code Description: ORDER
Filing Description: (Discovery)
Status as of 2/10/2025 8:36 AM CST

Associated Case Party: Vicki  Byrd

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Paul Meltzer

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Joe Holland

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Brandon Chase McGee

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: The State Of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Kyle Tebo | | Kyle.Tebo@oag.texas.gov | 2/5/2025 10:26:15 AM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 2/5/2025 10:26:15 AM | SENT |
| Zachary Rhines | | zachary.rhines@oag.texas.gov | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Chris Watts

Copy from re:SearchTX

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Bonnie Freymuth on behalf of Zachary Rhines
Bar No. 24116957
bonnie.freymuth@oag.texas.gov
Envelope ID: 97002047
Filing Code Description: ORDER
Filing Description: (Discovery)
Status as of 2/10/2025 8:36 AM CST

Associated Case Party: Chris Watts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Sara  Hensley

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Associated Case Party: Doug Shoemaker

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 2/5/2025 10:26:15 AM | SENT |

Copy from re:SearchTX

# TAB B

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff,* | § § § | IN THE DISTRICT COURT OF |
| v. | § § | |
| CITY OF DENTON; GERARD HUDSPETH, Mayor of Denton; BRIAN BECK, Mayor Pro Tem of Denton; VICKI BYRD, PAUL MELTZER, JOE HOLLAND, BRANDON CHASE McGEE, and JILL JESTER, Members of the City Council of Denton; SARA HENSLEY, City Manager of Denton; and JESSICA ROBLEDO, Interim Chief of Police of Denton; in their official capacities, *Defendants.* | § § § § § § § § § § § § § | DENTON COUNTY, TEXAS<br><br><br><br>481ST JUDICIAL DISTRICT |

### PLAINTIFF'S FIRST REQUESTS FOR ADMISSION TO DEFENDANTS

To:   Defendants, The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo, by and through their counsel of record, Jose E. De la Fuente, James F. Parker, Gabrielle C. Smith, and Sydney P. Sadler, of LLOYD GOSSELINK ROCHELE & TOWNSEND, P.C., 816 Congress Avenue, Suite 1900, Austin, Texas 78701.

Plaintiff, the State of Texas, serves these Requests for Admission on Defendants, as allowed by Texas Rule of Civil Procedure 198. Defendants must respond to the following Requests for Admission within thirty (30) days after service and supplement all responses in accordance with the Texas Rules of Civil Procedure.

.

Date: August 30, 2024

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Legal Strategy

**RYAN D. WALTERS**
Chief, Special Litigation Division

Respectfully Submitted,

*/S/ Jacob Przada*

**JACOB PRZADA**
Special Counsel
Tex. State Bar No. 24125371

OFFICE OF THE ATTORNEY GENERAL OF
TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2100
Jacob.Przada@oag.texas.gov

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, a true and correct copy of this document has been served via electronic service and/or email to the following:

**Counsel for Defendants:**

| | |
|---|---|
| Jose (Joe) de la Fuente | jdelafuente@lglawfirm.com |
| James Parker | jparker@lglawfirm.com |
| Gabrielle Smith | gsmith@lglawfirm.com |
| Catherine Daniels | cdaniels@lglawfirm.com |
| Sydney Sadler | ssadler@lglawfirm.com |
| Devin Alexander | devin.alexander@cityofdenton.com |

*/S/ Jacob Przada*
**JACOB PRZADA**
Special Counsel

1.  Unless otherwise specified, the time period covered by any Request for Admission ("admission" or "admissions," as applicable) is from November 2, 2021, through the present.

2.  Pursuant to Rule 198 of the Texas Rules of Civil Procedure (TRCP) you are required to serve a separate response to each of the following Requests for Admission. Each matter is admitted without the necessity of a court order, unless, on or before thirty (30) days after service of these requests, you serve upon attorneys for Plaintiff a written answer or objection addressed to each request, signed by you or your attorney.

3.  If you deny a matter on which an admission is requested, your denial must fairly meet the substance of the requested admission, and when good faith requires you to qualify your answer or deny only the part of the matter on which the admission is requested, you must specify so much of the matter as is true and qualify or deny the remainder. You may not give lack of information or knowledge as a reason for failing to admit or deny a matter unless you state that you have made reasonable inquiry and that the information known or easily obtainable by you is insufficient to enable you to admit or deny the matter.

4.  The singular shall be construed to include the plural, and the plural shall be construed to include the singular, as necessary to bring within the scope of each Request all responses that might otherwise be construed outside its scope.

5.  The connectives "and" and "or" and the phrase "and/or" shall be construed disjunctively or conjunctively as necessary to bring within the scope of each Request all responses that might otherwise be construed outside its scope.

6.  The use of any past, present, or future tense of any verb shall not be construed to limit or otherwise modify the time period covered by these Requests. Each Request should be read to include the past, present, or future tense of any verb as necessary to bring within the scope of each Request all responses that might otherwise be construed outside its scope.

## DEFINITIONS

1. "Plaintiff" or "defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, means the party, and when applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

2. "You" or "your" means: (1) The City of Denton, (2) Defendant Gerard Hudspeth, the Mayor of Denton, (3) Defendant Brian Beck, the Mayor Pro Tem of Denton and Councilmember for District #2, (4) Defendant Vicki Byrd, Councilmember for District #1, (5) Defendant Paul Meltzer, Councilmember for District #3, (6) Defendant Joe Holland, Councilmember for District #4, (7) Defendant Brandon Chase McGee, Councilmember At-Large, (8) Defendant Jill Jester, Councilmember At-Large, (9) Defendant Sara Hensley, City Manager of Denton, and (10) Defendant Jessica Robledo, Interim-Chief of Police of Denton as well as, successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the successors, predecessors, divisions, and subsidiaries.

3. "Communication" means any exchange or transmission of words or ideas to another person or an entity, including without limitation, conversations, discussions, letters, memoranda, interoffice communication platforms, social media platforms, instant messaging programs, meetings, notes, speeches, or other transfers of information, whether written, oral, or by any other means, whether direct or indirect, formal or informal, and includes any document which abstracts, digests, transcribes, or records any such communication.

4. "And/or," "and," and "or" refer to all listed categories inclusively, not exclusively (i.e., not the option of producing one group of documents, or another, nor of producing documents for one group of the listed persons or entities, but not others).

5. "Document" and "documents" mean all documents and tangible things, in the broadest sense allowed by Rule 192.3(b) and comment 2 of the Texas Rules of Civil Procedure.

6. "Possession" means actual care, custody, control, or management.

7. "Marijuana" means the plant Cannabis sativa L., and any preparation thereof, excluding Hemp.

8. "Paraphernalia" means equipment, a product, or material that is used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, or concealing a controlled substance in violation of Chapter 481 of the Texas Health and Safety Code, or in injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of Chapter 481 of the Texas Health and Safety Code.

9. "Memorandum" means a brief written message or report from one person or department in an organization to another.

10. "Codification" means the process of collecting, organizing, and consolidating local government ordinances and regulations into a comprehensive document.

11. "Adoption" means passage of a measure into law.

12. "Implementation" means placing an ordinance into effect.

13. "City Council" means: (1) Defendant Gerard Hudspeth, the Mayor of Denton, (2) Defendant Brian Beck, the Mayor Pro Tem of Denton and Councilmember for District #2, (3) Defendant Vicki Byrd, Councilmember for District #1, (4) Defendant Paul Meltzer, Councilmember for District #3, (5) Defendant Joe Holland, Councilmember for District #4, (6) Defendant Brandon Chase McGee, Councilmember At-Large, (7) Defendant Jill Jester, Councilmember At-Large, as well as successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the successors, predecessors, divisions, and subsidiaries.

14. "City of Denton Police Department" means the City of Denton Police Department, located at 601 E Hickory St, Denton, TX 76205.

15. "The Marijuana Ordinance" means Chapter 21 – Offenses, Article V - Marijuana Enforcement of the City of Denton Code of Ordinance, Proposition B to the November 8, 2022, City of Denton Election, and the Voter Initiative Petition preceding the Proposition.

16. All undefined terms and phrases have not only the meaning ascribed to them by ordinary custom and usage, but also the meaning ascribed to them by Merriam-Webster's Collegiate Dictionary.

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 1.**     Admit that the Marijuana Ordinance was adopted on November 22, 2022, following a vote by the City of Denton City Council.

ADMIT     OR     DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 2.**     Admit that following a vote on November 22, 2022, the Marijuana Ordinance became operational by law.

ADMIT     OR     DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 3.**     Admit that the June 6, 2023 vote on the Marijuana Ordinance only related to budgetary authorization for the Marijuana Ordinance.

ADMIT     OR     DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 4.**     Admit that during the June 6, 2023 vote on the Marijuana Ordinance, the City of Denton City Council considered a duplicate of the Marijuana Ordinance, already adopted on November 22, 2022.

ADMIT     OR     DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 5.** Admit that following a vote on the Marijuana Ordinance on June 6, 2023, the Marijuana Ordinance remained in the Code of Ordinances.

ADMIT    OR    DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 6.** Admit that employees of the City of Denton Police Department have been directed not to cite or arrest individuals for misdemeanor levels of marijuana and misdemeanor possession of marijuana paraphernalia.

ADMIT    OR    DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 7.** Admit that the Marijuana Ordinance conflicts with Texas Local Government Code 370.003.

ADMIT    OR    DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 8.** Admit that City of Denton Police Department citations and arrests for misdemeanor levels of marijuana have decreased by over 50 percent since November 22, 2022.

ADMIT      OR      DENY

If "Deny" provide explanation: _____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 9.**  Admit that City of Denton Police Department citations and arrests for misdemeanor possession of marijuana paraphernalia have decreased by over 50 percent since November 22, 2022.

ADMIT      OR      DENY

If "Deny" provide explanation: _____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 10.**  Admit that you did not send out a document or communication to employees of the City of Denton Police Department that the Marijuana Ordinance has not been implemented.

ADMIT      OR      DENY

If "Deny" provide explanation: _____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 11.**  Admit that you received a document or communication from the City of Denton Police Department that the Marijuana Ordinance has been implemented.

ADMIT      OR      DENY

If "Deny" provide explanation: _____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 12.**  Admit that you directed the City of Denton Police Department not to use the smell of marijuana for probable cause.

ADMIT        OR        DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 13.**    Admit that employees of the City of Denton Police Department have received training on the Marijuana Ordinance.

ADMIT        OR        DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 14.**    Admit that the City of Denton City Council could change a City of Denton policy relating to the implementation of the Marijuana Ordinance.

ADMIT        OR        DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 15.**    Admit that a new City Manager could change a City of Denton policy relating to the implementation of the Marijuana Ordinance.

ADMIT        OR        DENY

If "Deny" provide explanation:_____

_____

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff,* | § § § | IN THE DISTRICT COURT OF |
| v. | § § | |
| CITY OF DENTON; GERARD HUDSPETH, Mayor of Denton; BRIAN BECK, Mayor Pro Tem of Denton; VICKI BYRD, PAUL MELTZER, JOE HOLLAND, BRANDON CHASE McGEE, and JILL JESTER, Members of the City Council of Denton; SARA HENSLEY, City Manager of Denton; and JESSICA ROBLEDO, Interim Chief of Police of Denton; in their official capacities, *Defendants.* | § § § § § § § § § § § § § § § | DENTON COUNTY, TEXAS 481ST JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST REQUESTS FOR PRODUCTION TO DEFENDANTS

To:   Defendants, The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo, by and through their counsel of record, Jose E. De la Fuente, James F. Parker, Gabrielle C. Smith, and Sydney P. Sadler, of LLOYD GOSSELINK ROCHELE & TOWNSEND, P.C., 816 Congress Avenue, Suite 1900, Austin, Texas 78701.

Plaintiff, the State of Texas, serves these Requests for Production on Defendants, as allowed by Texas Rule of Civil Procedure 196. Defendants must produce all requested documents (as they are kept in the ordinary course of business or organized and labeled to correspond with categories in each request) for inspection and copying, not more than 30 days after service, at P.O. Box 12548, Capitol Station, Austin, Texas 78711-2548.

.

Date: August 30, 2024

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Legal Strategy

**RYAN D. WALTERS**
Chief, Special Litigation Division

Respectfully Submitted,

*/S/ Jacob Przada*
**JACOB PRZADA**
Special Counsel
Tex. State Bar No. 24125371

OFFICE OF THE ATTORNEY GENERAL OF
TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone.: (512) 463-2100
Jacob.Przada@oag.texas.gov

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, a true and correct copy of this document has been served via electronic service and/or email to the following:

**Counsel for Defendants:**

| | |
|---|---|
| Jose ( Joe) de la Fuente | jdelafuente@lglawfirm.com |
| James Parker | jparker@lglawfirm.com |
| Gabrielle Smith | gsmith@lglawfirm.com |
| Catherine Daniels | cdaniels@lglawfirm.com |
| Sydney Sadler | ssadler@lglawfirm.com |
| Devin Alexander | devin.alexander@cityofdenton.com |

*/S/ Jacob Przada*
**JACOB PRZADA**
Special Counsel

## INSTRUCTIONS

1. Answer each request for documents separately by listing the documents and by describing them as defined below. If documents produced in response to this request are numbered for production, in each response provide both the information that identifies the document and the document's number.

2. For a document that no longer exists or that cannot be located, identify the document, state how and when it passed out of existence or could no longer be located, and the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss of the document, and identify any other document evidencing the lost document's existence or any facts about the lost document.

    a.      When identifying the document, you must state the following:

        (1)     The nature of the document (e.g., letter, handwritten note).

        (2)     The title or heading that appears on the document.

        (3)     The date of the document and the date of each addendum, supplement, or other addition or change.

        (4)     The identities of the author, signer of the document, and person on whose behalf or at whose request or direction the document was prepared or delivered.

    b.      When identifying the person, you must state the following:

        (1)     The full name.

        (2)     The present or last known address and telephone number.

3. These requests for Production are deemed to be continuing and you have a duty under the Texas Rules of Civil Procedure to amend your responses to these requests if you obtain information upon the basis of which: (1) you know that an answer was incorrect when made, or (2) you know that any answer, though correct when made, is no longer correct, true or complete, and circumstances are such that a failure to amend the answer is in substance a knowing concealment.

4. If you believe that any written discovery is requesting privileged information, pursuant to Texas Rule of Civil Procedure 193, the party must state: (1) that the information or material responsive to request has been withheld, (2) the request to which the information or material relates, (3) the privilege or privileges asserted, and (4) a description of the documents, communications, or tangible things not being disclosed.

5. These Requests for Production are directed to all Defendants named in this lawsuit.

## DEFINITIONS

1.      "Plaintiff" or "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, means the party, and when applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

2.      "You" or "your" means: (1) The City of Denton, (2) Defendant Gerard Hudspeth, the Mayor of Denton, (3) Defendant Brian Beck, the Mayor Pro Tem of Denton and Councilmember for District #2, (4) Defendant Vicki Byrd, Councilmember for District #1, (5) Defendant Paul Meltzer, Councilmember for District #3, (6) Defendant Joe Holland, Councilmember for District #4, (7) Defendant Brandon Chase McGee, Councilmember At-Large, (8) Defendant Jill Jester, Councilmember At-Large, (9) Defendant Sara Hensley, City Manager of Denton, and (10) Defendant Jessica Robledo, Interim-Chief of Police of Denton, as well as successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the successors, predecessors, divisions, and subsidiaries.

3.      "Document" means all written, typed, or printed matter and all magnetic, electronic, or other records or documentation of any kind or description in your actual possession, custody, or control, including those in the possession, custody, or control of any and all present or former directors, officers, employees, consultants, accountants, attorneys, or other agents, whether or not prepared by you, that constitute or contain matters relevant to the subject matter of the action. "Document" includes, but is not limited to, the following: letters, reports, charts, diagrams, correspondence, telegrams, memoranda, notes, records, minutes, contracts, agreements, records or notations of telephone or personal conversations or conferences, interoffice communications, e-mail, microfilm, bulletins, circulars, pamphlets, photographs, faxes, invoices, tape recordings, computer printouts, drafts, résumés, logs, and worksheets.

4.      "Communication" means any oral or written communication of which Defendants have knowledge, information, or belief.

5.      "Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; PIF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or audio format, including history files, caches, and cookies; and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks,

CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

6. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

7. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors.

8. "Mobile device" means any cellular telephone, satellite telephone, pager, personal digital assistant, handheld computer, walkie-talkie, or any combination of these devices.

9. "The Cities" means, when applicable, a municipality, including agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

10. "Law Enforcement" means a public agency charged with policing functions, including any of its component bureaus, and when applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

11. "City Council" means: (1) Defendant Gerard Hudspeth, the Mayor of Denton, (2) Defendant Brian Beck, the Mayor Pro Tem of Denton and Councilmember for District #2, (3) Defendant Vicki Byrd, Councilmember for District #1, (4) Defendant Paul Meltzer, Councilmember for District #3, (5) Defendant Joe Holland, Councilmember for District #4, (6) Defendant Brandon Chase McGee, Councilmember At-Large, (7) Defendant Jill Jester, Councilmember At-Large, as well as successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the successors, predecessors, divisions, and subsidiaries.

12. "Marijuana" means the plant Cannabis sativa L., and any preparation thereof, excluding Hemp.

13. "The Marijuana Ordinance" means Chapter 21 – Offenses, Article V - Marijuana Enforcement of the City of Denton Code of Ordinance, Proposition B to the November 8, 2022 City of Denton Election, and the Voter Initiative Petition preceding the Proposition.

14. "Public Health Statistics" mean numbers that summarize information related to health.

15. "Disciplinary Statistics" mean numbers that summarize information related to officer discipline.

16. "Enforcement" means ensuring that individuals obey a law.

17. "Policy" means a law, regulation, procedure, administrative action, incentive, or voluntary practice of governments and other institutions.

18. "Memorandum" means a brief written message or report from one person or department in an organization to another.

19. "Public" means individuals within the City of Denton.

20. "Police Directive" or "General Order" means an official written order or instruction by the City of Denton Police Department, its Chief, or Police Administration.

21. "Social Media Posts" refer to a short-form message or content that is published on social media platforms on the official or personal account of any Defendant, including but not limited to Instagram, Facebook, Meta, Twitter, X, TikTok, YouTube, LinkedIn and Reddit.

22. "Demonstrative" means a visual, graphic, or sound aid used to explain or illustrate a witness's testimony or presentation.

23. "Violation" means an action that breaks or goes against a law, regulation, ordinance, policy, or memorandum, including the Marijuana Ordinance or any related policy or memorandum.

24. "Ground Game Texas" refers to the dismissed Intervenor-Defendant in *State of Texas v. City of Austin, et. al.*, D-1-GN-24-000586 (419th Dist. Ct., Travis County, Tex., Jun. 12, 2024), and the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the parties or under the parties' control, whether directly or indirectly, including any attorney.

25. "Decriminalize Denton" refers to the dismissed Intervenor-Defendants in this suit and the parties' agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the parties or under the parties' control, whether directly or indirectly, including any attorney.

26. "Supporting" means seek to influence a politician or government official on an issue.

27. "Paraphernalia" means equipment, a product, or material that is used or intended for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, or concealing a controlled substance in violation of Chapter 481 of the Texas Health

6

and Safety Code, or in injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of Chapter 481 of the Texas Health and Safety Code.

28.     "Marijuana use" means the smoking, eating, drinking, or inhaling of marijuana.

29.     **"**Tetrahydrocannabinol" (hereinafter, "THC"), means the primary psychoactive component in marijuana, hashish, and other preparations derived from cannabis plants, especially Cannabis sativa, or produced synthetically.

30.     "Codification" means the process of collecting, organizing, and consolidating local government ordinances and regulations into a comprehensive document.

31.     "Adoption" means passage of a measure into law.

32.     "Implementation" means placing an ordinance into effect.

33.     "Media" means members of the media and press, associated with broadcast and narrowcast mediums, including radio, television, newspapers, magazines, journals, and the internet.

34.     "Reprioritization" means the process of rearranging priorities based on their importance and urgency.

35.     All undefined terms and phrases have not only the meaning ascribed to them by ordinary custom and usage, but also the meaning ascribed to them by Merriam-Webster's Collegiate Dictionary.

## REQUESTS FOR PRODUCTION

**REQUEST 1**: Produce all communications and documents sent or received by you, from November 2, 2021 to Present, regarding codification, adoption, or implementation of the Marijuana Ordinance, including communications in which you were copied.

**REQUEST 2**: Produce all policies or memoranda created by you, from November 2, 2021 to Present, regarding codification, adoption, or implementation of the Marijuana Ordinance.

**REQUEST 3**: Produce all communications and documents sent to or received from, or exchanged by and between you and citizens groups, including Ground Game Texas, Decriminalize Denton, any parties supporting the Marijuana Ordinance, or their agents, employees, or representatives, regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.

**REQUEST 4**: Produce all communications and documents sent to or received from, or exchanged by and between you and the public relating to enforcement of the Marijuana Ordinance and the Marijuana laws of the State of Texas.

**REQUEST 5**: Produce all communications and documents sent to or received from, or exchanged by and between you and law enforcement or their agents, employees, or representatives regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.

**REQUEST 6**: Produce all communications and documents sent to or received from, or exchanged by and between you and the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos or their agents, employees, or representatives regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.

**REQUEST 7**: Produce all communications and documents sent to or received from, or exchanged by and between you and the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos or their agents, employees, or representatives regarding codification, adoption, or implementation of a Marijuana Ordinance by the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos from November 2, 2021 to Present.

**REQUEST 8**: Produce all communications and documents sent to or received from, or exchanged by and between you and the Denton Independent School District, or their agents, employees, or representatives regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.

**REQUEST 9**: Produce all disciplinary statistics relating to violations of the Marijuana Ordinance or any related policy or memorandum by employees of the City of Denton Police Department from November 22, 2022 to Present.

**REQUEST 10**: Produce all communications and documents sent to or received from, or exchanged by and between you and employees of the City of Denton Police Department or their agents, and representatives regarding reprioritization of Marijuana enforcement, including misdemeanor marijuana possession or misdemeanor possession of marijuana paraphernalia offenses from November 2, 2021 to Present.

**REQUEST 11**: Produce all copies of communications or documents within your possession relating to the City of Denton Police Administration's demonstrative of marijuana at a City Council meeting from November 2, 2021 to Present.

**REQUEST 12**: Produce all communications and documents sent to or received from, or exchanged by and between you and the Denton County Public Health District or their agents, employees, or representatives regarding marijuana use in the City of Denton from November 2, 2021 to Present.

**REQUEST 13:** Produce all communications or documents within your possession, relating to funding by the City of Denton or the City of Denton Police Department for THC testing from February 13, 2021 to November 22, 2022.

**REQUEST 14**: Produce all communications or documents within your possession, relating to funding by the City of Denton or the City of Denton Police Department for THC testing from November 22, 2022 to Present.

**REQUEST 15**: Produce all communications or documents within your possession, relating to citations or arrests for Class A or Class B misdemeanor possession of marijuana offenses, and for misdemeanor possession of marijuana paraphernalia from February 13, 2021 to November 22, 2022.

**REQUEST 16**: Produce all communications or documents within your possession, relating to citations or arrests for Class A or Class B misdemeanor possession of marijuana offenses, and for misdemeanor possession of marijuana paraphernalia from November 22, 2022 to Present.

**REQUEST 17**: Produce all communications or documents within your possession, relating to training on the Marijuana Ordinance from February 13, 2021 to November 22, 2022.

**REQUEST 18**: Produce all communications or documents within your possession, relating to training on the Marijuana Ordinance from November 22, 2022 to Present.

**REQUEST 19**: Produce all communications or documents within your possession, relating to use of the smell of marijuana for probable cause from February 13, 2021 to November 22, 2022.

**REQUEST 20**: Produce all communications or documents within your possession, relating to use of the smell of marijuana for probable cause from November 22, 2022 to Present.

: Produce all communications or documents within your possession, relating to citations or arrests for felony-level marijuana offenses from February 13, 2021 to November 22, 2022.

**REQUEST 22**: Produce all communications or documents within your possession, relating to citations or arrests for felony-level marijuana offenses from November 22, 2022 to Present.

**REQUEST 23**: Produce all communications or documents within your possession, relating to citations or arrests for misdemeanor possession of marijuana offenses, and for misdemeanor possession of marijuana paraphernalia, where the subject expressed that they thought it was lawful to possess marijuana or marijuana paraphernalia, from November 22, 2022 to Present.

**REQUEST 24**: Produce all communications and documents sent by you, your attorneys, or agents, employees, or representatives to the media regarding the Marijuana Ordinance or this lawsuit from November 2, 2021 to Present.

Cause No. 24-1005-481

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff*, | § § § § | IN THE DISTRICT COURT OF |
| v. | § § | |
| CITY OF DENTON; GERARD HUDSPETH, Mayor of Denton; BRIAN BECK, Mayor Pro Tem of Denton; VICKI BYRD, PAUL MELTZER, JOE HOLLAND, BRANDON CHASE McGEE, and JILL JESTER, Members of the City Council of Denton; SARA HENSLEY, City Manager of Denton; and JESSICA ROBLEDO, Interim Chief of Police of Denton; in their official capacities, *Defendants*. | § § § § § § § § § § § § § § § | DENTON COUNTY, TEXAS

481ST JUDICIAL DISTRICT |

### PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANTS

To:     Defendants, The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo, by and through their counsel of record, Jose E. De la Fuente, James F. Parker, Gabrielle C. Smith, and Sydney P. Sadler, of LLOYD GOSSELINK ROCHELE & TOWNSEND, P.C., 816 Congress Avenue, Suite 1900, Austin, Texas 78701.

Plaintiff, the State of Texas, serves these Interrogatories on Defendants, as allowed by Texas Rule of Civil Procedure 197. Defendants must answer each interrogatory separately, fully, in writing, and under oath, within 30 days after service.

Date: August 30, 2024

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Legal Strategy

**RYAN D. WALTERS**
Chief, Special Litigation Division

Respectfully Submitted,

*/S/ Jacob Przada*

**JACOB PRZADA**
Special Counsel
Tex. State Bar No. 24125371

OFFICE OF THE ATTORNEY GENERAL OF
TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 463-2100
Jacob.Przada@oag.texas.gov

**COUNSEL FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on August 30, 2024, a true and correct copy of this document has been served via electronic service and/or email to the following:

**Counsel for Defendants**:

| | |
|---|---|
| Jose ( Joe) de la Fuente | jdelafuente@lglawfirm.com |
| James Parker | jparker@lglawfirm.com |
| Gabrielle Smith | gsmith@lglawfirm.com |
| Catherine Daniels | cdaniels@lglawfirm.com |
| Sydney Sadler | ssadler@lglawfirm.com |
| Devin Alexander | devin.alexander@cityofdenton.com |

*/S/ Jacob Przada*

**JACOB PRZADA**
Special Counsel

2

## INSTRUCTIONS

For any requested information about a document that no longer exists or cannot be located, identify the document, state how and when it passed out of existence or when it could no longer be located, and give the reasons for the disappearance. Also, identify each person having knowledge about the disposition or loss, and identify each document evidencing the existence or nonexistence of each document that cannot be located.

## DEFINITIONS

1.      "Plaintiff," or "Defendant," as well as a party's full or abbreviated name or a pronoun referring to a party, means the party, and when applicable, the party's agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

2.      "You" or "your" means: (1) The City of Denton, (2) Defendant Gerard Hudspeth, the Mayor of Denton, (3) Defendant Brian Beck, the Mayor Pro Tem of Denton and Councilmember for District #2, (4) Defendant Vicki Byrd, Councilmember for District #1, (5) Defendant Paul Meltzer, Councilmember for District #3, (6) Defendant Joe Holland, Councilmember for District #4, (7) Defendant Brandon Chase McGee, Councilmember At-Large, (8) Defendant Jill Jester, Councilmember At-Large, (9) Defendant Sara Hensley, City Manager of Denton, and (10) Defendant Jessica Robledo, Interim-Chief of Police of Denton, as well as successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the successors, predecessors, divisions, and subsidiaries.

3.	"Document" means any writing of any kind, source, or authorship, regardless of how it may be recorded, stored, or reproduced. The term includes both originals and all non-identical copies thereof, as well as all drafts, revisions, and amendments, regardless of whether adopted. The term also includes but is not limited to handwritten, typewritten, printed, photocopied, photographic, and electronically recorded matter. For purposes of illustration and not limitation, the term includes: contracts, agreements, communications, reports, charges, complaints, correspondence, letters, emails, social media postings, telegrams, memoranda, applications, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, journals, diaries, schedules, charts, graphs, worksheets, spreadsheets, reports, notebooks, note charts, handwritten notes, plans, drawings, sketches, maps, brochures, pamphlets, advertisements, circulars, press releases, summaries or records of meetings or conferences, summaries or reports or records of investigations or negotiations, opinions or reports of consultants, bills, statements, invoices, affidavits, schedules, audio recordings, video recordings, transcriptions, and photographs.

4.	"Statement" means any written or graphic assertion or representation signed, adopted, or approved by the person making it, or any stenographic, mechanical, electronic, or other record or transcription that is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

5.	"Communication" means any conveyance or transfer of any information from one person to another by any means or in any form, including but not limited to all types of documents, oral communications, and online resources such as social media.

6.	"Electronic or magnetic data" means electronic information that is stored in a medium from which it can be retrieved and examined. The term refers to the original (or identical duplicate when the original is not available) and any other copies of the data that may have attached comments, notes, marks, or highlighting of any kind. Electronic or magnetic data includes, but is not limited to, the following: computer programs; operating systems; computer activity logs; programming notes or instructions; e-mail receipts, messages, or transmissions; output resulting from the use of any software program, including word-processing documents, spreadsheets, database files, charts, graphs, and outlines; metadata; PIF and PDF files; batch files; deleted files; temporary files; Internet- or web-browser-generated information stored in textual, graphical, or

audio format, including history files, caches, and cookies, and any miscellaneous files or file fragments. Electronic or magnetic data includes any items stored on magnetic, optical, digital, or other electronic-storage media, such as hard drives, floppy disks, CD-ROMs, DVDs, tapes, smart cards, integrated-circuit cards (e.g., SIM cards), removable media (e.g., Zip drives, Jaz cartridges), microfiche, punched cards. Electronic or magnetic data also includes the file, folder, tabs, containers, and labels attached to or associated with any physical storage device with each original or copy.

7. "Possession, custody, or control" of an item means that the person either has physical possession of the item or has a right to possession equal or superior to that of the person who has physical possession of the item.

8. "Person" means any natural person, corporation, firm, association, partnership, joint venture, proprietorship, governmental body, or any other organization, business, or legal entity, and all predecessors or successors in interest.

9. "Mobile device" means any cellular telephone, satellite telephone, pager, personal digital assistant, handheld computer, walkie-talkie, or any combination of these devices.

10. "Police Directive" or "General Order" means an official written order or instruction by the City of Denton Police Department, its Chief, or Police Administration.

11. "Identify" or "describe," when referring to a person, means you must state the following:

1. The full name.
2. The present or last known office address and office telephone number.
3. The occupation, job title, employer, and employer's address at the time of the event or period referred to in each particular interrogatory.
4. In the case of any entity, the identity of the officer, employee, or agent most closely connected with the subject matter of the interrogatory and the officer who is responsible for supervising that officer or employee.

12. "Identify" "describe," or "explain" when referring to document or policy, means you must state the following:

1. The nature of the document (e.g., letter, handwritten note).

2. The title or heading that appears on the document.

3. The date of the document and the date of each addendum, supplement, or other addition or change.

4. The identities of the author, signer of the document, and person on whose behalf or at whose request or direction the document was prepared or delivered.

5. The present location of the document and the name, address, position or title, and telephone number of the person or persons having custody of the document.

6. A summary of the contents of the document.

13. **"**Tetrahydrocannabinol" (hereinafter, "THC"), means the primary psychoactive component in marijuana, hashish, and other preparations derived from cannabis plants, especially Cannabis sativa, or produced synthetically.

14. "Marijuana" means the plant Cannabis sativa L., and any preparation thereof, excluding Hemp.

15. "Codification" means the process of collecting, organizing, and consolidating local government ordinances and regulations into a comprehensive document.

16. "Adoption" means passage of a measure into law.

17. "Implementation" means placing an ordinance into effect.

18. "Policy" means a law, regulation, procedure, administrative action, incentive, or voluntary practice of governments and other institutions, written or unwritten.

19. "City Staff" means all employees of the City.

20. "City of Denton" means the City of Denton, located at 601 East Hickory Street, Denton, Texas 76205, and all agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under its control, whether directly or indirectly, including any attorney

21. "Enforce" means compel observance of or compliance with a law, rule, or obligation.

22. "Media Personnel" means members of the media and press, associated with broadcast and narrowcast mediums, including radio, television, newspapers, magazines, journals, and the internet.

23.    "The Cities" means, when applicable, a municipality, including agents, representatives, officers, directors, employees, partners, corporate agents, subsidiaries, affiliates, or any other person acting in concert with the party or under the party's control, whether directly or indirectly, including any attorney.

24.    "City Council" means: (1) Defendant Gerard Hudspeth, the Mayor of Denton, (2) Defendant Brian Beck, the Mayor Pro Tem of Denton and Councilmember for District #2, (3) Defendant Vicki Byrd, Councilmember for District #1, (4) Defendant Paul Meltzer, Councilmember for District #3, (5) Defendant Joe Holland, Councilmember for District #4, (6) Defendant Brandon Chase McGee, Councilmember At-Large, (7) Defendant Jill Jester, Councilmember At-Large, as well as successors, predecessors, divisions, subsidiaries, present and former officers, agents, employees, and all other persons acting on behalf of the successors, predecessors, divisions, and subsidiaries.

25.    All undefined terms and phrases have not only the meaning ascribed to them by ordinary custom and usage, but also the meaning ascribed to them by Merriam-Webster's Collegiate Dictionary.

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 1:** Identify all documents utilized to assist in any way with the preparation of the answers to each of the interrogatories.

Answer: _____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 2:** Explain the process to change, adopt, or implement a different policy or ordinance than a policy or ordinance currently codified, adopted, or implemented by the City of Denton.

Answer: _____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 3:** Identify every person who has firsthand factual information about this case, rebuttal or impeachment evidence in this case, or who is expected testify in this case, including your experts or rebuttal witnesses, and provide a brief statement of each individual's connection with the case. *See* Tex. R. Civ. P. 192.

Answer: _____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 4:** State the legal theories and describe in general the factual bases for your defenses. *See* Tex. R. Civ. P. 192.3(j), 197.1.

Answer: _____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul

Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 5:** Identify any City of Denton employees and third-parties, including the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos, and media personnel with whom you discussed codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.

Answer: _____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 6:** If you contend that the Marijuana Ordinance can, or cannot be changed to comply with the City Charter, Ordinance, or a policy, state the factual basis for your claim and identify all documents relied on for your response.

Answer: _____

_____

**TO DEFENDANT:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 7:** Identify any documented changes in Marijuana use since the Marijuana Ordinance took effect, including but not limited to any documented changes occurring at the Denton Independent School District, or in connection to City of Denton Police citations and arrests or traffic and pedestrian stops.

Answer: _____

_____

**TO DEFENDANTS:** Jessica Robledo

**INTERROGATORY 8:** Identify how many times the Marijuana Ordinance has been enforced and identify the individuals whom the Marijuana Ordinance has been enforced against.

Answer: _____

_____

**TO DEFENDANTS:** Sara Hensley and Jessica Robledo

**INTERROGATORY 9:** Identify all jobs to which you have applied from August 30, 2022 to Present, including the name of the employer, its location, and the ultimate outcome of your application for that job.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 10:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to funding for THC testing that was in effect during the period spanning February 13, 2021, to November 22, 2022.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 11:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to funding for THC testing that has been in effect during the period spanning November 22, 2022, to Present.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 12:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to the use of the smell of marijuana for probable cause that was in effect during the period spanning February 13, 2021, to November 22, 2022.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 13:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to the use of the smell of marijuana for probable cause that has been in effect during the period spanning November 22, 2022, to Present.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 14:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to citations or arrests for Class A or Class B misdemeanor possession of marijuana offenses, and for misdemeanor possession of marijuana paraphernalia that was in effect from February 13, 2021, to November 22, 2022.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 15:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to citations or arrests for Class A or Class B misdemeanor possession of marijuana offenses, and for misdemeanor possession of marijuana paraphernalia that has been in effect from November 22, 2022, to Present.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 16:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to training on the Marijuana Ordinance that was in effect from February 13, 2021, to November 22, 2022.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 17:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to training on the Marijuana Ordinance that has been in effect from November 22, 2022, to Present.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 18:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to citations or arrests for felony-level marijuana offenses that was in effect from February 13, 2021, to November 22, 2022.

Answer: _____

_____

**TO DEFENDANT:** Jessica Robledo

**INTERROGATORY 19:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to citations or arrests for felony-level marijuana offenses that has been in effect from November 22, 2022, to Present.

Answer: _____

_____

**TO DEFENDANT:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 20:** Identify all inquiries by the public about confusion relating to codification, implementation, or adoption of the City of Denton's Marijuana Ordinance.

Answer: _____

_____

**TO DEFENDANT:** Sara Hensley and Jessica Robledo

**INTERROGATORY 21:** Identify all documents relied upon in developing the current City of Denton Police Department Policy and Police Directive or General Orders relating to misdemeanor-level marijuana offenses.

Answer: _____

_____

**TO DEFENDANTS:** Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

**INTERROGATORY 22:** If you have ever been convicted of a felony or a crime involving moral turpitude, state the nature of the charge and the date and place of arrest and conviction. *See* Tex. R. Evid. 404(a)(2)(B), 609(a).

12

Answer: _____

_____

# TAB C

24-1005-481

Cause No. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | In the District Court of |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| CITY OF DENTON; GERARD | § | |
| HUDSPETH, Mayor of Denton; BRIAN | § | |
| BECK, Mayor Pro Tem of Denton; VICKI | § | Denton County, Texas |
| BYRD, PAUL MELTZER, JOE | § | |
| HOLLAND, BRANDON CHASE | § | |
| McGEE, and CHRIS WATTS, Members of | § | |
| the City Council of Denton; SARA | § | |
| HENSLEY, City Manager of Denton; and | § | |
| DOUG SHOEMAKER, Chief of Police of | § | _____Judicial District |
| Denton; in their official capacities, | § | |
| *Defendants.* | | |

**Plaintiff's Original Verified Petition,**
**Application for Temporary Injunction and Permanent Injunction**

The City of Denton ("Denton"), a home-rule city, adopted an ordinance designed to eliminate marijuana enforcement, knowing full well that "the City does not have the authority to implement" the ordinance. *See* Letter from City Manager to City Council (Exhibit 1). This ordinance and any corresponding Denton Police Department general order or directive, constitute a policy under which Denton will not fully enforce laws relating to drugs, including Chapter 481. Chapter 481 makes possession of marijuana and drug paraphernalia an offense. Thus, the ordinance and any corresponding Denton Police Department general order or directive violate and are preempted by section 370.003 of the Texas Local Government Code: "The governing body of a municipality [or a] municipal police department … may not adopt a policy under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law." The ordinance is also unconstitutional. "[N]o…ordinance passed under [Denton's] charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5.

Consequently, the State of Texas files this Original Petition and Application for Temporary and Permanent Injunction asking the Court to (1) declare the ordinance and any corresponding

Copy from re:SearchTX

Denton Police Department general order or directive *ultra vires* and (2) order Defendants to (a) repeal the Ordinance, (b) cancel any corresponding Denton Police Department general order or directive, (c) fully enforce the drug laws in chapter 481, (d) not discipline any employee of the City of Denton for enforcing the drug laws in Chapter 481, and (e) modify city policies and internal operating procedures to the extent that they have been updated in response to the ordinance.

## Discovery Control Plan

1. If discovery were needed, it would be intended to be conducted under Level 2 of Texas Rule of Civil Procedure 190.3. But this is a case of pure law and discovery is unneeded.

## Claims for Relief

2. Plaintiff seeks injunctive relief. Therefore, this suit is not governed by the expedited actions process in Tex. R. Civ. P. 169.

## Venue

3. Venue is proper in Denton County under section 15.002(a)(1) and (a)(3) of the Texas Civil Practices and Remedies Code.

## Sovereign Immunity Inapplicable

4. Neither sovereign immunity nor governmental immunity applies to the State of Texas's *ultra vires* claim. "The basic justification for th[e] ultra vires exception to sovereign immunity is that *ultra vires* acts—or those acts without authority—should not be considered acts of the state at all." *Hall v. McRaven*, 508 SW.3d 232, 238 (Tex. 2017) (internal quotation marks and citations omitted). As a result, "*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state over one of its agents." *Id.*

5. Further, Texas Civil Practice and Remedies Code Sec. 37.006(b) states "In any proceeding that involves the validity of a municipal ordinance or franchise, the municipality must be made a party and is entitled to be heard." This has been consistently construed as a legislative waiver of governmental immunity in situations like the one at issue here. *Tex. Educ. Agency v. Leeper*, 893

Copy from re:SearchTX

S.W.2d 432, 446 (Tex. 1994); *Tex. Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628 (Tex. 2010).

## Parties

6.     Plaintiff is the State of Texas. *State v. Hollins*, 620 S.W.3d 400, 410 (Tex. 2020) (citing *State v. Naylor*, 466 S.W.3d 783, 790 (Tex. 2015) ("As a sovereign entity, the State has an intrinsic right to enact, interpret, and enforce its own laws."); *Yett v. Cook*, 115 Tex. 205, 221, 281 S.W. 837, 842 (1926) ("That the state has a justiciable 'interest' in its sovereign capacity in the maintenance and operation of its municipal corporations in accordance with law does not admit of serious doubt.")).

7.     Defendant City of Denton is a home-rule municipality.

8.     Defendant Gerard Hudspeth is the Mayor of Denton.

9.     Defendant Brian Beck is the Mayor Pro Tem of Denton and Councilmember for District #2.

10.    Defendant Vicki Byrd is Councilmember for District #1.

11.    Defendant Paul Meltzer is Councilmember for District #3.

12.    Defendant Joe Holland is Councilmember for District #4.

13.    Defendant Brandon Chase McGee is a Councilmember At-Large.

14.    Defendant Chris Watts is a Councilmember At-Large.

15.    Defendant Sara Hensley is City Manager of Denton.

16.    Defendant Doug Shoemaker is Chief of Police of Denton.

17.    All Defendants are sued in their official capacities.

18.    All Defendants may be served with process through Sara Hensley, City Manager, at 215 E. McKinney Street, Denton, Texas 76201.

Copy from re:SearchTX

19.     Through the ballot initiative process, the citizens of Denton placed Proposition B on the November 8, 2022, ballot. Proposition B contained a city ordinance which would regulate how Denton Police Department enforces certain marijuana laws governed by Chapter 481 of the Texas Health and Safety Code. Proposition B passed.

20.     The day after the election, Denton City Manager Sara Hensley sent a memo to Denton City Council advising them that the ordinance was approved by voters and would become effective after the election is canvassed by City Council. The memo outlines reasons why the City does not have the authority to implement some of the provisions of Proposition B. For instance, Ms. Hensley acknowledges that "Proposition B imposes explicit prohibitions on Denton Police Department's ability to enforce laws related to low-level marijuana possession," but concedes that **"those prohibitions are in direct conflict with, and are superseded by, the Texas Code of Criminal Procedure."** (Exhibit 1).

21.     Ms. Hensley, perhaps in an effort to appease both the voters and the State, writes that "[i]n practice, a Denton Police Officer will continue to have authority to enforce state laws relating to marijuana. **Neither the City, the City Manager, nor the Chief of Police has the authority to direct officers to do otherwise or to discipline an officer when they are acting in accordance with state law."** Exhibit 1 (emphasis added). Meanwhile, the Ordinance provides for discipline of Denton City Police Officers for violating it.

22.     The Denton City Council codified and published the ordinance anyway. The ordinance is now in effect as City of Denton Code of Ordinances Chapter 21 – Offenses, Article V - Marijuana Enforcement ("the Ordinance").[1]

23.     The Ordinance reads as follows:

---

[1] Available at
https://library.municode.com/tx/denton/codes/code_of_ordinances/423747?nodeId=SPACOOR_CH21OF_ARTVMAEN

Copy from re:SearchTX

## ARTICLE V. - MARIJUANA ENFORCEMENT

Sec. 21-80. - Ending citations and arrests for misdemeanor possession of marijuana.

(a) Denton Police Officers shall not issue citations or make arrests for class A or class B misdemeanor possession of marijuana offenses, except in the limited circumstances described in subsection (b).

(b) The only circumstances in which Denton Police Officers are permitted to issue citations or make arrests for class A or class B misdemeanor possession of marijuana are when such citations or arrests are part of (1) the investigation of a felony level narcotics case that has been designated as a high priority investigation by a Denton Police Commander, assistant chief of police, or chief of police; and/or (2) the investigation of a violent felony.

(c) In every instance other than those described in (b), if a Denton Police Officer has probable cause to believe that a substance is marijuana, an officer may seize the marijuana. If the officer seizes the marijuana, they must write a detailed report and release the individual if possession of marijuana is the sole charge.

(d) Denton Police Officers shall not issue any charge for possession of marijuana unless it meets at least one of the factors described in subsection (b).

Section 21-81. - Citations for possession of drug residue or drug paraphernalia shall not be issued in lieu of a possession of marijuana charge.

(a) A class C misdemeanor citation for possession of drug residue or drug paraphernalia shall not be issued in lieu of a possession of marijuana charge.

Section 21-82. - Prohibition against using city funds or personnel to conduct THC concentration testing.

(a) No city funds or personnel shall be used to request, conduct, or obtain tetrahydrocannabinol (THC) testing of any cannabis-related substance to determine

Copy from re:SearchTX

whether the substance meets the legal definition of marijuana under state law, except in the limited circumstances of a police investigation pursuant to subsection 21-80(b).

(b) This prohibition shall not limit the ability of Denton Police to conduct toxicology testing to ensure public safety, nor shall it limit THC testing for the purpose of any violent felony charge.

Section 21-83. – Prohibition against city police using the odor of marijuana or hemp has probable cause for search or seizure.

(a) Denton Police shall not consider the odor of marijuana or hemp to constitute probable cause for any search or seizure, except in the limited circumstances of a police investigation pursuant to subsection 21-80(b).

Section 21-84. - Training and policy updates; community involvement.

(a) The city manager and chief of police shall ensure that Denton Police Officers receive adequate training concerning each of the provisions of this ordinance.

(b) The city manager shall work with the Denton Police Chief and other relevant stakeholders identified in (c) to update city policies and internal operating procedures in accordance with this article. Actions that may be necessary include, but are not limited to: updating the Denton Police Department General Manual; updating the training bulletin; training officers; and updating internal databases and systems.

(c) The city manager shall arrange regular meetings to discuss the development of policies, procedures, and practices related to this article, which shall include community stakeholders including: the police chief's advisory panel; other interested stakeholders and community organizations; individuals directly impacted by arrests within the city; immigrant communities; and communities of color. These meetings shall be open to public participation, have minutes and agendas publicly accessible, and have audio and video recordings uploaded to the city's website.

Section 21-85. - Discipline.

Copy from re:SearchTX

(a) Any violation of this chapter may subject a Denton Police Officer to discipline as provided by the Texas Local Government Code or as provided in city policy.

Section 21-86. - Reporting.

(a) Within three (3) months of the adoption of this article, and once per year thereafter, the city manager or their designee shall present to the city council, at a public meeting subject to the Texas Open Meetings Act, a report concerning the city's implementation of this article.

## Legal Analysis

24. Because Denton is a home-rule municipality, it has "the full power of self-government" and does not need a special grant from the Legislature to enact local ordinances. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013). However, "no…ordinance passed under [Denton's] charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5.

25. Under State law, "The governing body of a municipality … [or] a municipal police department … may not adopt a policy under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law." Tex. Local Gov't Code § 370.003.

26. Chapter 481 of the Health and Safety Code provides that possession of marijuana and drug paraphernalia are offenses. Tex. Health and Safety Code §§ 481.121, .125.

27. Section 21-80 of the Ordinance prohibits Denton police officers from issuing citations or making arrests for Class A or Class B misdemeanor possession of marijuana. Thus, it is a policy under which Denton will not "fully enforce … Chapter 481." Therefore, section 21-80 violates § 370.003.

28. Section 21-81 of the Ordinance prohibits Denton police officers from issuing Class C misdemeanor citations for "possession of drug residue [sic; there is no such offense] or drug

Copy from re:SearchTX

paraphernalia … in lieu of a possession of marijuana charge." Thus, it is a policy under which Denton will not "fully enforce … Chapter 481." Therefore, section 22-81 violates § 370.003.

29.     Section 21-82 of the Ordinance prohibits city funds and personnel "to request, conduct, or obtain tetrahydrocannabinol (THC) testing of any cannabis-related substance to determine whether the substance meets the legal definition of marijuana under state law" except in certain circumstances. Thus, section 21-82 is a policy under which Denton will not "fully enforce … Chapter 481." Therefore, it violates § 370.003.

30.     Section 21-84 of the Ordinance requires that Denton Police Officers "receive adequate training concerning each of the provisions of this article", requires city policies and internal operating procedures to be updated "in accordance with this article", and requires "regular meetings to discuss the development of policies, procedures, and practices related to this article, which shall include community stakeholders … community organizations [and] communities of color." The Ordinance violates state law, so having meetings to discuss implementation of the Ordinance is a policy under which Denton will not "fully enforce … Chapter 481." Therefore, section 21-84 violates § 370.003.

31.     Section 21-85 of the Ordinance states, "Any violation of this chapter may subject a Denton Police Officer to discipline…." This is a policy under which Denton will not "fully enforce…Chapter 481." In fact, Denton threatens officers who do not enforce Chapter 481 with "discipline." Therefore, section 21-85 violates § 370.003.

32.     Section 21-86 requires the city manager to submit regular reports to the city council "concerning the city's implementation of this ordinance." The Ordinance violates state law, so reports discussing implementation of the Ordinance is a policy under which Denton will not "fully enforce … Chapter 481." Therefore, section 21-86 violates § 370.003.

33.     Because the Ordinance violates section 370.003 of the Local Government Code, Defendants "may not adopt" it. Tex. Loc. Gov't Code § 370.003.

Copy from re:SearchTX

34. Although local ordinances are presumed valid, if an ordinance is unmistakably and clearly at odds with a statute, the ordinance is preempted. *Dall. Merchant's & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993).

35. In a preemption challenge, a local ordinance - even a reasonable one - "is unenforceable to the extent it conflicts with the state statute." *Id.* (citation omitted).

36. The Ordinance directly conflicts with the state statute; thus it is unenforceable. *See id.* (citing *City of Brookside Vill. v. Comeau,* 633 S.W.2d 790, 796 (Tex.1982), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570 (1982)).

37. Moreover, the Ordinance is unconstitutional. "[N]o…ordinance passed under [Denton's] charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State." TEX. CONST. art. XI, § 5.

38. In an *ultra vires* case, a plaintiff must allege, and ultimately prove, that an officer acted without legal authority or failed to perform a ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).

39. Defendants lack legal authority to adopt the Ordinance and any corresponding police department general order or directive. Tex. Loc. Gov't Code § 370.003.

40. Defendants lack the constitutional authority to adopt the Ordinance. TEX. CONST. art. XI, § 5.

### Request for a Declaratory Judgment

41. The State of Texas requests that the Court issue a declaratory judgment that the Ordinance and any corresponding police department general order or directive are *ultra vires* and void.

### Application for a Temporary Injunction

42. The State is entitled to a temporary injunction. To obtain a temporary injunction, the State must prove (1) a cause of action against the defendant; (2) a probable right to the relief sought;

Copy from re:SearchTX

and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

43.     The State has a cause of action against Defendants for *ultra vires* acts. *Hollins*, 620 S.W.3d at 405.

44.     The State has a probable right of recovery. The City of Denton has no authority to authority to pass the Ordinance and the Denton Police Department has no authority to issue a corresponding general order or directive. Tex. Loc. Gov't Code § 370.003; TEX. CONST. art. XI, § 5.

45.     "When the State files suit to enjoin *ultra vires* action by a local official, a showing of likely success on the merits is sufficient to satisfy the irreparable-injury requirement for a temporary injunction." *Hollins*, 620 S.W.3d at 410.

46.     Further, "An injury is irreparable if the injured party cannot be adequately compensated in damages, or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204; *City of Dallas v. Brown*, 373 S.W.3d 204, 208 (Tex. App.—Dallas 2012, pet. denied).

47.     Consequently, the State is entitled to a temporary injunction.

48.     The Court should issue a temporary injunction enjoining Defendants from enforcing the Ordinance and any corresponding Denton Police Department general order or directive and ordering Defendants to (a) repeal the Ordinance, (b) cancel any corresponding Denton Police Department general order or directive, (c) fully enforce the drug laws in Chapter 481, (d) not discipline any employee of the City of Denton for enforcing the drug laws in Chapter 481, and (e) modify city policies and internal operating procedures to the extent that they have been updated in response to the Ordinance.

### Application for Permanent Injunction

49.     The State of Texas requests trial on the merits, where it will seek a permanent injunction enjoining Defendants from enforcing the Ordinance and any corresponding Denton Police Department general order or directive and ordering Defendants to (a) repeal the Ordinance, (b)

Copy from re:SearchTX

cancel any corresponding Denton Police Department general order or directive, (c) fully enforce the drug laws in Chapter 481, (d) not discipline any employee of the City of Denton for enforcing the drug laws in Chapter 481, and (e) modify city policies and internal operating procedures to the extent that they have been updated in response to the Ordinance.

## Prayer

Therefore, the State of Texas seeks the following relief:

a.   A temporary and permanent injunction enjoining Defendants from enforcing Chapter 21, Article V of the City of Denton Code of Ordinances.

b.   A temporary and permanent injunction ordering Defendants to repeal the Ordinance.

c.   A temporary and permanent injunction ordering Defendants to cancel any corresponding Denton Police Department general order or directive.

d.   A temporary and permanent injunction ordering Defendants to fully enforce the drug laws in Chapter 481 of the Texas Health and Safety Code.

e.   A temporary and permanent injunction ordering Defendants not to discipline any Denton employee for enforcing the drug laws in Chapter 481 of the Texas Health and Safety Code.

f.   A temporary and permanent injunction ordering Defendants to modify city policies and internal operating procedures to the extent that they have been updated in response to the Ordinance.

g.   All other relief as the Court deems equitable and just.

Copy from re:SearchTX

Date: January 30, 2024                    Respectfully submitted.

**KEN PAXTON**                            _/S/ JACOB PRZADA_
Attorney General                          **JACOB PRZADA**
                                          Special Counsel
                                          Tex. State Bar No. 24125371
**BRENT WEBSTER**
First Assistant Attorney General
                                          **HEATHER DYER**
**GRANT DORFMAN**                         Special Counsel
Deputy First Assistant Attorney General   Tex. State Bar No. 24123044

**RALPH MOLINA**                          OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Deputy Attorney General for Legal Strategy  Special Litigation Division
                                          P.O. Box 12548, Capitol Station
**RYAN D. WALTERS**                       Austin, Texas 78711-2548
Chief, Special Litigation Division        Tel.: (512) 463-2100
                                          Heather.Dyer@oag.texas.gov
                                          Jacob.Przada@oag.texas.gov

                                          **COUNSEL FOR PLAINTIFF**

Copy from re:SearchTX

Cause No. _____

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | In the District Court of |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| | § | |
| CITY OF DENTON; GERARD | § | |
| HUDSPETH, Mayor of Denton; BRIAN | § | |
| BECK, Mayor Pro Tem of Denton; VICKI | § | Denton County, Texas |
| BYRD, PAUL MELTZER, JOE | § | |
| HOLLAND, BRANDON CHASE | § | |
| McGEE, and CHRIS WATTS, Members of | § | |
| the City Council of Denton; SARA | § | |
| HENSLEY, City Manager of Denton; and | § | |
| DOUG SHOEMAKER, Chief of Police of | § | _____ Judicial District |
| Denton; in their official capacities, | § | |
| *Defendants.* | | |

## Declaration of Jacob Przada

My name is Jacob Przada. I am over eighteen years of age, am of sound mind, and am capable of making this declaration. I am Special Counsel in the Special Litigation Division of the Office of the Texas Attorney General.

I have read the above Original Verified Petition and Application for Temporary Injunction and Permanent Injunction. I verify that the facts stated therein are within my personal knowledge and are true and correct.

_____
Jacob Przada

Sworn and subscribed before me on ___Jan. 30_____, 2024.

JESSICA YVARRA
Notary Public-State of Texas
Notary ID #13127814-2
Commission Exp. SEPT. 13, 2025
Notary without Bond

_____
Notary Public

Plaintiff's Original Verified Petition and Application for Temporary Injunction, and Permanent Injunction   Page 13
*The State of Texas v. City of Denton, et al.*

Copy from re:SearchTX

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jacob Przada on behalf of Jacob Przada
Bar No. 24125371
jacob.przada@oag.texas.gov
Envelope ID: 84002644
Filing Code Description: Plaintiff's Original Petition
Filing Description: Application for Temporary Injunction and Permanent Injunction
Status as of 2/1/2024 9:42 AM CST

Associated Case Party: The State Of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jessica Yvarra | | jessica.yvarra@oag.texas.gov | 1/31/2024 2:45:34 PM | SENT |
| Jacob Przada | 24125371 | jacob.przada@oag.texas.gov | 1/31/2024 2:45:34 PM | SENT |
| Heather Dyer | 24123044 | heather.dyer@oag.texas.gov | 1/31/2024 2:45:34 PM | SENT |

Copy from re:SearchTX



**City Manager's Office**

215 E. McKinney St., Denton, TX 76201 • (940) 349-8307

TO:        City Council

FROM:     Sara Hensley, City Manager

**RE:**        **Proposition B Implementation**

DATE:     Nov. 9, 2022

---

In yesterday's election, an ordinance relating to marijuana enforcement, Proposition B, was approved by voters. This ordinance will become effective after the election is canvassed by the City Council, currently scheduled to be considered during a Special Meeting on Friday, Nov. 18.

Implementation Considerations for Proposition B

While we continue to be dedicated to serving the community by making marijuana possession a low priority and recognize the statement expressed by voters regarding marijuana enforcement, the passage of Proposition B presents a challenge to the City regarding our ability to implement its provisions. These issues have previously been described in briefings to the City Council but can essentially be reduced to the issue of certain provisions of Proposition B being in direct conflict with state law. Chapter 370.003 of the Texas Local Government Code prohibits the City Council and Police Department from adopting a policy that does not fully enforce state and federal laws relating to drugs, including marijuana. While Proposition B imposes explicit prohibitions on the Denton Police Department's ability to enforce laws related to low-level marijuana possession, **those prohibitions are in direct conflict with, and are superseded by, the Texas Code of Criminal Procedure**, which vests police officers with the authority and duty to enforce state law, including the ability to use the smell of marijuana as probable cause to conduct a search or seizure, the right to make an arrest, and where appropriate, the right to issue a citation for the possession of marijuana or drug paraphernalia, regardless of the quantity of marijuana. **In short, the City does not have the authority to implement some provisions of Proposition B** without changes to current drug laws by Congress and the Texas Legislature.

In practice, a Denton Police Officer will continue to have the authority to enforce state laws relating to marijuana. Neither the City, the City Manager, nor the Chief of Police has the authority to direct officers to do otherwise or to discipline an officer when they are acting in accordance with state law.

Proposition B further prescribes obligations on the part of the City Manager. In Section 21-84(b) of the ordinance, the City Manager is directed, along with the Chief of Police, to "update city policies and internal operating procedures in accordance with this ordinance" including updates to the Denton Police Department General Orders. The Chief of Police cannot adopt a General Order that is in conflict with state law and I, as the City Manager to whom the Chief of Police reports, do not have the authority to direct him to act in violation of state law.

**EXHIBIT**

**1**

Copy from re:SearchTX

In addition, Proposition B prohibits the City from using City funds or personnel to request, conduct, or obtain THC testing of any cannabis-related substance. While Council has budgetary authority, this provision of Proposition B is in direct conflict with the City Charter, which expressly excludes the appropriation of money from an initiative ordinance, though the Council may choose to amend the budget at its discretion. The passage of Proposition B will also not impact the city's existing employee drug testing policies.

Public Statement Regarding Proposition B
Given the above challenges in implementation, the recognition that other law enforcement agencies are not subject to Proposition B, and the legal distinctions between marijuana and other THC derivatives, the City has drafted and released the **attached** public statement.

I am and City staff are concerned with the potential for incorrect information regarding the applicability and enforceability of Proposition B to quickly spread in the community, which could lead to a confrontation between the police and a member of the community should an officer act in accordance with State law, while the community member mistakenly believes that action violates Proposition B. Therefore, staff have shared this statement with the media and community stakeholders in order to mitigate the negative effects stemming from incorrect information.

Ongoing Approach to Marijuana Enforcement
Prior to the passing of Proposition B, the City of Denton Police Department already significantly revised its marijuana enforcement policy and practices which are enumerated in its General Orders. Between June 2021 and July 2022, of the 65 arrests that the Denton Police Department made for marijuana possession under 4 ounces, 15 of these charges accompanied other controlled substances unrelated to marijuana, and weapons were involved in 31 of these cases.

Going forward, Chief Shoemaker has affirmed that enforcement of marijuana possession will continue to be a low priority for the Denton Police Department. However, public safety requires the Police Department's ability to use the smell and possession of marijuana, regardless of the amount, as well as the possession of drug paraphernalia, as probable cause to conduct further investigation, which as noted above, may lead to more serious crimes being charged, including the possession of a firearm and crimes of violence against members of our community.

Next Steps
In accordance with Section 21-86 of the ordinance, I will report to Council within three months' time regarding its implementation.

Attachment

CC:   Mack Reinwand, City Attorney
      Frank Dixon, Assistant City Manager
      Doug Shoemaker, Chief of Police
      City Manager's Office

2

Copy from re:SearchTX

## Information on the Passing of Proposition B, Relating to Marijuana Possession

**DENTON, TX, Nov. 9, 2022** – Following the passage of Proposition B, which outlines actions to be taken regarding marijuana possession in the City of Denton, there is important information to share to help understand what this means for the Denton community. This ordinance, which was approved by voters, will become effective after the election is canvassed by the City Council, currently scheduled to be considered during a Special Meeting on Friday, Nov. 18.

### Current Practices

Prior to the passage of Proposition B, the City of Denton Police Department already significantly revised its marijuana enforcement policy and practices which are enumerated in its general orders. Between June 2021 and July 2022, of the 65 arrests that the Denton Police Department made for marijuana possession under 4 ounces, 15 of these charges accompanied other controlled substances unrelated to marijuana, and weapons were involved in 31.

The existing policy leaves officers with the discretion to continue an investigation after the discovery of marijuana if other crimes are suspected, such as driving while impaired, unlawful carrying of a weapon, or possession of a controlled substance in a drug-free zone (such as a school, park, or daycare).

"As a forward-thinking agency, marijuana possession alone has not been a priority for the Denton Police Department for several years," said Police Chief Doug Shoemaker. "This will continue to be the case. With that said, officers must maintain discretion to be able to keep our community safe from harm. When marijuana possession pairs with other crimes that affect public safety, including offenses such as driving while intoxicated or firearms violations, such acts cannot and will not be ignored."

### Implementation

With the voter approval of Proposition B, City staff has been working to determine which portions of the ordinance will be incorporated into the Police Department's General Orders, also known as department policies. This review is necessary since Chapter 370.003 of the Texas Local Government Code prohibits the City Council and Police Department from adopting a policy that does not fully enforce state and federal laws relating to drugs, including marijuana, as well as the Texas Code of Criminal Procedure which vests police officers with the authority and duty to enforce state law, including the possession of marijuana. Because portions of Proposition B conflict with and may be superseded by existing state and federal laws, some provisions of Proposition B may not be implemented without changes to those laws by the United States Congress and Texas Legislature.

Copy from re:SearchTX

It is also important to note, especially for students and visitors, that City policies and the Denton Police Department's General Orders do not apply to the other law enforcement agencies that have jurisdiction to enforce state law within the City of Denton. These agencies include, but are not limited to, the University of North Texas Police Department, Texas Woman's University Department of Public Safety, the Denton County Sheriff's Office, and the Texas Department of Public Safety, which all have their own policies and practices when it comes to marijuana investigations and arrests and are not subject to Proposition B.

Another important distinction is that the possession of marijuana and the possession of THC products are entirely different offenses. Per Texas state law, possessing any amount of THC, which is often the substance in edibles or vape cartridges, is a felony offense and this is not covered by Proposition B. As a result, possessing a single vape cartridge or a single edible would be classified as a felony. Also, when THC is added to any other substance, such as brownies or cookies, state law takes the total weight of the combined substances into consideration rather than the pure weight of the added THC. Meaning, per state law, if you bake a small amount of THC into a pound of brownies, you could be charged with possessing a pound of THC, a first-degree felony.

The Denton Police Department is dedicated to serving the community in a fair and safe manner. The department understands that, with the voter approval of Proposition B, voters wish to reduce punishments for low-level marijuana possession. The department is committed to continuing the innovative policies that are in place, which have resulted in a significant reduction in arrests since implemented in 2019 and updated in 2022, but must do so within the parameters of state and federal law. The Police Department will continue to assess all aspects of this ordinance, as passed by voters, to determine what may be implemented in accordance with both the current law as well as the voices of the population we serve.

### 

Visit www.cityofdenton.com for more news and to stay updated.

2

Copy from re:SearchTX

ARTICLE V. - MARIJUANA ENFORCEMENT

Sec. 21-80. - Ending citations and arrests for misdemeanor possession of marijuana.

(a)  Denton Police Officers shall not issue citations or make arrests for class A or class B misdemeanor possession of marijuana offenses, except in the limited circumstances described in subsection (b).

(b)  The only circumstances in which Denton Police Officers are permitted to issue citations or make arrests for class A or class B misdemeanor possession of marijuana are when such citations or arrests are part of (1) the investigation of a felony level narcotics case that has been designated as a high priority investigation by a Denton Police Commander, assistant chief of police, or chief of police; and/or (2) the investigation of a violent felony.

(c)  In every instance other than those described in subsection (b), if a Denton Police Officer has probable cause to believe that a substance is marijuana, an officer may seize the marijuana. If the officer seizes the marijuana, they must write a detailed report and release the individual if possession of marijuana is the sole charge.

(d)  Denton Police Officers shall not issue any charge for possession of marijuana unless it meets at least one of the factors described in subsection (b).

( Ord. No. 22-1198 , § 2, 7-26-22, ratified 11-8-22)

Sec. 21-81. - Citations for possession of drug residue or drug paraphernalia shall not be issued in lieu of a possession of marijuana charge.

(a)  A class C misdemeanor citation for possession of drug residue or drug paraphernalia shall not be issued in lieu of a possession of marijuana charge.

( Ord. No. 22-1198 , § 2, 7-26-22, ratified 11-8-22)

Sec. 21-82. - Prohibition against using city funds or personnel to conduct THC concentration testing.

(a)  No city funds or personnel shall be used to request, conduct, or obtain tetrahydrocannabinol (THC) testing of any cannabis-related substance to determine whether the substance meets the legal definition of marijuana under state law, except in the limited circumstances of a police investigation pursuant to subsection 21-80(b).

(b)  This prohibition shall not limit the ability of Denton Police to conduct toxicology testing to ensure public safety, nor shall it limit THC testing for the purpose of any violent felony charge.

( Ord. No. 22-1198 , § 2, 7-26-22, ratified 11-8-22)

**EXHIBIT**

**2**

Copy from re:SearchTX

Sec. 21-83. - Prohibition against city police using the odor of marijuana or hemp as probable cause for search or seizure.

 (a) Denton Police shall not consider the odor of marijuana or hemp to constitute probable cause for any search or seizure, except in the limited circumstances of a police investigation pursuant to subsection 21-80(b).

 ( Ord. No. 22-1198 , § 2, 7-26-22, ratified 11-8-22)

Sec. 21-84. - Training and policy updates; community involvement.

 (a) The city manager and chief of police shall ensure that Denton Police Officers receive adequate training concerning each of the provisions of this article.

 (b) The city manager shall work with the Denton Police Chief and other relevant stakeholders identified in subsection (c) to update city policies and internal operating procedures in accordance with this article. Actions that may be necessary include, but are not limited to: updating the Denton Police Department General Manual; updating the training bulletin; training officers; and updating internal databases and systems.

 (c) The city manager shall arrange regular meetings to discuss the development of policies, procedures, and practices related to this article, which shall include community stakeholders including: the police chief's advisory panel; other interested stakeholders and community organizations; individuals directly impacted by arrests within the city; immigrant communities; and communities of color. These meetings shall be open to public participation, have minutes and agendas publicly accessible, and have audio and video recordings uploaded to the city's website.

 ( Ord. No. 22-1198 , § 2, 7-26-22, ratified 11-8-22)

Sec. 21-85. - Discipline.

 (a) Any violation of this chapter may subject a Denton Police Officer to discipline as provided by the Texas Local Government Code or as provided in city policy.

 ( Ord. No. 22-1198 , § 2, 7-26-22, ratified 11-8-22)

Sec. 21-86. - Reporting.

 (a) Within three (3) months of the adoption of this article, and once per year thereafter, the city manager or their designee shall present to the city council, at a public meeting subject to the Texas Open Meetings Act, a report concerning the city's implementation of this article.

 ( Ord. No. 22-1198 , § 2, 7-26-22, ratified 11-8-22)

Copy from re:SearchTX

# TAB D

CAUSE NO. 24-1005-481

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | |
| CITY OF DENTON; GERARD | § | IN THE DISTRICT COURT |
| HUDSPETH, Mayor of Denton; | § | |
| BRIAN BECK, Mayor Pro Tem of | § | |
| Denton, VICKI BYRD, PAUL | § | DENTON COUNTY, TEXAS |
| MELTZER, JOE HOLLAND, | § | |
| BRANDON CHASE McGEE, and | § | |
| CHRIS WATTS, Members of the | § | 481st JUDICIAL DISTRICT |
| City Council of Denton; SARA | § | |
| HENSLEY, City Manager of | § | |
| Denton; and DOUG SHOEMAKER, | § | |
| Chief of Police of Denton, in their | § | |
| official capacities, | § | |
|     *Defendants.* | § | |

## CITY OF DENTON'S PLEA TO THE JURISDICTION

The City of Denton (the "City") and Gerard Hudspeth, Mayor of Denton, Brian Beck, Mayor Pro Tem of Denton, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee and Chris Watts, Members of the City Council of Denton, Sara Hensley, City Manager of Denton, and Doug Shoemaker, Chief of Police of Denton[1] (the "Officials" and together with the City, the "Defendants"), respectfully ask the Court to dismiss Plaintiff the State of Texas's (the "State" or "Plaintiff") claims against them with prejudice for lack of subject-matter jurisdiction:

---

[1] Doug Shoemaker is no longer the Chief of Police of Denton, and therefore is not a proper defendant in any *ultra-vires* suit against him in that capacity, as only prospective relief can be granted in such a suit. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 376 (Tex. 2009). Further, neither he, his successor, nor Sara Hensley as City Manager, could be a proper defendant because neither a municipal police chief nor a city manager are named in Texas Local Government Code Section 370.003 as persons prohibited from adopting a policy.

# INTRODUCTION

The City of Denton and its Officials are immune from suit. The State invokes the limited "*ultra-vires*" exception to immunity, suing the City of Denton and several of its Officials for purportedly committing an *ultra-vires* act. But <u>neither the City nor any of its officials committed the illegal act alleged</u>: adopting a policy that would not fully enforce the State's drug laws. With no *ultra-vires* act alleged against any Defendant, there is no valid *ultra-vires* claim.

The State's suit is based on a citizens' ballot initiative—"Proposition B"—relating to the enforcement of marijuana laws. By that initiative process, the City's citizens presented a petition with the requisite number of signatures, requiring the City to place Proposition B on the ballot. The City Council performed its ministerial duty and placed the measure on the ballot—an act that was not *ultra vires* and is not alleged to be. A majority of votes cast supported Proposition B, and by operation of the City Charter, Proposition B was self-enacted. *The City Council did not pass Proposition B*—the people did directly by their votes.

Although Proposition B is on the books in the City's official Code of Ordinances (the "Ordinance"), neither the City Council nor any Official has adopted a policy—in connection with the Ordinance or otherwise—that would not fully enforce the State's drug laws. As acknowledged by the State, the City's Officials have *declined* to adopt any policy pursuant to the Ordinance. In other words, the Officials have done what the State says the law requires them to do.

The State's suit thus presents no live case or controversy. Neither the City nor any of its Officials have enforced the Ordinance, and they have no intention of doing

2

so. Texas law is clear that passage of an ordinance—even one that is facially void—works no injury; there *must* be an act taken in furtherance of that ordinance to give rise to a claim.

Finally, the sole statute upon which the State relies, Local Government Code Section 370.003, does not preempt an ordinance that will not fully enforce the State's drug laws. The statute only prohibits the City's governing body and certain officials from adopting a policy not to fully enforce drug laws. Thus, the State's request for a declaratory judgment that the Ordinance is void has no legal basis.

Without a valid allegation of an illegal and *ultra-vires* act by any defendant, the immunity of the City and its Officials stands. And without any action being taken to enforce/operate under the Ordinance, there is no ripe case or controversy. Both defects mean that this suit must be dismissed for lack of jurisdiction. And, because the Ordinance is not void or preempted by any state law, the State's limited claim for declaratory judgment seeking to declare the Ordinance void must fail as well.

### STANDARD OF REVIEW AND SUMMARY OF THE BASES FOR THIS JURISDICTIONAL CHALLENGE

This Court lacks jurisdiction to hear the claims asserted by Plaintiff against Defendants in this action. Lacking such jurisdiction, all of the State's claims should be dismissed with prejudice.[2]

---

[2] This Plea to the Jurisdiction supplements and is in addition to the Pleas to the Jurisdiction originally filed by the City and the Official Defendants on March 22, 2024, and briefs in full all bases for all Defendants' Pleas.

**A.       Standard of Review.**

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Subject-matter jurisdiction is essential to the power of a tribunal to decide a case, and without subject-matter jurisdiction a court cannot render a valid judgment. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d, 440, 443 (Tex. 1993). The question of whether a court has subject-matter jurisdiction is a matter of law. *Hoff v. Nueces Cnty.*, 153 S.W.3d 45, 48 (Tex. 2004).

Governmental entities are generally immune from suit. *See Lubbock Cnty. Water Control & Improv. Dist. v. Church & Akin, L.L.C.*, 442 S.W.3d 297, 300 (Tex. 2014). "Governmental immunity from suit defeats a trial court's subject matter jurisdiction and thus is properly asserted in a plea to the jurisdiction." *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 637 (Tex. 1999).

"Because a court must not act without determining that it has subject matter jurisdiction to do so, it should hear evidence as necessary to determine the issue before proceeding with the case." *Bland Indep. School Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). "Where, as here, evidence is presented with a plea to the jurisdiction, the court reviews the relevant evidence and may rule on the plea as a matter of law if the evidence does not raise a fact issue on the jurisdictional question, a standard that generally mirrors the summary-judgment standard." *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 798 (Tex. 2016).

**B.**     **The Defendants are immune to the State's suit.**

Texas political subdivisions and municipalities are immune from lawsuits under the doctrine of governmental immunity. *City of Galveston v. State*, 217 S.W.3d 466, 469 (Tex. 2007). To sue a governmental entity, a party must find consent to sue in a constitutional provision or a legislative enactment. *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 695 (Tex. 2003) ("It is settled in Texas that for the Legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity."). Courts resolve any statutory ambiguities in favor of retaining immunity. *Id.*

### 1.     *The State has not shown that the Officials took any action outside their legal authority.*

Governmental employees sued in their official capacity have the same governmental immunity as their governmental employer with one exception: the action alleged is that the employees acted *ultra vires*. *Franka v. Velasquez*, 332 S.W.3d 367, 382–83 (Tex. 2011). An *ultra-vires* claimant must allege, and ultimately prove, that each official acted without legal authority or failed to perform a purely ministerial act. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). The State has not pleaded, and cannot as a matter of law, plead a valid *ultra-vires* claim because it does not allege any act taken by any Defendant outside of their legal authority.

### 2.     *The State has not established a valid waiver of or exception to immunity.*

Nor has the State invoked an applicable legislative waiver of the City's immunity. Even though Civil Practice and Remedies Code Section 37.006(b) requires

that the City be made a party when the validity of an ordinance is challenged, that claim of invalidity must have some basis in law for that statute to waive the City's immunity.

The self-enacting Ordinance at issue here does not violate Local Government Code Section 370.003 by the statute's plain terms. Thus, there is no legal basis for the State's claim that it is invalid. *See City of Richardson v. Responsible Dog Owners*, 794 S.W.2d 17, 19 (Tex. 1990) ("When there is no conflict between a state law and a city ordinance, the ordinance is not void.").

## C. The State has not established any ripe case or controversy, and seeks only an impermissible advisory opinion.

The State's suit is also non-jurisdictional because it does not present a live case or controversy, but instead seeks an impermissible advisory opinion. "For a court to have subject-matter jurisdiction over a case, the plaintiff's claims must be ripe." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 683 (Tex. 2020).

A case is not ripe—and hence seeks an advisory opinion—"when the determination of whether a plaintiff has a concrete injury can be made only on contingent or hypothetical facts, or upon events that have not yet come to pass." *Robinson v. Parker*, 353 S.W.3d 753, 756 (Tex. 2011) (cleaned up). As demonstrated below, the citizens passed the Ordinance by their initiative and vote, *but neither the City nor any city official have taken any action to enforce it*. Even if the Ordinance is void, "the fact that an ordinance is void alone works no injury; only after acts are impending or steps are already being taken to directly cause harm does the basis for

6

relief exist." *City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 450 (Tex. App.—Beaumont 2016, no pet.) (cleaned up).

The State seeks a declaration that amounts to "the Denton City Council or Denton Police Department should not in the future adopt policies pursuant to the Ordinance." But such a declaration would be the kind of advisory opinion that courts are constitutionally prohibited from issuing. *See Price v. St. Paul Mercury Ins. Co.*, 397 S.W.2d 281, 284 (Tex. App.—El Paso 1965, no writ). In the absence of an actual injury and a basis for relief, the Court has no jurisdiction to issue what would be an advisory opinion. *Id.* ("While [the Uniform Declaratory Judgments] Act does authorize Texas courts to render declaratory judgments, it does not authorize such courts to render advisory opinions.").

## FACTUAL BACKGROUND

### A. Denton's citizens amend the City's Code of Ordinances via ballot initiative.

As provided by the Denton City Charter, the City's voters presented a petition for a proposed ordinance on June 7, 2022. (Certified Records of the City of Denton, attached hereto as Ex. A, Minutes of June 7, 2022 City Council Meeting, pp. 2–20; *see also,* Excerpt of Denton City Charter, Denton, Tex., Code of Ordinances pt. 1, art. IV (1959), attached for reference hereto as Ex. B.) At its July 19, 2022 meeting, the City Council performed its ministerial duty by verifying that the petition met all of the Charter's requirements and placing Proposition B on the November 8, 2022 ballot. (Ex. A, Minutes of July 19, 2022 City Council Meeting, pp. 21–31.)

The voters approved Proposition B, and again the City Council performed its ministerial duty by canvassing and confirming the vote totals on November 22, 2022. (Ex. A, Minutes of November 22, 2022 City Council Meeting, pp. 34–126.) Upon confirmation of the fact that the voters had passed Proposition B, Proposition B automatically became an ordinance by operation of the terms of the Charter. (Ex. B, Excerpt of Denton City Charter, Denton, Tex., Code of Ordinances pt. 1, art. IV, § 4.10 (1959).)

Proposition B, now known as City of Denton Code of Ordinances Chapter 21 – Offenses, Article V – Marijuana Enforcement, broadly provides that the City of Denton and Denton police officers will not issue citations or make arrests for Class A or Class B misdemeanor possession of marijuana offenses except in certain limited circumstance and other mechanisms aimed at limiting marijuana arrests and prosecutions in the City of Denton. Denton, Tex., Code of Ordinances ch. 21, art. V, §§ 21-80–21-86 (2022).

**B.      City Officials do not adopt or change any City policy relating to the enforcement of the State's drug laws.**

The City Council never adopted the Ordinance; on the one occasion that the terms of the Ordinance were before the City Council for adoption, the measure *failed*. (Ex. A, Minutes of November 22, 2022 City Council Meeting at 119.)

Shortly after the voters passed the Ordinance, City Manager Sara Hensley stated in a memorandum to the City Council that "Denton City Police Officer[s] will continue to have authority to enforce state laws relating to marijuana." (Ex. 1 to Pl.'s Orig. Pet., attached hereto as Ex. C at 1.) She further acknowledged that "**the City**

**does not have the authority to implement some provisions of Proposition B** without changes to current drug laws by Congress and the Texas Legislature." (Ex. C at 1 (emphasis in original).)

The City then issued a public statement that acknowledged that "Chapter 370.003 of the Texas Local Government Code prohibits the City Council and Police Department from adopting a policy that does not fully enforce state and federal laws relating to drugs, including marijuana" and further stated that "[b]ecause portions of Proposition B conflict with and may be superseded by existing state and federal laws, some provisions of Proposition B may not be implemented." *Information on the Passage of Proposition B, Relating to Marijuana Possession*, CITY OF DENTON (Nov. 9, 2022) https://www.cityofdenton.com/CivicAlerts.aspx?AID=275&ARC=707 (last visited May 17, 2024). That is, the City stated that it would deliberate and consider what portions, if any, of the Ordinance could be implemented in light of Local Government Code Section 370.003.

As a result of that deliberation and consideration, and concluding that adopting such a policy may be barred by law (specifically, that such policy would violate Local Government Code Section 370.003), *neither the City nor the Denton Police Department have adopted any policies not to fully enforce the marijuana laws of the State of Texas* in furtherance of or in connection with the Ordinance. (Ex. D, Declaration of City Manager Sara Hensley and Ex. E, Declaration of Interim Chief of Police Jessica Robledo.)

9

Applying the summary-judgment standard set forth in Texas Rule of Civil Procedure 166a(c) to this jurisdictional plea, the Court should dismiss the State's claims for lack of jurisdiction because there is no genuine issue of material fact, and Defendants are entitled to judgment as a matter of law.

**A.      Local Government Code Section 370.003 cannot be the basis for an *ultra-vires* claim under the facts of this case.**

The State relies exclusively on Section 370.003 as the basis for its declaratory-judgment claim, the foundational claim on which all of its requested relief rests.  (Pl.'s Orig. Pet. at ¶¶ 25–40.)  The State argues that the individual Official defendants have acted *ultra-vires* with respect to the Ordinance.  (*Id.*)  But the State identifies no act by the Officials that actually violates Section 370.003, and accordingly the State's suit does not fall within the *ultra-vires* exception to the Officials' immunity.

**1.      *The State must plead and prove that the Officials acted without legal authority to invoke the <u>ultra-vires</u> exception to immunity.***

To fall within the *ultra-vires* exception to the City's governmental immunity, the State's suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009).  An *ultra-vires* suit can only be brought against the specific "official who allegedly acted without authority." *Roach v. Ingram*, 557 S.W.3d 203, 225 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (dismissing *ultra-vires* claim where plaintiff "failed to allege any statutory duty that [the named defendant] violated or any specific unconstitutional act by [the official] in his official capacity that, if taken as true, would entitle them to the relief they seek.").

The *ultra-vires* exception is a "narrow" one. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 164 (Tex. 2016). Where the facts demonstrate that the governmental actor has not acted outside his authority, the *ultra-vires* exception does not apply and the officer remains immune to suit. *See Hall v. McRaven*, 508 S.W.3d 232, 243 (Tex. 2017) ("[S]overeign immunity comes with a price; it often allows the 'improvident actions' of the government to go unredressed. Only when these improvident actions are unauthorized does an official shed the cloak of the sovereign and act *ultra vires*." (internal citations omitted)).

## 2. The State's suit does not allege—and cannot prove—any action taken by the Officials outside their legal authority.

The State invokes a version of Section 370.003 that does not exist. (Pl.'s Orig. Pet. at ¶ 44 (citing Section 370.003 for the proposition that "*[t]he City of Denton* has no authority to pass the Ordinance" (emphasis added).) Section 370.003 does *not* say that "a *municipality* may not enact an ordinance that provides that the municipality will not fully enforce laws relating to drugs," nor does it say that the authority of a municipality to take such action "is expressly preempted."[3]

---

[3] A statute written that way likely *would* render the Ordinance facially invalid, as the Ordinance then would be "inconsistent with . . . the general laws enacted by the Legislature of this State." That is because such language would satisfy the requirement that the Legislature act with unmistakable clarity if it wants to preempt a home-rule city's constitutional power of self-government. *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 491 (Tex. 1993).

An example of a statute that does just that is the law the Legislature passed in response to attempted municipal fracking bans in 2015 (Acts 2015, 84th Leg., ch. 30 (H.B. 40), § 2, codified at Tex. Nat. Res. Code § 81.0523). That statute, in sharp contrast to Local Government Code Section 370.003, provides that "*a municipality or other political subdivision* may not enact or enforce an ordinance or other measure, or an amendment or revision of an ordinance or other measure, that bans, limits, or otherwise regulates an oil and gas operation within the boundaries or extraterritorial jurisdiction of the municipality or political subdivision," and "The authority of

11

Instead, Section 370.003 speaks only to the *acts* of a city's governing body, police department, and certain specifically identified officials in *adopting* such an ordinance/policy.[4] That is, the existence of an ordinance that calls for policies that would not "fully enforce laws relating to drugs" is not prohibited by Section 370.003, as the State contends; instead, *it only prohibits certain bodies or people "adopt[ing] a policy under which the entity will not fully enforce laws relating to drugs."* Tex. Loc. Gov't Code § 370.003 (emphasis added).

a municipality or other political subdivision to regulate an oil and gas operation is expressly preempted . . . ." Tex. Nat. Res. Code § 81.0523 (emphasis added).

That is what a statute preempting a municipal action looks like—it bars the enactment of the ordinance by the *entity*, not by a particular body or person. That is not what Local Government Code Section 370.003 looks like or provides.

[4] Importantly, two of the officials who are named as defendants in this suit, the Denton City Manager (Sara Hensley) and the (now former) Chief of Police, Doug Shoemaker, are *not* officials who are prohibited by Local Government Code Section 370.003 from taking the prohibited action of adopting a policy not to fully enforce drug laws. Tex. Loc. Gov't Code § 370.003 (specifically listing, for example, "a sheriff," a "municipal attorney, county attorney, district attorney, or criminal district attorney" as people prohibited from adopting such a policy, but *not* "a city manager" or "a chief of police"). Thus, because those two officials are not prohibited from taking such action (nevermind the additional fact that they have not taken any such action), they cannot be alleged to have acted *ultra-vires* in violation of Section 370.003, and thus all claims against each of them must be dismissed on that basis as well.

12

But, as shown by the undisputed facts above, that act—the act of the City Council or Denton's police department adopting such a policy—has not happened. There was no act beyond the votes of the citizens required for the Ordinance to take effect:

**Sec. 4.10. - Results of election, publication.**

(a) If a majority of the electors voting on a proposed initiative ordinance shall vote in favor thereof, it shall thereupon be an ordinance of the city. A referred ordinance which is not approved by a majority of the electors voting thereon shall thereupon be deemed repealed.

(b) Initiative ordinances adopted and referendum ordinances approved by the electors shall be published, and may be amended or repealed by the council in the same manner as other ordinances.

(Ex. B, Excerpt of Denton City Charter, Denton, Tex., Code of Ordinances pt. 1, art. IV, § 4.10 (1959) (emphasis added).)

Because Section 370.003 prohibits only the act of the "governing body" of the City (i.e., its City Council) or the City's "police department" "adopting a policy" not to fully enforce a drug law, no law has been violated. Thus, no claim—including an *ultra-vires* claim—predicated on a violation of the law can proceed.

The undisputed material facts demonstrate that the Officials have not committed any *ultra-vires* act. With no *ultra-vires* act, the *ultra-vires* exception to the Officials' immunity cannot be invoked. The Officials therefore remain immune from the State's suit, and the Court lacks jurisdiction over the State's claims against them.

13

**B.      The State's suit seeks an advisory opinion that would violate the separation-of-powers doctrine.**

In addition to the fact that there has been no *ultra-vires* act, the absence of any act by Defendants renders any opinion the Court could render in this case advisory. The State asserts "a cause of action against Defendants for *ultra vires* acts." (Pl.'s Orig. Pet. at ¶ 43.) A plaintiff in an *ultra-vires* suit "must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009), *cited in* Pl.'s Orig. Pet. at ¶ 38.

The verb tense used by the Supreme Court in *Heinrich* matters. A plaintiff in an *ultra-vires* suit must allege that the governmental official "***acted***" outside his legal authority. *Heinrich*, 284 S.W.3d at 372 (emphasis added). An allegation that the governmental official "will act" or "may act" does not state a jurisdictional claim, but instead seeks a non-jurisdictional advisory opinion as to what the official may (or may not) do in the future. *See Lazarides v. Farris*, 367 S.W.3d 788, 803 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (applying ripeness analysis in an *ultra-vires* case).[5] Such an advisory opinion is not within the authority of the judiciary to offer.

---

[5]      To the extent that the State seeks a declaration that the Ordinance is void because it "is inconsistent with . . . the general laws enacted by the Legislature," that claim likewise seeks an advisory opinion. That is because while some future act by the Officials *might* violate Section 370.003, 1) no such act by those bodies has occurred or is imminent, and 2) Section 370.003 does not prohibit the enactment of such an ordinance by a body or person *not* specifically named in that statute (such as the City's voters, who adopted and enacted the Ordinance by their votes).

The State seeks a declaration that amounts to "if you, Denton City Council or Denton Police Department, ever think about adopting policies pursuant to the Ordinance . . . don't do it." But such a declaration would be exactly the kind of advisory opinion that courts in this state are

14

### 1. A request for an advisory opinion violates the separation of powers doctrine.

The rule against advisory opinions is rooted in the separation-of-powers doctrine. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993). Separation of powers may be violated "when one branch of government assumes, or is delegated, to whatever degree, a power that is more 'properly attached' to another branch." *Tex. Comm'n on Env't Quality v. Abbott*, 311 S.W.3d 663, 672 (Tex. App.—Austin 2010, pet. denied). "And the issuance of advisory opinions is a function of the executive branch, not the judicial." *Garcia v. City of Willis*, 593 S.W.3d 201, 206 (Tex. 2019); *accord* Tex. Const. art. IV, § 22 (conferring exclusive authority to issue advisory opinions on the attorney general).

A case is not ripe—and hence seeks an advisory opinion—"when the determination of whether a plaintiff has a concrete injury can be made only on contingent or hypothetical facts, or upon events that have not yet come to pass." *Robinson v. Parker*, 353 S.W.3d 753, 756 (Tex. 2011). When presented with a suit that is based on contingent or hypothetical facts, the trial court is obligated to dismiss the suit for lack of subject-matter jurisdiction. *See Patterson v. Planned Parenthood*, 971 S.W.2d 439, 443 (Tex. 1998) ("At the time a lawsuit is filed, ripeness asks whether the facts have developed sufficiently so that an injury has occurred or is likely to occur, rather than being contingent or remote.").

---

constitutionally prohibited from issuing. Thus, the State's claim for declaratory relief must be dismissed for lack of jurisdiction.

**2.      No case or controversy exists in the absence of an act to enforce the Ordinance, and the State thus has no standing to assert claims arising from the Ordinance.**

The Ordinance was self-enacting by function of the Denton City Charter and the petition and vote of the people. But it has not been enforced, and no Defendant intends to enforce it.

Under that set of facts, no valid claim for relief can be stated: "The proper practice is to wait until the ordinance is passed *and* the city attempts to operate under it before seeking relief against [the city]." *City of Universal City v. City of Selma*, 514 S.W.2d 64, 73 (Tex. App.—Waco 1974, writ ref'd n.r.e.) (cleaned up) (emphasis added). Even if the Ordinance is void (which it is not), "[t]he fact that an ordinance is void alone works no injury. Only after acts are impending or steps are already being taken to directly cause harm does the basis for relief exist, and only then may the authority of a court be invoked to restrain the injury." *City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438,450 (Tex. App.—Beaumont 2016, no pet.) (cleaned up). In the absence of injury, which can only be caused by actual or imminent acts to enforce or operate under an ordinance, the State has no standing. *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 154 (Tex. 2012) ("In Texas, the standing doctrine requires a concrete injury to the plaintiff and a real controversy between the parties that will be resolved by the court.").

**3.      The Officials have not yet taken any action contrary to Local Government Code Section 370.003.**

Section 370.003, which is the sole basis for the State's suit, bars "[t]he governing body of a municipality [or] a municipal police department" from "adopt[ing]

16

a policy under which the entity will not fully enforce laws relating to drugs." Tex. Loc. Gov't Code § 370.003, *relied upon by* Pl.'s Orig. Pet. at ¶ 39. The State's suit is not based on any act that the City's governing body or police department has taken.

The voters have taken action. (Pl.'s Orig. Pet. at ¶ 19.) But any action on the part of the City's governing body or its police department in furtherance of that voter action is merely hypothetical—a fact the State's Petition acknowledges. Because there has been no action by the Officials, the State can only seek an injunction mandating the modification of "city policies and internal operating procedures *to the extent that* they have been updated in response to the Ordinance." (Pl.'s Orig. Pet. at ¶ 49(e) (emphasis added).) The Petition's use of such contingent language reflects that no action—a necessary predicate for any violation, injury, and jurisdiction—has occurred.

### 4. *The self-enacting Ordinance is not being enforced, and there is consequently no live case or controversy for the Court to adjudicate.*

The City and its Officials have followed the law and done everything they are supposed to do, yet they are still being sued. That doesn't make sense, doesn't form the basis for an *ultra-vires* claim, and doesn't raise any actual case or controversy. The entire case should therefore be dismissed.

By its plain language Section 370.003 does not prohibit the citizens of Denton or any other city from exercising their right to enact ordinances via the initiative process. Section 370.003 does not prohibit "the citizens acting under the power of initiative," or

17

some similar designation, from taking action.[6] In short, Section 370.003 binds the City Council, not the City's voters.

But regardless—when the voters passed the Ordinance, Denton city officials, noting the terms of Section 370.003, *declined to enact any policy in furtherance of or enforcing the ordinance.* (Ex. D, Declaration of City Manager Sara Hensley and Ex. E, Declaration of Interim Chief of Police Jessica Robledo.) That sequence is exactly how a City Council and city officials are supposed to handle a citizen initiative that may end up being invalid. *See Glass v. Smith*, 244 S.W.2d 645, 653 (Tex. 1951) ("When the people exercise their rights and powers under the initiative provisions of a city charter and thereby become the legislative branch of the city government, the members of the City Council, like other city officials and employees, become ministerial officers in the legislative process, burdened with the mandatory obligations of performing the duties imposed upon them incidental to carrying out the initiative procedure.").

Whether any of the Officials believed at any time that the Ordinance might be invalid, they were required to follow the process of placing the measure on the ballot and counting the votes. *Id.* at 648 (when the citizens are "entitled to have the initiative election called and held, [they] cannot be defeated in that right by the refusal of [city

---

[6] Local Government Code Section 370.003 prohibits adoption of a non-enforcement policy by certain listed individuals (e.g., a "municipal attorney," or "a sheriff," among others, none of whom are at issue here), and by certain bodies, including the "governing body of a municipality." However, the term "governing body of a municipality" does *not* mean the citizens; it means only the Denton City Council itself (the actual governing body of the City of Denton), which has not adopted any such policy. Tex. Loc. Gov't Code § 21.002 ("[a] reference in this code or another statute . . . (2) to the governing body of a municipality includes a municipal governing body regardless of the name, including a board of aldermen, city commission, or city council, used by a statute, municipal charter, or municipal ordinance to refer to the governing body.").

officials] to perform purely ministerial duties on the ground that in their opinion the ordinance would be invalid if adopted."). That's what the Officials did.

Indeed, every act committed by the City Council in this process was mandatory. Had it refused to do so at any juncture, the citizens likely would have been entitled to bring their own *ultra-vires* suit to compel the City Council to perform its ministerial tasks. *Id.* at 653 (when the people exercise the initiative provisions of a city charter, "the members of the City Council, like other city officials and employees, become ministerial officers in the legislative process, burdened with the mandatory obligations of performing the duties imposed upon them incidental to carrying out the initiative procedure.").

This case presents the bizarre scenario where a city and its officials did everything right—they took every affirmative ministerial action they were required to take, and they declined to take the one act (adopting a policy) that they were prohibited from taking. And they're getting sued for it. That scenario has never supported and can never support an *ultra-vires* claim.

A valid *ultra-vires* claim must establish that the Officials acted in violation of the law. The State's claim here and the evidence presented establish that the City and its Officials have complied with the law. To the letter. The State's claim only seeks a declaration about hypothetical action that could be taken, and hence presents no live case or controversy to adjudicate.

**C.    The State's overbroad interpretation of Section 370.003 would violate the separation-of-powers doctrine.**

The State presumably wants Section 370.003 to bar local governmental entities from having any ordinance or policy requiring anything less than full enforcement of the state's drug laws.  Hence, the State seeks an injunction requiring the City to "fully enforce the drug laws in Chapter 481 of the Texas Health and Safety Code."  (Pl.'s Orig. Pet. at Prayer.)  The State's interpretation of Section 370.003 would cause that section to violate the separation-of-powers doctrine, rendering it unconstitutional.  And because the Courts should avoid a statutory interpretation that creates a constitutional infirmity, the State's interpretation should be rejected.

The Texas Constitution prohibits laws that interfere with the separation of powers.  *See* Tex. Const. art. II, § 1; *In re Tex. Dep't of Fam. & Protective Servs.*, 660 S.W.3d 161, 167 (Tex. App.—San Antonio 2022, no pet.); *State v. Stephens*, 663 S.W.3d 45, 49 (Tex. Crim. App. 2021).  The separation-of-powers doctrine provides that "governmental authority vested in one department of government cannot be exercised by another department unless expressly permitted by the constitution." *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993).

The separation-of-powers doctrine is "foundational for federal and state governments in this country" and is "firmly embedded in our nation's history."  *In re Cnty. of Hidalgo*, 655 S.W.3d 44, 49 (Tex. App.—Corpus Christi–Edinburg 2022, no pet.).  This doctrine "reflects a belief on the part of those who drafted and adopted our state constitution that one of the greatest threats to liberty is the accumulation of

excessive power in a single branch of government." *Armadillo Bail Bonds v. State*, 802 S.W.2d 237, 239 (Tex. Crim. App. 1990).

"Legislative power, as distinguished from executive power, is the authority to make laws, but not to enforce them." *Springer v. Gov't of Philippine Islands*, 277 U.S. 189, 202 (1928). The Legislature thus has no role in deciding when and how the laws it passes should be enforced. "The Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case." *United States v. Nixon*, 418 U.S. 683, 693 (1974). Hence, the initiation of criminal prosecutions is within the "special province of the executive branch" and is at the heart of prosecutorial discretion. *Id.*; *Heckler v. Chaney*, 470 U.S. 821, 832 (1985).

Insofar as it would limit the police and prosecutorial discretion held by the executive branch, Section 370.003 constitutes an unconstitutional usurpation of executive power by the Legislature. The Court should not infer such a constitutional infirmity, and should reject the State's statutory interpretation. *Cf., City of Fort Worth v. Rylie*, 602 S.W.3d 459, 468 (Tex. 2020) ("Courts must construe statutes to avoid constitutional infirmities.").

1. ***The investigation and prosecution of crimes is a "quintessential" executive function that is "exclusive" to the executive branch.***

Prosecutors have "broad" latitude in making a range of investigatory and prosecutorial determinations, including when, against whom, and whether to prosecute particular criminal acts. *Wayte v. United States*, 470 U.S. 598, 607 (1985). That "exclusive authority and absolute discretion to decide whether to prosecute a case" is vested in "the Executive Branch." *Nixon*, 418 U.S. at 693; *accord Morrison v.*

21

*Olson*, 487 U.S. 654, 706 (1988) (Scalia, J. dissenting) (characterizing the "investigation and prosecution of crimes" as a "quintessentially executive function.").

Part of prosecutorial discretion is the discretion exercised by the law enforcement officer who encounters alleged criminal activity. *See Antu v. Eddy*, 914 S.W.2d 166, 171 (Tex. App.—San Antonio 1995, no writ). The doctrine of "police discretion" is "well established" and "has long coexisted with apparently mandatory arrest statutes." *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005). As the United States Supreme Court has observed, it is simply "common sense that all police officers must use some discretion in deciding when and where to enforce city ordinances." *City of Chicago v. Morales*, 527 U.S. 41, 62, n. 32 (1999).

### 2. *Restriction on prosecutorial discretion generally violates the separation of powers doctrine.*

American courts have long characterized prosecutorial discretion as a function of the separation-of-powers doctrine.[7] *See United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965). "[I]t is well settled that the question of whether and when prosecution is to be instituted is within the discretion of the Attorney General. Mandamus will not lie to control the exercise of this discretion." *Powell v. Katzenbach*, 359 F.2d 234, 234–35 (D.C. Cir. 1965).

---

[7]    While the federal Constitution contains no explicit separation-of-powers provision, the Texas Constitution explicitly prohibits one branch from exercising power inherently belonging to another branch. *Tex. Dep't of Family & Protective Servs. v. Dickensheets*, 274 S.W.3d 150, 156 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *State v. Stephens*, 663 S.W.3d 45, 49–50 (Tex. Crim. App. 2021). This "textual difference between the United States and Texas constitutions suggests that Texas would 'more aggressively enforce separation of powers between its governmental branches than would the federal government.'" *Stephens*, 663 S.W.3d at 50 (*citing State v. Rhine*, 297 S.W.3d 301, 309 (Tex. Crim. App. 2009)).

### a. *Judicial deference to prosecutorial decisions is practical.*

As part of the separation of powers, the judicial branch has declined to interfere in police or prosecutorial decision-making. The United States Supreme Court has itself observed that the "decision to prosecute is particularly ill-suited to judicial review." *See Wayte*, 470 U.S. at 607. That decision of whether to prosecute involves a consideration of factors—such as the strength of the evidence, the deterrence value, the prosecutor's available resources, and the office's existing enforcement priorities—that are "not readily susceptible to the kind of analysis the courts are competent to undertake." *Id.* Indeed, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967).

The injunction the State seeks in this case illustrates the impracticality of judicial review of police and prosecutorial decision-making. The State asks the Court to issue an "injunction ordering Defendants to fully enforce the drug laws in Chapter 481 of the Texas Health and Safety Code." (Pl.'s Orig. Pet. at Prayer.) Leaving aside the vagueness of how drug laws would be "fully enforced," the injunction the State proposes asks the Court to undertake a ride-along during every police shift, arbitrate every police encounter, and evaluate every ounce of suspicion a police officer may develop to determine whether the drug laws are being "fully enforced." The injunction the State seeks therefore not only violates the constitutional separation-of-powers doctrine, it would produce an impractical and absurd result.

23

> ### b. *Prevention of the accumulation of power underpins the restriction on legislative infringement on prosecutorial discretion.*

Separation of powers bars the legislative branch from passing laws that would infringe on police and prosecutorial discretion. Under Article II of the United States Constitution, the executive branch—and not the legislature—"possesses authority to decide 'how to prioritize and how aggressively to pursue legal actions against defendants who violate the law.'" *United States v. Tex.*, 599 U.S. 670, 678–79 (2023) (*citing TransUnion LLC*, 141 S. Ct. 2190, 2207 (2021)). The executive branch must be granted discretion both because it "lacks the resources to arrest and prosecute every violator of every law" and because it "must constantly react and adjust to the ever-shifting public-safety and public-welfare needs of the American people." *Id.* at 680.

Were the Legislature to have written the statute the State would like to enforce, such a statute would constitute a usurpation by the Legislature of the executive's prosecutorial power. If Section 370.003 required the police and prosecutors to "fully enforce" the drug laws, such a requirement would prevent the executive branch from effectively exercising its constitutionally assigned powers. *See Greeley v. State*, No. 03-98-00007-CR, 2000 Tex. App. LEXIS 3535, at *36 (Tex. App.—Austin May 31, 2000, pet. ref'd) ("The executive branch is charged with enforcing the laws as adopted by the legislature. In enforcing these laws and deciding what crime to charge, the State has prosecutorial discretion.").

**3. To avoid a constitutional infirmity, courts generally do not interpret statutes to require enforcement in every instance.**

As set forth above, the statute does *not* require the City (or anyone) to "fully enforce" the state's drug laws. It merely restricts the City's governing body and its police department from adopting a policy under which the City will not enforce such laws. *See* Tex. Loc. Gov't Code § 370.003. Because the statute, by its plain language, does not support the overbroad and unconstitutional interpretation the State ascribes to it, the Court need not pass on the constitutionality of the statute.

It is simply enough in this case to observe that the City has not violated the statute by adopting any prohibited policy, and neither the City Council nor its police department intends to do so.

Because of both the practical impossibility of enforcing against every statutory violation and because of the legislative usurpation of executive authority such a mandate would entail, courts do not interpret statutes that purport to require full enforcement to impose an affirmative obligation. Accordingly, the United States Supreme Court has held that a statutory requirement that an agency "shall enforce" a statutory scheme is insufficient to permit review of a nonenforcement decision. *Heckler*, 470 U.S. at 834 (1984); *accord Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 381 (2d Cir. 1973) (holding that the provision that the U.S. Attorney is "authorized and required to institute prosecutions against all persons violating" certain provisions of the Civil Rights Act does not "strip" federal prosecutors of their "normal prosecutorial discretion.").

25

Illustrating this point, a Florida federal court recently interpreted provisions of the Endangered Species Act ("ESA"), commanding that "the provisions of this Act and any regulations or permits issued pursuant thereto *shall* be enforced by the Secretary." *Atl. Green Sea Turtle v. Cnty. Council of Volusia Cnty. Fla.*, No. 6:04-cv-1576-Orl-31KRS, 2005 U.S. Dist. LEXIS 38841, at 43 (M.D. Fla. May 3, 2005), *vacated as moot*, No. 05-13683-HH (11th Cir. Jan. 18, 2006) (interpreting 16 U.S.C. § 1540(e)). Rejecting a conservation group's petition for mandamus against the U.S. Fish and Wildlife Service to compel an enforcement action, the court concluded that the ESA "plainly does not mandate an impossibility—i.e., the Service to pursue to the fullest each and every possible violation of the ESA or permits thereunder." *Id.* at *49.

Section 370.003—even if it were a different version that the State seems to be basing its claims on here—likewise does not mandate an impossibility. And, in fact, the Code Construction Act provides that in interpreting the statute, the Court should "presume that a result feasible of execution is intended." Tex. Gov't Code § 311.021(4) (cleaned up).

The contrary interpretation proposed by the State, by which the City would be mandated to perform "an impossibility" of "pursu[ing] to the fullest each and every possible violation of the" state's drug laws, *cf., Atl. Green Sea Turtle*, 2005 U.S. Dist. LEXIS 38841, at *49, is contrary to the plain language of the statute, the Code Construction Act, the Constitution's Separation of Powers Clause, and the limitations of police manpower, budgeting, and energy. That interpretation should be rejected.

26

**D.** **Even if the Ordinance were preempted, Section 370.003 does not waive the City's immunity to the relief the State seeks.**

The *ultra-vires* exception to governmental immunity is limited not only as to scope but also as to available relief. A successful claimant in an *ultra-vires* case "is entitled only to prospective injunctive relief." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 376 (Tex. 2009).

In this suit, the State alleges that the City and the named officials acted without legal authority when they adopted the Ordinance and "any corresponding police department directives" (even though no Defendant adopted the Ordinance or issued any police department directives). (Pl.'s Orig. Pet. at ¶ 39.) Even if Section 370.003 were given the broad meaning the State ascribes to it, the *ultra-vires* exception only allows suits requiring officials "to *comply* with statutory or constitutional provisions." *Heinrich*, 284 S.W.3d at 372 (emphasis added).

Thus, even if the City Council and police department had adopted such a policy, the only relief available to the State in an *ultra-vires* suit brought to enforce Section 370.003 would be an injunction barring the Officials from following those policies. The fact that there is no such policy in this case is but the first problem with the injunction the State seeks.

The State's requested declaratory and injunctive relief go far beyond that one act of compliance that the State could seek (if there had actually been any act of noncompliance). (Pl.'s Orig. Pet. at ¶¶ 41 & 48.) For example, the State requests a declaratory judgment that "the Ordinance" is void. (Pl.'s Orig. Pet. at ¶ 41.) But Section 370.003 does not state or provide that any ordinance to the effect of not fully

27

enforcing the state's drug laws is illegal or void; as noted above and by its plain text, the statute simply prohibits certain bodies and persons from adopting such a policy.

The State further seeks an injunction *requiring* Defendants to repeal the Ordinance (that they did not pass) and to "fully enforce the drug laws in Chapter 481" of the Texas Health and Safety Code. (Pl.'s Orig. Pet. at ¶ 48.) But Section 370.003 does not require any official to "fully enforce" Chapter 481 of the Health and Safety Code. Because the requested relief of a declaration that the Ordinance is void and a request for an injunction requiring Defendants 1) to repeal an ordinance that they did not pass and 2) to fully enforce drug laws would reach beyond any conduct prohibited by Section 370.003 (meaning that no *ultra-vires* act in violation of that statute is implicated), the City and named Officials retain immunity as to that relief the State seeks. The State's claims seeking that relief therefore should be dismissed for lack of jurisdiction.

## CONCLUSION

If Section 370.003 mandated full enforcement of the state's drug laws, it would be an unconstitutional infringement on the separation of powers. Fortunately, it doesn't do that. It only bars governmental officials from promulgating non-enforcement policies.

The Officials have not promulgated any such policy. For reasons that can only be speculated about, the State nonetheless attempts to create a dispute where there is none. Neither the City nor the Officials have taken any action in contravention of Section 370.003, and they do not have any present intention of doing so. The State's

28

suit presents no case or controversy for the Court to adjudicate. Likewise, the City and the Officials retain their immunity from suit.

Accordingly, Defendants City of Denton and Gerard Hudspeth, Mayor of Denton, Brian Beck, Mayor Pro Tem of Denton, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee and Chris Watts, Members of the City Council of Denton and Doug Shoemaker, (former) Chief of Police of Denton all ask the Court to dismiss all claims against them with prejudice for lack of subject-matter jurisdiction. Defendants further ask the Court, pursuant to Section 37.009 of the Civil Practice & Remedies Code to award them costs and reasonable and necessary attorney fees as are just and equitable and to grant them such other and further relief to which they may be justly entitled.

Respectfully submitted,

DEVIN Q. ALEXANDER
Denton City Attorney's Office
215 East McKinney
Denton, Texas 76201
(940) 349-8333
(940) 382-7923 Facsimile
For email contact and service regarding this case, please include email addresses for all listed attorneys in the To: field, and include amy.hoffee@cityofdenton.com in the cc: field, until requested otherwise.

Mack Reinwand
City Attorney
State Bar No. 24056195
mack.reinwand@cityofdenton.com

Devin Alexander
Deputy City Attorney
State Bar No. 24104554
devin.alexander@cityofdenton.com

29

**LLOYD GOSSELINK**
  **ROCHELLE & TOWNSEND, P.C.**
816 Congress Avenue, Suite 1900
Austin, Texas 78701
Telephone:   (512) 322-5800
Facsimile:    (512) 472-0532


By:     */s/ Jose E. de la Fuente*
        JOSE E. de la FUENTE
        (Attorney-in-Charge)
        State Bar No. 00793605
        jdelafuente@lglawfirm.com
        JAMES F. PARKER
        State Bar No. 24027591
        jparker@lglawfirm.com
        GABRIELLE C. SMITH
        State Bar No. 24093172
        gsmith@lglawfirm.com
        SYDNEY P. SADLER
        State Bar No. 24117905
        ssadler@lglawfirm.com

**ATTORNEYS FOR DEFENDANTS**

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following attorneys via the Court's electronic filing case management system and electronic mail on this 20th day of May, 2024:

Ken Paxton
Attorney General

Brent Webster
First Assistant Attorney General

Grant Dorfman
Deputy First Assistant Attorney General

Ralph Molina
Deputy Attorney General for Legal Strategy

Ryan D. Walters
Chief, Special Litigation Division

Jacob Przada
Jacob.Przada@oag.texas.gov
Special Counsel
Johnathan Stone
Johnathan.Stone@oag.texas.gov
Special Counsel

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
**ATTORNEYS FOR PLAINTIFF**

Richard Gladden
Richscot1@hotmail.com
Law Office of Richard Gladden
1204 W. University Dr., Suite 307
Denton, Texas 76201
**ATTORNEYS FOR INTERVENOR-DEFENDANTS DEB ARMINTOR AND DECRIMINALIZE DENTON**

*/s/ Jose E. de la Fuente*
JOSE E. de la FUENTE

31

# EXHIBIT A

STATE OF TEXAS          §
                       §          CERTIFIED COPY OF PUBLIC RECORD
COUNTY OF DENTON        §

I Lauren Thoden, hereby certify in the performance of the functions of my office that the attached instrument is a full, true and correct copy of the **125 pages consisting of City of Denton City Council Minutes and City of Denton Ordinance 22-2447,** a public record of the City of Denton, Texas. The same appears of record in my office and said documents are the official public record from the public office of the City of Denton, Denton County, Texas, and is kept in said office.

I further certify that I am the City Secretary for the City of Denton, Texas, that I have legal custody of said instrument, and that I am the official designated keeper of records in said office.

In witness whereof, I have hereunto set and affixed the official seal of the City of Denton, Texas, on this 15th day of May 2024.

Lauren Thoden, City Secretary
City of Denton, Texas
Denton County
State of Texas

[SEAL]

1

After determining that a quorum was present, the City Council of the City of Denton, Texas convened in a Work Session on Monday, June 7, 2022, at 2:01 p.m. in the Council Work Session Room at City Hall, 215 E. McKinney Street, Denton, Texas.

PRESENT IN PERSON:     Mayor Gerard Hudspeth, Mayor Pro Tem Brian Beck and Council Members Vicki Byrd, Jesse Davis, Alison Maguire, Brandon Chase McGee, and Chris Watts

ABSENT:     None

Also present were City Manager Sara Hensley and City Attorney Mack Reinwand.

**The posted agenda noted the registration process for both in-person, call-in, and virtual public participation at this meeting. While citizen commentary received via the online registration process was not read, each member for the City Council received each online commentary as it was submitted. In-person, call-in, and/or online comments received will be reflected in the exhibit to the minutes of this meeting, if/as applicable.**

## WORK SESSION

1. **Citizen Comments on Consent Agenda Items**

   None

2. **Requests for clarification of agenda items listed on this agenda.**

   - Clarification was requested on the following items:
     o Council Member Beck: Items 4.E (22-978), 4.I (22-1029), and 4.Q (22-1163)
     o Mayor Hudspeth: Items 4.E (22-978), 4.J (22-1032), 4.AB (22-1151), and 4.AH (22-1141)

   - The following item was pulled for Individual Consideration:
     o Council Members Davis and Maguire: Item 4.D (22-953)

3. **Work Session Reports**

A.  ID 22-701 Receive a report, hold a discussion, and give staff direction regarding Audit Project 018 - Health Insurance Operations: Follow-Up Review. [Estimated Presentation/Discussion Time: 30 minutes]

   Following discussion, there was no direction provided as the item was for presentation/discussion purposes.

B.   ID 22-801 Receive a report, hold a discussion, and give staff direction regarding proposals from the Board of Ethics to amend the Ethics Ordinance and Board of Ethics Rules of Procedure. [Estimated Presentation/Discussion Time: 60 minutes]

Following discussion, City Council consensus was to present an ordinance for consideration at a future date for the following components. Staff will revisit requested items for additional review by the Board of Ethics.

- 1: Update to Panel Composition Requirements
- 3: Alignment with Updated Ethics Complaint Form
- 4: Clarification of Panel's Ability to Recommend Frivolity Hearing
- 5: Adjustment to Preliminary Assessment Panel Assignment Criteria
- 6: Clarification of Advisory Opinion Request Timelines & Reporting Process
- Additional Minor Verbiage Changes

C.   ID 22-815 Receive a report, hold a discussion, and give staff direction regarding the role of City Council Committees, membership to subcommittees and other internal/external groups, and their associated nomination and appointment processes. [Estimated Presentation/Discussion Time: 45 minutes]

The item was presented and discussion followed.

Following discussion, City Council consensus was to schedule formal appointment as presented at the June 28, 2022 City Council meeting with the only change being to reach out to the Denton County Behavioral Health Leadership Team for the addition of a second seat providing for the appointment of Council Member Alison Maguire.

D.   ID 22-828 Receive a report, hold a discussion, and give staff direction regarding funding recommendations from the Community Services Advisory Committee (CSAC) for the proposed activities to be included in the 2022 Action Plan. [Estimated Presentation/Discussion Time: 30 minutes]

The item was presented and discussion followed.

Following discussion, staff was directed to proceed with the proposed recommendations as presented for inclusion in the 2022 Action Plan.

Council Member Jesse Davis arrived at 3:25 p.m.; advance notice was provided.

The work session was recessed for a short break at 3:30 p.m. and reconvened at 3:45 p.m.

E.   ID 22-419 Receive a report, hold a discussion, and give staff direction on pending City Council requests for: (1) A Council vote to increase the allotted time for public comment from four to five minutes. (2) A work session to discuss incentives and or requirements for EV charging electrical circuitry and infrastructure for single-family homes with garages and multifamily developments of certain sizes. (3) A Council vote on a resolution that directs the Denton Police Department to make investigations and criminal enforcement related to reproductive healthcare its lowest priority, and recommends against using City funds for such purposes. (4) Authorizing staff resources to be spent in developing a policy related to panhandling and public health policy. [Estimated Presentation/Discussion Time: 30 minutes]

Following discussion, City Council consensus was as follows:

- ID 22-419 (1) A Council vote to increase the allotted time for public comment from four to five minutes.
  o   No consensus for a work session.

- ID 22-419 (2) A work session to discuss incentives and or requirements for EV charging electrical circuitry and infrastructure for single family homes with garages and multifamily developments of certain sizes.
  o   Consensus for a future work session.

- ID 22-419 (3) A Council vote on a resolution that directs the Denton Police Department to make investigations and criminal enforcement related to reproductive healthcare its lowest priority, and recommends against using City funds for such purposes.
  o   Consensus for a future work session.

- ID 22-419 (4) Authorizing staff resources to be spent in developing a policy related to panhandling and public health policy.
  o   Consensus for a future work session.

The work session ended at 4:10 p.m.

## CLOSED MEETING

1.   The City Council convened into a Closed Meeting at 4:10 p.m. consistent with Chapter 551 of the Texas Government Code, as amended, or as otherwise allowed by law, as follows.

A.   ID 22-832 Deliberations Regarding Certain Public Power Utilities: Competitive Matters - Under Texas Government Code Section 551.086; Consultation with Attorneys - Under Texas Government Code, Section 551.071. Receive a presentation from staff regarding public power competitive and financial matters about the risks of wholesale energy supply and risk management plans, hedge plans, and strategies as each relates to the DME electric power and gas portfolio; discuss, deliberate, and provide direction to staff regarding the same. Consultation with the City's attorneys regarding legal issues associated with the above

matters where a public discussion of these legal matters would conflict with the duty of the City's attorneys to the City of Denton and the Denton City Council under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, or would jeopardize the City's legal position in any administrative proceeding or potential litigation.
**NOT DELIBERATED**

B.  ID 22-1031 Consultation with Attorneys under Texas Government Code Section 551.071 and Deliberations Involving Medical or Psychiatric Records of Individuals under Texas Government Code Chapter 551.0785. Receive information from staff, discuss, and provide staff with direction related to a police officer's plan benefits related to an injury in the line of duty. Consultation with the City's attorney regarding legal issues associated with benefits where a public discussion of these legal matters would conflict with the duty of the City's attorneys to the City of Denton and the Denton City Council under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas; to consider information in the medical or psychiatric records related to a police officer's injury in the line of duty.
**DELIBERATED**

The closed meeting started at 4:15 p.m. and ended at 5:00 p.m. No votes or actions were taken during the closed meeting.

## REGULAR MEETING

After determining that a quorum was present, the City Council of the City of Denton, Texas convened in a Regular Meeting on Tuesday, June 7, 2022, at 6:32 p.m. in the Council Chambers at City Hall, 215 E. McKinney Street, Denton, Texas.

PRESENT IN PERSON:     Mayor Gerard Hudspeth, Mayor Pro Tem Brian Beck and Council Members Vicki Byrd, Jesse Davis, Alison Maguire, Brandon Chase McGee, and Chris Watts

ABSENT:     None

Also present were City Manager Sara Hensley and City Attorney Mack Reinwand.

**The posted agenda noted the registration process for both in-person, call-in, and virtual public participation at this meeting. While citizen commentary received via the online registration process was not read, each member for the City Council received each online commentary as it was submitted. Both in-person, call-in, and online comments received are reflected in the exhibit to the minutes of this meeting, if/as applicable**

## 1.  PLEDGE OF ALLEGIANCE

A. U.S. Flag and B. Texas Flag

## 2. PROCLAMATIONS/PRESENTATIONS

A. ID 22-1181 Proclamation: Denton LGBTQ Pride Month
   **PRESENTED**

B. ID 22-1182 Proclamation: Juneteenth Day
   **PRESENTED**

## 3. PRESENTATIONS FROM MEMBERS OF THE PUBLIC

A. Review of procedures for addressing the City Council.

B. Reports from members of the public

1) Receive Scheduled Citizen Reports from Members of the Public

   a. ID 22-1127 Ms. Debbie Sims, 1801 N. Elm Street, regarding continual issues with water line breaks/leaks at her hair business, Debi Do & Company Salon (1801 N. Elm Street).
      **PRESENTED**

   b. ID 22-1128 Ms. Kathy Woods, 504 Retama Street, regarding the financial impact of water main issues at Debi Do & Company Salon (1801 N. Elm Street).
      **PRESENTED**

   c. ID 22-1143 Mr. Max Folmar, 1412 Fox Hollow, regarding transportation services and Go Zone.
      **PRESENTED**

   d. ID 22-1210 Ms. Elisabeth Gould, 1103 Bernard Street, representing Speaking At Her Best, LLC, regarding what to look out for when loving yourself wholeheartedly.
      **PRESENTED**

   e. ID 22-1212 Mr. Stephen Dillenburg, 1001 Abbots Lane, regarding follow-up to comments made on Emergency Resolution of Public Corruption.
      **PRESENTED**

   f. ID 22-1213 Dr. David Zoltner, 2501 Timber Trail, regarding abuse of the Open Microphone by citizens who sign up for the opportunity to speak, and by members of Council and Staff who fail to enforce decorum.
      **PRESENTED**

g. ID 22-1238 Mr. Gladden, 1822 W. Oak Street, regarding Invalid Certification of Recall Petition by the Denton City Secretary.
**PRESENTED**

2) Additional Citizen Reports (Open Microphone)

None

## 4. CONSENT AGENDA

The Consent Agenda consisted of Items 4.A-H. During the Work Session held earlier in the day, Item 4.D was pulled for Individual Consideration by Council Members Davis and Maguire, and Items 4.AF and 4.AG were Removed From Consideration and rescheduled to a future date by Mayor Hudspeth at the request of Staff.

Mayor Pro Tem Beck moved to adopt the Consent Agenda, now consisting of Items 4.A-C. E-AE and AH. Motion seconded by Council Member McGee. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

A. ID 22-811 Consider approval of the minutes of May 17, 2022 (Canvassing and Regular) Meetings.
**APPROVED**

B. ID 22-1133 Consider approval of a resolution of the City of Denton providing the May 9, 2022 meeting absence of a Public Utilities Board Member be excused; and declaring an effective date.
**APPROVED**

C. ID 22-834 Consider adoption of an ordinance of the City of Denton repealing Ordinance No. 21-765; approving the 2022 Denton Municipal Electric - Energy Risk Management Policy; (the "2022 EMRP"); delegating authority as provided in the 2022 ERMP; authorizing and approving the subsequent execution of such other ancillary and related documents, including, without limitation, contracts, nominations, certificates, assignments, licenses, directions, instruments, confirmations, orders, and statements as are authorized by the 2022 ERMP, which are incident to or related thereto; confirming that the City of Denton, its Mayor, its City Council members, its City Manager, its City Attorney, and its City Secretary are authorized to perform such acts and obligations as are reasonably required to consummate those future transactions which are provided for and authorized by the 2022 ERMP; finding that the purchase of electricity, natural gas, and related commodities and instruments are

exempt from the requirements of competitive bidding; finding that the purchase of electric energy, natural gas, and related commodities and instruments made by the city under the terms of the 2022 ERMP are in the public welfare of the citizens and electric ratepayers of the city; authorizing the expenditure of funds therefor; and, providing an effective date. The Public Utilities Board recommends approval [7-0].
**ASSIGNED ORDINANCE NO. 22-834**

E.  ID 22-978 Consider adoption of an ordinance of the City of Denton approving a City co-sponsorship to the Denton Juneteenth Celebration Committee in an amount not to exceed $20,365.89 of in-kind services and resources for the Denton Juneteenth Celebration, which will be held on Friday, June 17, 2022 through Saturday, June 18, 2022, at the Fred Moore Park; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-978**

F.  ID 22-1081 Consider adoption of an ordinance of the City of Denton granting the Denton Juneteenth Celebration Committee a three-year noise exception for the Denton Juneteenth Celebration, to be held on June 17-19, 2022, June 16-18, 2023, and June 14-16, 2024 at Fred Moore Park; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1081**

G.  ID 22-1024 Consider approval of a resolution of the City of Denton authorizing the City Manager to execute an agreement allowing Denton County Brewing Company to sell alcoholic beverages at the Yappy Hour event, on Friday, June 10, 2022, and Friday, August 5, 2022, at North Lakes Dog Park upon satisfying certain conditions; and providing for an effective date.
**ASSIGNED RESOLUTION NO. 22-1024**

H.  ID 22-1028 Consider adoption of an ordinance of the City of Denton granting the North Texas State Fair Association a three-year noise exception for the North Texas Fair and Rodeo which will be held August 18-28, 2022, August 17-27, 2023, and August 15-25, 2024, at 2217 N. Carroll Boulevard; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1028**

I.  ID 22-1029 Consider adoption of an ordinance of the City of Denton approving a City co-sponsorship to the North Texas State Fair Association in an amount not to exceed $8,502.80 of in-kind services and resources for the Annual North Texas Fair and Rodeo Parade which will be held on Saturday, August 20, 2022, at 10:00 a.m., at the Downtown Square; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1029**

J.  ID 22-1032 Consider adoption of an ordinance of the City of Denton authorizing the City Manager to execute on behalf of the City the disc golf course rental agreement for disc golf tournaments and events in the parks; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1032**

K.  ID 22-1053 Consider approval of a resolution of the City of Denton authorizing the Original Denton District to provide a letter of support to the Texas Commission on the Arts for an application by the Denton Festival Foundation for the Arts Respond Project - Economic Development grant in the amount of $15,000 for musician salaries related to the 2023 Arts and Jazz Festival: and providing an effective date.
    **ASSIGNED RESOLUTION NO. 22-1053**

L.  ID 22-1054 Consider approval of a resolution of the City of Denton authorizing the Original Denton District to provide a letter of support to the Texas Commission on the Arts for an application by the Greater Denton Arts Council for the Arts Respond - Cultural District Project grant in the amount of $10,000 for the implementation of the "63 & 93: Generations in Conversation" art exhibition, an exhibition hosting works by artists thirty-years and younger alongside artists sixty-years and older; and providing an effective date.
    **ASSIGNED RESOLUTION NO. 22-1054**

M.  ID 22-1055 Consider approval of a resolution of the City of Denton authorizing the Original Denton District to provide a letter of support to the Texas Commission on the Arts for an application by Tejas Storytelling Association for the Arts Respond - Cultural District Project grant in the amount of $7,000 for aid in 2023 Texas Storytelling Festival expenses; and providing an effective date.
    **ASSIGNED RESOLUTION NO. 22-1055**

N.  ID 22-1056 Consider approval of a resolution of the City of Denton authorizing the Original Denton District to provide a letter of support to the Texas Commission on the Arts for an application by Theatre Denton for the Arts Respond - Cultural District project grant in the amount of $5,000 for renovation of the neon campus theatre sign; and providing an effective date.
    **ASSIGNED RESOLUTION NO. 22-1056**

O.  ID 22-1082 Consider approval of a resolution of the City of Denton in support of the Original Denton District's application for the Arts Respond - Cultural District Project grant from the Texas Commission on the Arts in the amount of $12,000 for traffic utility box art program; authorizing the Original Denton District to execute a letter of support; and providing an effective date.
    **ASSIGNED RESOLUTION NO. 22-1082**

P.  ID 22-1161 Consider approval of a resolution of the City of Denton authorizing the City Manager to execute an agreement allowing Denton County Brewing Company to sell alcoholic beverages at the Glow in the Park event, on Saturday, June 18, 2022, at the North Lakes Disc Golf Course upon satisfying certain conditions; and providing for an effective date.
    **ASSIGNED RESOLUTION NO. 22-1161**

Q.  ID 22-1163 Consider adoption of an ordinance of the City of Denton approving a City co-sponsorship in an amount not to exceed $2,545.70 of in-kind services and resources for the Glow in the Park event hosted by the Denton Parks Foundation, which will be held on Saturday, June 18, 2022, from 6:00 p.m. to 10:30 p.m., at the North Lakes Disc Golf Course, 2201 N Bonnie Brae St; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1163**

R.  ID 22-1103 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the approval of Change Order No. 5 to the contract between the City of Denton and Quality Excavation, LTD, for the construction of the McKinney Street sidewalk segment for the Downtown Storm Sewer Trunk Line PH I Project; providing for the expenditure of funds therefor; and providing an effective date (IFB 7086 - Change Order No. 5, in the not-to-exceed amount of $65,757.40 for a total contract award aggregated to $1,289,375.65). The Public Utilities Board recommends approval (7 - 0).
**ASSIGNED ORDINANCE NO. 22-1103**

S.  ID 22-1104 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Biggs and Mathews Environmental, Inc., for the scale facility and roadway improvements at the City of Denton Landfill for the Solid Waste and Recycling Department; providing for the expenditure of funds therefor; and providing an effective date (RFQ 7109-025 - Professional Services Agreement for design services awarded to Biggs and Mathews Environmental, Inc., in the not-to-exceed amount of $160,000.00). The Public Utilities Board recommends approval (7 - 0).
**ASSIGNED ORDINANCE NO. 22-1104**

T.  ID 22-1105 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Allegro Development Corporation, for the Energy Trading and Risk Management Application for Denton Municipal Electric, which is the sole provider of this software, in accordance with Texas Local Government Code 252.022, which provides that procurement of commodities and services that are available from one source are exempt from competitive bidding, and if over $50,000, shall be awarded by the governing body; providing for the expenditure of funds therefor; and providing an effective date (File 7916 - awarded to Allegro Development Corporation, in the eight (8) year not-to-exceed amount of $1,658,561.00). The Public Utilities Board recommends approval (7 - 0).
**ASSIGNED ORDINANCE NO. 22-1105**

U.  ID 22-1106 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the approval of a first amendment to a Professional Services Agreement between the City of Denton and Freese and Nichols, Inc., amending the contract approved by the City Manager on January 18, 2021, in the not-to-exceed amount of

$96,963.00, said first amendment to provide collaborative project delivery consulting services for the Capital Improvement Projects division; providing for the expenditure of funds therefor; and providing an effective date (File 7620 - providing for an additional first amendment expenditure amount not-to-exceed $110,725.00 with the total contract amount not-to-exceed $207,688.00).
**ASSIGNED ORDINANCE NO. 22-1106**

V. ID 22-1107 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Techline, Inc., for the purchase of roll duct, PVC conduit, fittings, and accessories for the Denton Municipal Electric Department to be stocked in the City of Denton Warehouse; providing for the expenditure of funds therefor; and providing an effective date (IFB 7973 - awarded to Techline, Inc., for one (1) year, with the option for four (4) additional one (1) year extensions, in the total five (5) year not-to-exceed amount of $10,000,000.00).
**ASSIGNED ORDINANCE NO. 22-1107**

W. ID 22-1108 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the approval of a first amendment to a contract between the City of Denton and SHI Government Solutions, Inc., amending the contract approved by City Council on May 3, 2022, to add Technology Solutions Products & Services through The Interlocal Purchasing System (TIPS) Cooperative Program Contract # 200105; providing for the expenditure of funds therefor; and providing an effective date (File 7983 - providing for an amendment to the ordinance to add the TIPS Cooperative Program Contract #200105).
**ASSIGNED ORDINANCE NO. 22-1108**

X. ID 22-1110 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Kimley-Horn and Associates, Inc., to provide regulatory permitting/approval support, process evaluation, design services, bidding assistance, and construction phase services for the Pecan Creek Water Reclamation Plant (PCWRP) Headworks Project for the Water Utilities Department; providing for the expenditure of funds therefor; and providing an effective date (RFQ 7574-013 - Professional Services Agreement for design services awarded to Kimley-Horn and Associates, Inc., in the not-to-exceed amount of $3,828,700.00). The Public Utilities Board recommends approval (7 - 0).
**ASSIGNED ORDINANCE NO. 22-1110**

Y. ID 22-1131 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Freese and Nichols, Inc., for the development of a Storm Water Master Plan assessment for the Drainage Department as set forth in the contract; providing for the expenditure of funds therefor; and providing an effective date (RFQ 7599-006 - Professional Services Agreement for assessment services awarded to Freese and Nichols, Inc., in the not-to-exceed amount of $500,000.00). The Public Utilities Board recommends approval (7 - 0).
**ASSIGNED ORDINANCE NO. 22-1131**

Z.  ID 22-1145 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, for the approval of a pre-qualified list for utility relocation and construction services for various Capital Investment Projects within the City of Denton; providing for the expenditure of funds therefor; and providing an effective date (RFQ 7968 - for a three (3) year term).
**ASSIGNED ORDINANCE NO. 22-1145**

AA. ID 22-1146 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, rejecting any and all competitive proposals under RFP 7982 for Voluntary Products, to include accident, critical illness with cancer, and hospital indemnity coverage; and providing an effective date (RFP 7982).
**ASSIGNED ORDINANCE NO. 22-1146**

AB. ID 22-1151 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Ray McCain Services, Inc., for repairs, replacement, maintenance, and installation of automatic gates and overhead doors for the Facilities Management Department; providing for the expenditure of funds therefor; and providing an effective date (RFP 7951 - awarded to Ray McCain Services, Inc., for one (1) year, with the option for four (4) additional one (1) year extensions, in the total five (5) year in the not-to-exceed amount of $750,000.00).
**ASSIGNED ORDINANCE NO. 22-1151**

AC. ID 22-1154 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with 2L Construction, L.L.C., for the construction of the North Texas Boulevard Widening and Improvements at Apogee Stadium Project; providing for the expenditure of funds therefor; and providing an effective date (IFB 7966 - awarded to 2L Construction, L.L.C., in the not-to-exceed amount of $802,815.83).
**ASSIGNED ORDINANCE NO. 22-1154**

AD. ID 22-1160 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Artistic Painting Company, Inc., for interior and exterior painting services for the Facilities Management Department; providing for the expenditure of funds therefor; and providing an effective date (RFP 7952 - awarded to Artistic Painting Company, Inc., for one (1) year, with the option for four (4) additional one (1) year extensions, in the total five (5) year not-to-exceed amount of $600,000.00).
**ASSIGNED ORDINANCE NO. 22-1160**

AE. ID 22-1197 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, rejecting any and all competitive proposals under RFP 7975 for the Channel Grinder Provision and Install for the Solid Waste Department; and providing an effective date (RFP 7975).
**ASSIGNED ORDINANCE NO. 22-1197**

AH. ID 22-1141 Consider approval of a resolution by the City of Denton. a Texas home-rule municipal corporation, suspending Oncor Electric Delivery Company LLC's proposed effective date of June 17, 2022, for ninety days in connection with Oncor's statement of intent to increase rates filed on or about May 13, 2022; requiring the reimbursement of municipal rate case expenses; authorizing participation in the coalition of similarly situated cities; authorizing intervention and participation in related rate proceedings; authorizing the retention of special counsel; finding that the meeting complies with the open meetings act; making other findings and provisions related to the subject; and declaring an effective date
**ASSIGNED RESOLUTION NO. 22-1141**

## ITEM PULLED FOR INDIVIDUAL CONSIDERATION

D. ID 22-953 Consider adoption of an ordinance of the City of Denton authorizing the City Manager to execute an Interlocal Agreement between the City of Denton and Denton Independent School District (DISD) for the widening of Riney Road as an addendum to the Bonnie Brae Phase 6 Project, for which funds will provided for by DISD.
**ASSIGNED ORDINANCE NO. 22-953**

Pulled for Individual Consideration by Council Members Davis and Maguire.

There were no online registrations or call-ins on the item.

Council Members Davis and Maguire had a conflict of interest and left the Council Chambers.

The item was not presented and no discussion followed.

Mayor Pro Tem Beck moved to adopt the item as presented. Motion seconded by Council Member Byrd. Motion carried.

AYES (5): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, McGee, and Watts
NAYS (0): None
ABSTENTIONS (2): Council Members Davis and Maguire

## ITEMS PULLED FROM CONSIDERATION

AF. ID 22-1170 Consider adoption of an ordinance of the City of Denton ratifying and authorizing the city manager, to execute an advance funding agreement with the Texas Department of Transportation for a project using funds held in the State Highway 121 subaccount-roadway improvements (off state system) providing for the extension of Mayhill

Road from as a four-lane divided urban arterial roadway from IH 35 east to US 380 in the City of Denton; authorizing the expenditure of funds therefor; and providing an effective date.
**PULLED FROM CONSIDERATION; RESCHEDULED TO A FUTURE DATE**

The item was pulled from consideration by Mayor Hudspeth at Staff's request and rescheduled to a future date.

AG. ID 22-1172 Consider adoption of an ordinance of the City of Denton ratifying and authorizing the City Manager, to execute and deliver an Advance Funding Agreement with the Texas Department of Transportation for a project using funds held in the State Highway 121 subaccount providing for an expansion of Hickory Creek Road from a two-lane rural roadway to a four-lane divided urban roadway and intersection improvements on Hickory Creek Road from FM 1830 to Riverpass Drive in the City of Denton; authorizing the expenditure of funds therefor; and providing an effective date.
**PULLED FROM CONSIDERATION; RESCHEDULED TO A FUTURE DATE**

The item was pulled from consideration by Mayor Hudspeth at Staff's request and rescheduled to a future date.

## 5. PUBLIC HEARINGS

A. ID 22-829 Hold a public hearing inviting citizens to comment on the 2022 Action Plan for Housing and Community Development.

There were no online registrations or call-ins on the item.

The item was presented and no discussion followed.
The public hearing was opened and citizen comments received are noted in Exhibit A.

With no other callers on queue, the public hearing was closed.

NOTE: There was no action taken as the item was only a public hearing.

B. S22-0002b Hold a public hearing and consider making a recommendation to City Council regarding a request by Terrano Realty, Inc. for a Specific Use Permit to allow for a Multifamily Dwelling Use on approximately 11.891 acres of land, generally located on the east side of Woodrow Lane, approximately 1,365 feet south of East McKinney Street, in the City of Denton, Denton County, Texas. THE ITEM HAS BEEN POSTPONED TO THE JUNE 28, 2022 CITY COUNCIL MEETING (S22-0002b, Pathway Woodrow Lane Multifamily, Julie Wyatt)
**CONTINUED TO JUNE 28, 2022 WITH THE PUBLIC HEARING OPEN**

Mayor Hudspeth announced the public hearing remained open and continued to June 28, 2022.

C.  Z21-0017b Hold a public hearing and consider adoption of an ordinance of the City of Denton, Texas, regarding a change in the zoning district and use classification from Residential Rural (RR) District to Planned Development (PD) District with a Light Industrial (LI) base zone on approximately 311.5 acres of land generally located on the northeast corner of Hampton Road and Masch Branch Road in the City of Denton, Denton County, Texas; adopting an amendment to the City's Official Zoning Map; providing for a penalty in the maximum amount of $2,000.00 for violations thereof; providing a severability clause and an effective date. The Planning and Zoning Commission voted [4-2] to recommend denial of the initial request to rezone to Light Industrial (LI) (Z21-0017b, RM Squared Denton Tract, Tina Firgens).
    **ASSIGNED ORDINANCE NO. Z21-0017b**

All members of the City Council received the comments as submitted and had the opportunity to review all submissions prior to the start of the meeting and consider such comments when voting on the item. The summary of public commentary/registrations are noted in Exhibit A.

The item was presented and discussion followed.

The public hearing was opened and citizen comments received are noted in Exhibit A.

With no other callers on queue, the public hearing was closed.

Following discussion, Council Member Davis moved to adopt the item as presented. Motion seconded by Council Member Maguire. Motion carried.

    AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
    NAYS (0): None

The council meeting was recessed for a short break at 8:57 p.m. and reconvened at 9:16 p.m.

6.  **ITEMS FOR INDIVIDUAL CONSIDERATION - CONSIDERATION OF THE USE OF EMINENT DOMAIN TO CONDEMN REAL PROPERTY INTERESTS**

A.  ID 22-657 Consider adoption of an ordinance of the City of Denton determining the public use, need, and necessity for the acquisition of a (i) permanent water line easement and a (ii) temporary construction easement, generally located along Loop 288 and US 77 between Interstate Highway 35E to Nicosia Street, situated in the Nathan Wade Survey Abstract No. 1407, in the City and County of Denton, Texas, and more particularly described in the attached Exhibit "A" (collectively the "Property Interests"); authorizing the City Manager and City Attorney, to acquire the Property Interests by agreement, if possible, including

making all offers required by law; authorizing the use of the power of eminent domain to condemn the property interests if agreements cannot be reached; authorizing the City Attorney, to file eminent domain proceedings if necessary; authorizing the expenditure of funding; making findings; providing a savings clause; and providing an effective date. **ASSIGNED ORDINANCE NO. 22-657**

There were no online registrations or call-ins on the item.

The item was presented and no discussion followed.

Council Member Maguire moved that the City of Denton, after having made the offers required by State Law, use the power of eminent domain, if needed, to acquire various permanent waterline easements, permanent sanitary sewer easements, and temporary construction easements, located generally along Loop 288 and US 77 between Interstate Highway 35E to Nicosia Street, situated in the Nathan Wade Survey Abstract No. 1407, BBB&CRR Co. Survey Abstract No. 141, all in the City and County of Denton, Texas, and more particularly described in the attached Exhibit "A" to the ordinance now under consideration and on the screen to be displayed to the audience, all of which are for a valid public use necessary to install a transmission main and pump station as part of the Water Distribution Master Plan to move water to the elevated storage tank located at Loop 288 and IH35, to serve the public and citizens of the City of Denton.

Each page of Exhibit A of the proposed ordinance was shown on-screen prior to a second to the motion being called.

Motion seconded by Council Member McGee. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

B. ID 22-777 Consider adoption of an ordinance of the City of Denton determining the public use, need, and necessity for the acquisition of various (i) permanent sanitary sewer easements and (ii) temporary construction easements, generally located between Interstate Highway 35E and Westgate Dr., situated in the Nathan Wade Survey Abstract No. 1407, F. Baston Survey Abstract No. 43, all in the City and County of Denton, Texas, and more particularly described in the attached Exhibit "A" (collectively, the "Property Interests"); authorizing the City Manager and City Attorney to acquire the Property Interests by agreement, if possible, including making all offers required by law; authorizing the use of the power of eminent domain to condemn the property interests if agreements cannot be reached; authorizing the City Attorney, to file eminent domain proceedings if necessary; authorizing the expenditure of funding; making findings; providing a savings clause; and providing an effective date. **ASSIGNED ORDINANCE NO. 22-777**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member Davis moved that the City of Denton, after having made the offers required by State Law, use the power of eminent domain, if needed, to acquire a permanent waterline easement and temporary construction easement, located be between Interstate Highway 35E and Westgate Dr., situated in the Nathan Wade Survey Abstract No. 1407, F. Baston Survey Abstract No. 43, all in the City and County of Denton, Texas, and more particularly described in the attached Exhibit "A" to the ordinance now under consideration and on the screen to be displayed to the audience, all of which are for a valid public use necessary to install to abandon the existing Barrow wastewater lift station, to serve the public and citizens of the City of Denton.

Each page of Exhibit A of the proposed ordinance was shown on-screen prior to a second to the motion being called.

Motion seconded by Council Member Maguire.

Council Member Davis amended his motion to clarify the last portion, *"...to install a new sanitary sewer line and abandon the existing Barrow wastewater lift station, to serve the public and citizens of the City of Denton."* Council Member Maguire, who seconded the original motion, accepted the amendment. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

## 7.   ITEMS FOR INDIVIDUAL CONSIDERATION

A.   ID 22-862 Consider approval of a resolution of the City of Denton stating no objection to a 4% housing tax credit application to the Texas Department of Housing and Community Affairs for the proposed new development of the Pathways on Woodrow to provide affordable rental housing; authorizing the Texas Housing Foundation to exercise its powers within the territorial boundaries of the City of Denton; authorizing a cooperation agreement; and providing an effective date.
**ASSIGNED RESOLUTION NO. 22-862**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Citizen comments received are noted in Exhibit A.

Following discussion, Council Member Watts moved to adopt the item as presented. Motion seconded by Council Member Byrd. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

B.  ID 22-921 Consider adoption of an ordinance considering all matters incident and related to the issuance, sale and delivery of up to $89,000,000 in principal amount of "City of Denton General Obligation Refunding and Improvement Bonds, Series 2022"; authorizing the issuance of the bonds; delegating the authority to certain City officials to execute certain documents relating to the sale of the bonds; approving and authorizing instruments and procedures relating to said bonds; enacting other provisions relating to the subject; and providing an effective date. The Public Utilities Board recommends approval (7-0).
    **ASSIGNED ORDINANCE NO. 22-921**

    There were no online registrations or call-ins on the item.

    Items 7.B (22-921) and 7.C (22-922) were collectively read into the record, presented, and discussed, but voted on individually.

    Following discussion, Council Member Watts moved to adopt the item as presented. Motion seconded by Council Member McGee. Motion carried.

    AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
    NAYS (0): None

C.  ID 22-922 Consider adoption of an ordinance considering all matters incident and related to the issuance, sale and delivery of up to $121,000,000 in principal amount of "City of Denton Certificates of Obligation, Series 2022"; authorizing the issuance of the certificates; delegating the authority to certain city officials to execute certain documents relating to the sale of the certificates; approving and authorizing instruments and procedures relating to said certificates; enacting other provisions relating to the subject; and providing an effective date. The Public Utilities Board recommends approval (7-0).
    **ASSIGNED ORDINANCE NO. 22-922**

    There were no online registrations or call-ins on the item.

    Items 7.B (22-921) and 7.C (22-922) were collectively read into the record, presented, and discussed, but voted on individually.

Following discussion, Council Member Watts moved to adopt the item as presented. Motion seconded by Council Member Davis. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

D.    ID 22-1027 Consider adoption of an ordinance of the City of Denton approving a co-sponsorship to the Denton Noon Kiwanis Club in an amount not to exceed $24,095.00 of in-kind services and resources for the 4th of July fireworks show, which will be held on Sunday, July 3, 2022, at North Lakes Park; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1027**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member McGee moved to adopt the item as presented. Motion seconded by Council Member Maguire. Motion carried.

AYES (6): Mayor Hudspeth and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (1): Mayor Pro Tem Beck

E.    ID 22-1030 Consider adoption of an ordinance of the City of Denton granting the Denton Noon Kiwanis Club a noise exception with respect to sound levels and hours of operation for the 4th of July Fireworks show to be held on Sunday, July 3, 2022, from 9:30 p.m. to 10 p.m. at North Lakes Park; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1030**

There were no online registrations or call-ins on the item.
The item was presented and discussion followed.

Following discussion, Council Member Davis moved to adopt the item as presented. Motion seconded by Council Member Watts. Motion carried.

AYES (6): Mayor Hudspeth and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (1): Mayor Pro Tem Beck

F.    ID 22-1224 Consider approval of a resolution of the City of Denton expressing its support of the City of Uvalde regarding the tragic events that occurred at Robb Elementary School; and providing an effective date.
**ASSIGNED RESOLUTION NO. 22-1224**

There were no online registrations or call-ins on the item.

The item was not presented; however, an overview of the item was detailed. The resolution was read in its entirety by Council Member Watts.

Following commentary, Council Member Watts moved to adopt the item as presented. Motion seconded by Council Member Byrd. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

G.   ID 22-1149 Receive the certification from the City Secretary regarding the petition for the recall of District 4 Council Member Alison Maguire.

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Citizen comments received are noted in Exhibit A.

No City Council action was required.

H.   ID 22-1150 Receive the certification from the City Secretary regarding the petition for the decriminalization of marijuana.

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Citizen comments received are noted in Exhibit A.

No City Council action was required.

## 8.   **CONCLUDING ITEMS**

Council Members expressed items of interest

With no further business, the meeting was adjourned at 10:55 p.m.

GERARD HUDSPETH
MAYOR
CITY OF DENTON, TEXAS

JESUS SALAZAR
DEPUTY CITY SECRETARY
CITY OF DENTON, TEXAS

MINUTES APPROVED ON:___June 28, 2022___

20

After determining that a quorum was present, the City Council of the City of Denton, Texas convened in a Work Session on Tuesday, July 19, 2022, at 2:00 p.m. in the Council Work Session Room at City Hall, 215 E. McKinney Street, Denton, Texas.

PRESENT IN PERSON:      Mayor Gerard Hudspeth, Mayor Pro Tem Brian Beck (virtual) and Council Members Vicki Byrd, Jesse Davis, Alison Maguire, Brandon Chase McGee, and Chris Watts

ABSENT:              None

Also present were City Manager Sara Hensley and City Attorney Mack Reinwand.

**The posted agenda noted the registration process for in-person, call-in, and virtual public participation at this meeting. While citizen commentary received via the online registration process was not read, each member for the City Council received each online commentary as it was submitted. In-person, call-in, and online comments received are reflected in the exhibit to the minutes of this meeting.**

## WORK SESSION

1. **Citizen Comments on Consent Agenda Items**

   None

2. **Requests for clarification of agenda items listed on this agenda.**

   - Clarification was requested on the following items:
     o Council Member Byrd: Item 4.H (22-830)
     o Council Member Watts: Item 4.H (22-830)

   - The following item was Pulled for Individual Consideration:
     o Council Member Maguire: Item 4.F (22-1398)

3. **Work Session Reports**

A. ID 22-247 Receive a report, hold a discussion, and give staff direction regarding FY 2022-23 departmental budget presentations for Customer Service, Water & Wastewater, Environmental Services & Sustainability, Electric, and Solid Waste. [Estimated Presentation/Discussion Time: 3 hours]

   The item was presented and discussion followed.

Following discussion, there was no direction provided. Additional budget presentations to be made at upcoming meetings until final adoption of the FY 2022-23 Budget, scheduled for the September 27, 2022 Meeting.

The work session was recessed for a short break at 4:40 p.m. and reconvened at 4:56 p.m.

B.  ID 22-1433 Receive a report, hold a discussion, and give staff direction regarding the procedure for call-in comments at public meetings. [Estimated Presentation/Discussion Time: 30 minutes]

The item was presented and discussion followed.

Following discussion, City Council consensus was to shift to a pre-registration-only format for call-in comments for City Council and Planning and Zoning Commission meetings. As much time as possible is to be provided for the pre-registration process. Staff will determine the best time to end the pre-registration process once the technology vendor for the Tele-Townhall system is consulted while also working to give the public sufficient notice.

C.  ID 21-2805 Receive an update regarding the Denton County Transit Authority (DCTA) from the City of Denton DCTA Board representative. [Estimated Presentation/Discussion Time: 30 minutes]

The item was presented and discussion followed.

Following discussion, there was no direction provided, with additional information to be being requested of the DCTA in the following areas:

- Opportunity for reduced fee vouchers for social service agencies;
- Dynamics on the accidents being reported; and
- Their position on establishing connectivity up to the multifamily areas that are more in need of a fixed route.

D.  ID 22-682 Receive a report, hold a discussion, and give staff direction on pending City Council requests for: 1. A Work Session to discuss an amendment to the Mobility Plan to reflect a direct connection between Windsor Road and Masch Branch Road, north of but separate from Hampton Road. [Estimated Presentation/Discussion Time: 30 minutes]

The item was presented and discussion followed.

Following discussion, City Council consensus was as follows:

- ID 22-682 (1) A Work Session to discuss an amendment to the Mobility Plan to reflect a direct connection between Windsor Road and Masch Branch Road, north of but separate from Hampton Road.
  o Consensus for a future work session.

E.   ID 22-558 Receive a report, hold a discussion, and give staff direction regarding Audit Project 027 - Network Management: Security Controls. [Estimated Presentation/ Discussion Time: 30 minutes]

The item was presented and discussion followed.

The item related to Closed Meeting Item 1.B (22-1407) scheduled for deliberation at the Closed Meeting to follow.

Following discussion, there was no direction provided as the item was for presentation/discussion purposes.

The work session ended at 5:55 p.m.

## CLOSED MEETING

1.   The City Council convened into a Closed Meeting at 5:55 p.m. consistent with Chapter 551 of the Texas Government Code, as amended, or as otherwise allowed by law, as follows.

A.   ID 22-1299 Consultation with Attorneys - Under Texas Government Code Section 551.071. Consult with the City's attorneys, if needed, regarding the Texas Municipal Power Agency (TMPA) budget process where public discussion of these legal matters would conflict with the duty of the City's attorneys to the City of Denton and the Denton City Council under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, or otherwise compromise the City's legal position.
     **NOT DELIBERATED**

B.   ID 22-1407 Deliberations Regarding Security Devices or Security Audits - Under Texas Government Code Section 551.089. Receive a presentation from staff regarding network security information and to Audit Project 027 - Network Management: Security Controls; discuss, deliberate, and provide direction to staff regarding the same.
     **DELIBERATED**

The item related to Work Session Item 3.E (22-558) discussed earlier in the day.

C.   ID 22-1476 Consultation with Attorneys - Under Texas Government Code Section 551.071. Consult with the City's attorneys regarding the "Decriminalize Marijuana" petition where public discussion of these legal matters would conflict with the duty of the City's attorneys to the City of Denton and the Denton City Council under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, or otherwise compromise the City's legal position.
     **DELIBERATED**

The item related, in part, to Public Hearing Item 5.B (22-1196) scheduled for consideration at the Regular Meeting to follow.

D.  ID 22-1459 Deliberations Regarding Certain Public Power Utilities: Competitive Matters -
    Under Texas Government Code Section 551.086; Consultation with Attorneys - Under Texas
    Government Code Section 551.071. Receive information from staff regarding financial
    matters that include data stemming from public power utility competitive data; discuss,
    deliberate, and provide direction to staff regarding same; consult with the City's attorneys
    regarding legal issues associated with the above matter and associated with the "Application
    of Denton Municipal Electric to Change Rates for Wholesale Transmission Service" pending
    before the Public Utility Commission of Texas under Docket No. 52715; where public
    discussion of these legal matters would conflict with the duty of the City's attorneys to the
    City of Denton and Denton Municipal Electric (DME) under the Texas Disciplinary Rules
    of Professional Conduct of the State Bar of Texas, or otherwise compromise the City's legal
    position.
    **DELIBERATED**

The closed meeting started at 5:57 p.m. and ended at 6:27 p.m. No votes or actions were taken
during the closed meeting.

## REGULAR MEETING

After determining that a quorum was present, the City Council of the City of Denton, Texas
convened in a Regular Meeting on Tuesday, July 19, 2022, at 6:33 p.m. in the Council Chambers
at City Hall, 215 E. McKinney Street, Denton, Texas.

PRESENT IN PERSON:      Mayor Gerard Hudspeth, Mayor Pro Tem Brian Beck (virtual) and
                        Council Members Vicki Byrd, Jesse Davis, Alison Maguire,
                        Brandon Chase McGee, and Chris Watts

ABSENT:                 None

Also present were City Manager Sara Hensley and City Attorney Mack Reinwand.

**The posted agenda noted the registration process for in-person, call-in, and virtual public
participation at this meeting. While citizen commentary received via the online registration
process was not read, each member for the City Council received each online commentary
as it was submitted. In-person, call-in, and online comments received are reflected in the
exhibit to the minutes of this meeting.**

## 1.  PLEDGE OF ALLEGIANCE

A. U.S. Flag and B. Texas Flag

## 2.  PROCLAMATIONS/PRESENTATIONS

A.  ID 22-1360 Proclamation: Parks and Recreation Month
    **PRESENTED**

3.  **PRESENTATIONS FROM MEMBERS OF THE PUBLIC**

    A.  Review of procedures for addressing the City Council.

    B.  Reports from members of the public

        1)  Receive Scheduled Citizen Reports from Members of the Public

            a.  ID 22-1382 Mr. Stephen Dillenburg regarding betrayal of public trust, conscious disregard for life, fraudulent inducement of dangerous behavior from fiduciary positions (of trust.)
                **NOT PRESENTED**

            b.  ID 22-1467 Mr. Steven Leach, 900 Willowwood St., #32, regarding Improving Turnout for City Elections.
                **PRESENTED**

            c.  ID 22-1468 Mr. Eunice Husband, 316 Fry St., #259, regarding proposed policy changes for potential employees/job seekers who have criminal records.
                **PRESENTED**

        2)  Additional Citizen Reports (Open Microphone)

            Citizen comments received are noted in Exhibit A.

4.  **CONSENT AGENDA**

The Consent Agenda consisted of Items 4.A- U. During the Work Session held earlier in the day, Item 4.F (22-1398) was pulled for Individual Consideration by Council Member Maguire.

Council Member Maguire moved to adopt the Consent Agenda, now consisting of Items 4.A-E and G-U. Motion seconded by Council Member Davis. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

A.  ID 22-816 Consider approval of the minutes of June 24, June 25, and June 28, 2022 Meetings.
    **APPROVED**

B.  ID 22-1331 Consider approval of a resolution of the City of Denton excusing the June 6, 2022 meeting absence of a Board of Ethics Member; and declaring an effective date.
    **ASSIGNED RESOLUTION NO. 22-1331**

C.  ID 22-1332 Consider approval of a resolution of the City of Denton excusing the June 10, 2022 meeting absence of a Community Services Advisory Committee Member; and declaring an effective date.
    **ASSIGNED RESOLUTION NO. 22-1332**

D.  ID 22-1330 Consider approval of a resolution of the City of Denton excusing the June 13, 2022 meeting absence of a Public Utilities Board Member; and declaring an effective date.
    **ASSIGNED RESOLUTION NO. 22-1330**

E.  ID 22-1289 Consider approval of a resolution of the City of Denton providing the June 27, 2022 meeting absence of a Zoning Board of Adjustment Member be excused; and declaring an effective date.
    **ASSIGNED RESOLUTION NO. 22-1289**

G.  ID 22-694 Consider adoption of an ordinance of the City of Denton authorizing the City Manager to execute a funding agreement between the City of Denton and the Denton Affordable Housing Corporation to provide HOME Investment Partnership Program funds for the rehabilitation of five rental units located at 400 Coronado Drive, Denton, Texas; authorizing the expenditure of funds in an amount not to exceed $100,000.00; and providing an effective date.
    **ASSIGNED ORDINANCE NO. 22-694**

H.  ID 22-830 Consider adoption of an ordinance of the City of Denton authorizing the City Manager to sign and submit to the Department of Housing and Urban Development a 2022 Action Plan for Housing and Community Development with appropriate certifications, as authorized and required by the Housing and Community Development Act of 1974, as amended, and the National Affordable Housing Act of 1990, as amended; authorizing the Director of Community Services, or designee, to sign releases of liens and subordination agreements upon certain conditions; and providing for an effective date.
    **ASSIGNED ORDINANCE NO. 22-830**

I.  ID 22-1326 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the execution of the first amendment to a funding agreement between the City and Our Daily Bread, Inc., approved by City Council on October 26, 2021; said first amendment to extend the term of the contract, authorize the expenditure of State and Local Fiscal Recovery Funds (SLRF) and expand the scope of services; and providing an effective date.
    **ASSIGNED ORDINANCE NO. 22-1326**

J.  ID 22-1265 Consider approval of a resolution of the City of Denton, Texas, adopting the City of Denton's Comprehensive Solid Waste Management Strategy ("CSWMS") to guide the City's future solid waste/materials management system and to develop infrastructure, programs, and policies necessary to manage materials in alignment with the guiding principles of the CSWMS; and providing an effective date. The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED RESOLUTION NO. 22-1265**

K.  ID 22-1295 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute approval documents under the Joint Operating Agreement by and between the Texas Municipal Power Agency, City of Bryan, Texas, the City of Denton, Texas, the City of Garland, Texas, and the City of Greenville, Texas regarding the TMPA budget for the fiscal year 2023; providing for the expenditure of funds therefore; and providing an effective date. The Public Utilities Board recommends approval (6-0).
**ASSIGNED ORDINANCE NO. 22-1295**

L.  ID 22-1302 Consider adoption of an ordinance authorizing the City Manager to execute Amendment No. 3 between the City of Denton, a Texas municipal home-rule corporation, and the Texas Municipal Power Agency, a Texas Joint Powers Agency, that extends the term of the existing agreement to September 1, 2024; authorizing the expenditure of funds; and providing an effective date. The Public Utilities Board recommends approval (6-0).
**ASSIGNED ORDINANCE NO. 22-1302**

M.  ID 22-1373 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the approval of a first amendment to a contract between the City of Denton and JRD, LLC dba Maslonka Powerline Services, LLC, amending the contract approved by the City Council on February 23, 2021, in the not-to-exceed amount of $15,880,000.00; said first amendment to provide transmission line emergency services and a cost adjustment due to rising fuel, material, and labor costs for Denton Municipal Electric; providing for the expenditure of funds therefor; and providing an effective date (RFP 7483 - providing for an additional first amendment expenditure amount not-to-exceed $3,776,000.00, with the total contract amount not-to-exceed $19,656,000.00). The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED ORDINANCE NO. 22-1373**

N.  ID 22-1374 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Parkhill, Smith & Cooper, Inc., for engineering services related to the Southwest Booster Pump Station (SWBPS) Ground Storage Tank (GST) Coating project for the Water Production Department as set forth in the contract; providing for the expenditure

of funds therefor; and providing an effective date (RFQ 7574-015 - Professional Services Agreement for engineering services awarded to Parkhill, Smith & Cooper, Inc., in the not-to-exceed amount of $116,500.00). The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED ORDINANCE NO. 22-1374**

O.  ID 22-1375 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Power Monitors, Inc., for the purchase of pole mounted, ethernet-based three-phase PMI End-of-Line voltage and current recording, monitoring, metering, software, integration, accessories, and devices for Denton Municipal Electric, which is the sole provider of these items, in accordance with Texas Local Government Code 252.022, which provides that procurement of commodities and services that are available from one source are exempt from competitive bidding, and if over $50,000, shall be awarded by the governing body; providing for the expenditure of funds therefor; and providing an effective date (File 8008 - awarded to Power Monitors, Inc., in the three (3) year not-to-exceed amount of $204,643.74). The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED ORDINANCE NO. 22-1375**

P.  ID 22-1377 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with NewGen Strategies and Solutions, LLC, for the Solid Waste Cost of Service and Rate Design Study for the Solid Waste Department as set forth in the contract; providing for the expenditure of funds therefor; and providing an effective date (RFQ 7997 - Professional Services Agreement for professional services awarded to NewGen Strategies and Solutions, LLC, in the not-to-exceed amount of $89,890.00). The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED ORDINANCE NO. 22-1377**

Q.  ID 22-1378 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Vulcan, Inc., for traffic signs and accessories for the Warehouse; providing for the expenditure of funds therefor; and providing an effective date (IFB 8001 - awarded to Vulcan, Inc., for one (1) year, with the option for four (4) additional one (1) year extensions, in the total five (5) year not-to-exceed amount of $1,500,000.00).
**ASSIGNED ORDINANCE NO. 22-1378**

R.  ID 22-1379 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Technology Assets, LLC, dba Global Asset, through the Buy Board Cooperative Purchasing Network Contract # 661-22, for the service of asset recovery and recycling for retired technology assets for the City of Denton; providing for the expenditure of funds therefor; and providing an effective date (File 8017 - awarded to Technology Assets, LLC, dba Global Asset, in the three (3) year term).
**ASSIGNED ORDINANCE NO. 22-1379**

S.   ID 22-1380 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Bibliotheca, LLC, for the purchase of CloudLibrary digital services for downloadable ebooks and audiobooks as a companion to CloudLink services for the Denton Public Library, which is the sole provider of this software, in accordance with Texas Local Government Code 252.022, which provides that procurement of commodities and services that are available from one source are exempt from competitive bidding, and if over $50,000, shall be awarded by the governing body; providing for the expenditure of funds therefor; and providing an effective date (File 8021 - awarded to Bibliotheca, LLC, in the seven (7) year not-to-exceed amount of $1,635,318.00).
     **ASSIGNED ORDINANCE NO. 22-1380**

T.   ID 22-1381 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Solid Border, Inc., through the Department of Information Resources (DIR) Cooperative Purchasing Network Contract No. DIR-CPO-4850, for the purchase of Cybersecurity Software Products and Services; providing for the expenditure of funds therefor; and providing an effective date (File 8044 - awarded to Solid Border, Inc., in the five (5) year not-to-exceed amount of $1,300,000.00).
     **ASSIGNED ORDINANCE NO. 22-1381**

U.   ID 22-1400 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Sustainability Solutions Group USA, Inc., for the development of a Climate Action Adaptation Plan; providing for the expenditure of funds therefor; and providing an effective date (RFP 7996 - awarded to Sustainability Solutions Group USA, Inc., in the not-to-exceed amount of $132,000.00).
     **ASSIGNED ORDINANCE NO. 22-1400**

## ITEM PULLED FOR INDIVIDUAL CONSIDERATION

F.   ID 22-1398 Consider adoption of an ordinance of the City of Denton authorizing the City Manager to execute an Interlocal Agreement in the Form of a Memorandum of Understanding between the City of Denton and the Denton Independent School District (DISD), for reimbursement to the City in the estimated amount of $811,154 for compensation and benefits of Student Resource Officers (SROs) assigned at DISD for the period of July 1, 2022, through June 30, 2023, and providing an effective date.
     **ASSIGNED ORDINANCE NO. 22-1398**

     There were no online registrations or call-ins on the item.

     The item was Pulled for Individual Consideration by Council Member Maguire.

Council Members Davis and Maguire had a conflict of interest and left the Council Chambers.

The item was not presented and no discussion followed.

Mayor Hudspeth moved to adopt the item as presented. Motion seconded by Council Member Byrd. Motion carried.

AYES (5): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, McGee, and Watts
NAYS (0): None
ABSTAINED (2): Council Members Davis and Maguire

5. **PUBLIC HEARINGS**

A. DCA22-0002d Hold a public hearing and consider adoption of an ordinance of the City of Denton amending the Denton Development Code, specifically amendments to Subchapter 2 - Administration and Procedures; providing for a penalty in the maximum amount of $2,000.00 for violations thereof; providing a severability clause and an effective date. The Planning and Zoning Commission voted [6-0] to recommend approval of the amendments. (DCA22-0002d, Subchapter 2 Code amendments, Ron Menguita)
**ASSIGNED ORDINANCE NO. DCA22-0002d**

There were no online registrations or call-ins on the item.

The item was presented and no discussion followed.

The public hearing was opened and with no callers in the queue, the public hearing was closed.

Council Member Watts moved to adopt the item as presented. Motion seconded by Council Member Davis. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

B. ID 22-1196 Hold a public hearing pursuant to Article IV, Section 4.07 of the Denton City Charter, have deliberation, and give staff direction regarding the certified initiative petition to adopt an ordinance to eliminate low-level marijuana enforcement by creating Chapter 21, Article V of the Denton City Code to be titled "Marijuana Enforcement".

All members of the City Council received the comments as submitted and had the opportunity to review all submissions prior to the start of the meeting and consider such comments when voting on the item. The summary of public commentary/registrations are noted in Exhibit A.

The item related, in part, to Closed Meeting 1.C (22-1476) deliberated earlier in the day.

The item was presented and discussion followed.

The public hearing was opened and citizen comments received are noted in Exhibit A.

With no other callers on queue, the public hearing was closed.

Following further discussion, City Council directed staff to schedule the ordering of the special election for vote on the initiative petition (Code Amendment) at the November 8, 2022 Uniform Election Date, with the item to be presented for consideration at the July 26, 2022 Meeting.

## 6. ITEMS FOR INDIVIDUAL CONSIDERATION

A. ID 22-1245 Consider adoption of an ordinance of the City of Denton amending the Code of Ordinances, related to Chapter 2, titled "Administration," Article XI, titled "Ethics," to update the composition requirements of a Panel, clarify what is included in the contents of an accepted Ethics Complaint, and clarify the process for recommending a frivolity hearing; providing for findings of fact; providing severability; providing a repealer clause, providing codification; confirming proper notice and meeting; and providing for an effective date.
**ASSIGNED ORDINANCE NO. 22-1245**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member Byrd moved to adopt the item as presented. Motion seconded by Council Member Watts. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

B. ID 22-1246 Consider adoption of an ordinance of the City of Denton confirming the proposed amendments to the Board of Ethics' Rules of Procedure as required by the Code of Ordinances, Chapter 2, Article XI, Section 2-227(k) to update the composition requirements of a Panel, clarify what is included in the contents of an accepted Ethics Complaint, clarify the process for recommending a frivolity hearing, and provide guidelines for processing Advisory Opinion requests; providing for severability; and providing an effective date.
**ASSIGNED ORDINANCE NO. 22-1246**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member Watts moved to adopt the item as presented. Motion seconded by Council Member McGee. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

C.  ID 22-1416 Consider approval of a resolution of the City of Denton adopting the 2022-2023 City Council Priorities and Key Focus Areas for the city of Denton; and providing an effective date.
**ASSIGNED RESOLUTION NO. 22-1416**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member Byrd moved to adopt the item as presented. Motion seconded by Council Member McGee. Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, Maguire, McGee, and Watts
NAYS (0): None

## 7. CONCLUDING ITEMS

Council Members expressed items of interest.

With no further business, the meeting was adjourned at 8:32 p.m.


GERARD HUDSPETH
MAYOR
CITY OF DENTON, TEXAS

ROSA RIOS
CITY SECRETARY
CITY OF DENTON, TEXAS

MINUTES APPROVED ON: _August 3, 2022_

Speaker Communication/Registration
(Online, Email, Phone)

| Name | Last | Address | City | Agenda Item | Position | Method | Comments |
|---|---|---|---|---|---|---|---|
| Deb | Armintor | 1001 Windsor Dr. | Denton | 23-1796 | Support | In-Person | Gave comments in support of the item. |
| Stanton | Brenner | 12 Pines Lane | Denton | 23-1104 | Support | In-Person | Gave comments in support of the item. |
| Kristine | Bray | 1204 Cordell St. | Denton | Open Mic | N/A | In-Person | Stated DCTA does not operate the Go Zone bus system the way it should be run. Instead standards are worse than Go Zone over 10 minutes, but in Denton it is closer to 45 minutes or more. Ridership is falling due to low standards and routes that don't make sense. Bus stops especially in downtown have no benches, no cover, nothing to accommodate riders. Service is low quality and is falling. Not sustainable. |
| Kristine | Bray | 1204 Cordell St. | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| James | Carr | 1526 Willowwood St. | Denton | 23-1198 | Support | In-Person | Gave comments in support of the item. |
| Javier | Vasquez Vaquero | 500 Inman St. | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Greer | Davis | 1014 Mack Place | Denton | 23-1196 | Support | Caller | Called to express support for the item but did not speak. |
| Alejandro | Gallegos-Juarez | 2525 Northview | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Eva | Greco | 802 W Oak St. #9 | Denton | Open Mic | N/A | In-Person | Gave comments on the City's bus system. She believes has gone completely downhill with Go Zone and the combination of fixed transport/routes based on Sundays. |
| Eva | Greco | 802 W Oak St. #9 | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Overell | Green | Denton | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Alexandria | Hayden | 7509 Inwood Rd. | Dallas | Open Mic | N/A | In-Person | Gave comments in opposition to the overpricing of items. |
| Robert | Hess | 1001 Le Mans | Corinth | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Jennifer | Lane | 1526 Willowwood St. | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Cynae | Vaughn-Young | 9805 Locust St. | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Jared | Franz | 2425 W Gregory St. | Denton | 23-1196 | Support | Caller | Gave comments in support of the item. |
| Morgan | Rawlinson | 2415 N Dicker St. | Denton | 23-1196 | Support | Caller | Gave comments in support of the item. |
| Priya | Sunita | 620 Fair Dr. | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| David | Graves | | | 23-1196 | Oppose | eComment | Please do not adopt this ordinance. This motion represents the views of activists and not our community as a whole. I use the Go days Zone and say this to the citizens. You will hear from the silent majority and see that this ordinance is a bad idea and bad for our community. Passing of this ordinance will lead to increased crime within our community and decrease by youth and the most vulnerable among our community. |
| Nicholas | Vernon | 417 Amarillo St. | Denton | 23-1196 | Support | In-Person | Gave comments in support of the item. |
| Phillip | Young | 264 Pinestone Ct. | Denton | Open Mic | N/A | In-Person | Gave comments on the City's structure and public communications. No longer opposed to the new Chief of Police serving as an Acting City Manager or the City Manager, and City Council should have a clear ... in the administration of the City as he has a high level of confidence in the past ... the local newspaper being used as a means of intimidation rather than ... representing his topics and closed his remarks with a vote for Council. |

NOTE:
- Information contained within this exhibit includes only commentary for Grab Microphone, Consent, Individual Consideration and Public Hearing items.
- eComments are included in their entirety, as submitted.
- Comments for Live Citizens addressing the City Council are an abbreviated summary.
- Full agenda, meeting video, and system transcript are available by visiting the City of Denton Public Meetings Page at www.cityofdenton.com/242/Public-Meetings-Agendas, going to the Archived Meetings Section, and selecting the applicable meeting date.

After determining that a quorum was present, the City Council of the City of Denton, Texas convened in a Special Called Meeting on Tuesday, November 22, 2022, at 9:00 a.m. in the Council Chambers at City Hall, 215 E. McKinney Street, Denton, Texas.

PRESENT:   Mayor Gerard Hudspeth, Mayor Pro Tem Brian Beck and Council Members Vicki Byrd, Jesse Davis, Alison Maguire, Brandon Chase McGee, and Chris Watts

ABSENT:   None

Also present were City Manager Sara Hensley and City Attorney Mack Reinwand.

**The posted agenda noted the registration process for in-person, call-in, and virtual public participation at this meeting. While citizen commentary received via the online registration process was not read, each member for the City Council received each online commentary as it was submitted. In-person, call-in, and online comments received are reflected in the exhibit to the minutes of this meeting.**

1.   **ITEMS FOR INDIVIDUAL CONSIDERATION**

A.   ID 22-2447 Consider adoption of an ordinance of the City of Denton canvassing election returns and declaring results of the Special Elections held on November 8, 2022; and providing an effective date.
     **ASSIGNED ORDINANCE NO. 22-2447**

     Council Member Maguire had a conflict of interest with Proposition A and left the Council Chambers.  Because the item incorporated both propositions on the ballot, the conflict encompassed the entire item.

     All members of the City Council received the comments as submitted and had the opportunity to review all submissions prior to the start of the meeting and consider such comments when voting on the item. The summary of public commentary/registrations are noted on Exhibit A.

     City Secretary Rios read the final vote totals into the record. The election results reported the following propositions received a favorable majority vote with the result being as indicated:

     • Proposition A - Shall Alison Maguire be removed from the City Council by Recall?
       o   CARRIED
     • Proposition B - Shall an initiative ordinance be approved to eliminate low-level marijuana enforcement?
       o   CARRIED

     Citizen comments received are noted on Exhibit A.

During citizen comments, Mayor Pro Tem Beck called a Point of Order that speakers be allowed to only speak on items listed on the agenda. Mayor Hudspeth ruled that since others had spoken on more than one issue, he would allow the current speaker to continue. With no objection forthcoming from any member of the City Council, the speaker continued the commentary.

Discussion followed.

During Mayor Pro Tem Beck's commentary regarding Proposition A, Council Member Watts called a Point of Order posing a question to the City Attorney regarding the City's current litigation and how such comments might affect the City's position. City Attorney Reinwand opined Mayor Pro Tem Beck was speaking for himself and his comments were not representative of the City's position in the litigation.

Following discussion, Mayor Hudspeth moved to adopt the item as presented. Motion seconded by Council Member Davis. Motion carried.

AYES (6): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Davis, McGee, and Watts
NAYS (0): None
ABSTENTIONS (1): Council Member Maguire

B.  ID 22-2456 Proclamation in appreciation of service to the City of Denton as a City Council Member to Alison Maguire.
    **PRESENTED**

There were no online registrations or call-ins on the item.

Citizen comments received are noted on Exhibit A.

[This area of Page 2 has been intentionally left blank.]



## Proclamation
### in appreciation of

### ALISON MAGUIRE

To all to whom these presents shall come,

Greetings:

**WHEREAS,** Alison Maguire has served as Council Member – District 4 of the City of Denton from 2021 to 2022; and

**WHEREAS,** The City of Denton has enjoyed the dedicated and outstanding contributions of Alison Maguire and her efforts to make Denton a better city; and

**WHEREAS,** Alison Maguire, among her many contributions to the community, has also served on the Community Partnership Committee, Mobility Committee, Denton County Behavioral Health Leadership Team, Denton County Transportation Authority, Discover Denton Advisory Board, and the Regional Transportation Council; and

**WHEREAS,** Alison Maguire has always served dutifully and beyond the efficient discharge of her duties in promoting the welfare and prosperity of the City, and has earned the respect of her fellow Council Members, colleagues, and citizens of Denton, and the loss of her presence will be keenly felt;

**NOW, THEREFORE,**

**THE CITY COUNCIL OF THE CITY OF DENTON HEREBY RESOLVES:**

That the sincere and warm appreciation of Alison Maguire felt by the citizens and staff of the City of Denton, be formally conveyed to her in a permanent manner by reading this Proclamation into the official minutes of the City of Denton, and forward to her a true copy thereof; and

**BE IT FURTHER RESOLVED:**

That the City of Denton does hereby officially and sincerely extend its thanks to Alison Maguire for her successful career as Council Member of the City of Denton.

PASSED AND APPROVED this the 22nd day of November 2022.

GERARD HUDSPETH, MAYOR

ATTEST:
ROSA RIOS, CITY SECRETARY

BY:

## 2. CONCLUDING ITEMS

Council Members expressed items of interest.

With no further business, the meeting was adjourned at 10:26 A.M.

GERARD HUDSPETH
MAYOR
CITY OF DENTON, TEXAS

ROSA RIOS
CITY SECRETARY
CITY OF DENTON, TEXAS

MINUTES APPROVED ON: January 10, 2023

ORDINANCE NO. 22-2447

AN ORDINANCE OF THE CITY OF DENTON CANVASSING ELECTION RETURNS AND DECLARING RESULTS OF THE SPECIAL ELECTIONS HELD ON NOVEMBER 8, 2022; AND PROVIDING AN EFFECTIVE DATE.

WHEREAS, the City Council of the City of Denton, Texas ("City") ordered a special election to be held in the City on November 8, 2022 for the for the propositions of (A) determining whether City Council Member Alison Maguire shall be removed from District 4 Seat of the City Council by Recall and (B) amendment to the Denton Code of Ordinances, creating Chapter 21, Article V to be titled "*Marijuana Enforcement*"; and

WHEREAS, the election officers who held the election have duly made the returns of the result thereof, and these returns have been duly delivered to the City Council; and

WHEREAS, the meeting at which this ordinance was passed was open to the public, and public notice of the time, place, and purpose of said meeting was given, all as required by the Texas Government Code, Chapter 551; NOW THEREFORE;

THE CITY COUNCIL OF THE CITY OF DENTON HEREBY ORDAINS:

SECTION 1. The City Council officially finds and determines the election held on November 8, 2022 was duly ordered, proper notice of this election was duly given, proper election officers were duly appointed prior to this election, this election was duly held, the City has complied with the Federal Voting Rights Act and the Texas Election Code, the returns of the result of this election have been made and delivered to the Council, and the City Council has duly canvassed these returns, all in accordance with the law and the ordinance calling this election.

SECTION 2. The official returns of the election officials having been opened, examined, and canvassed and the City Council officially finds and determines 16,270 votes were cast at this election on the submitted PROPOSITION A, and 46,677 votes were cast at this election on the submitted PROPOSITION B by the residents, qualified electors of the City, who voted at the election and that the votes cast for such propositions on the ballot for the election were as follows:

EARLY/ABSENTEE VOTING:

**CITY OF DENTON PROPOSITION A**

Shall Alison Maguire be removed from the City Council by Recall?

FOR 6,836 AGAINST 3,782

**CITY OF DENTON PROPOSITION B**

Shall an initiative ordinance be approved to eliminate low-level marijuana enforcement?

FOR 24,099 AGAINST 10,213

## CITYOF DENTON PROPOSITION A

Shall Alison Maguire be removed from the City Council by Recall?

FOR 1,847 AGAINST 1,116

## CITY OF DENTON PROPOSITION B

Shall an initiative ordinance be approved to eliminate low-level marijuana enforcement?

FOR 8,574 AGAINST 2,915

TOTAL VOTES CAST:

## CITY OF DENTON PROPOSITION A

Shall Alison Maguire be removed from the City Council by Recall?

FOR 8,683 AGAINST 4,898

## CITY OF DENTON PROPOSITION B

Shall an initiative ordinance be approved to eliminate low-level marijuana enforcement?

FOR 32,673 AGAINST 13,128

SECTION 3. The City Council officially declares the result of said special elections to be that PROPOSITIONS A and B so submitted HAVE received a favorable majority vote in all respects and have CARRIED. The City Council finds and declares that Councilmember Alison Maguire is removed from office by Recall. In accordance with Section 2 of Ordinance No. 22-1198, which is incorporated herein by reference and made a part of this ordinance for all purposes, Chapter 21, Article V of the City Code, to be titled "Marijuana Enforcement" has been approved and adopted by a majority of the qualified voters of the City of Denton, and the City Secretary is hereby directed to enter a full copy of Ordinance No. 22-1198 in the official minutes of this meeting and to codify Section 2 of Ordinance No. 22-1198 in the Denton Code of Ordinance.

SECTION 4. The City Council has found and determined the meeting at which this ordinance is considered is open to the public and that notice thereof was given in accordance with provisions of the Texas open meetings law, Texas Government Code Chapter 551, as amended, and a quorum of the City Council was present.

SECTION 5. This ordinance shall become effective immediately upon its passage and approval.

The motion to approve this ordinance was made by _Gerard Hudspeth_ and seconded by _Jesse Davis_; the ordinance was passed and approved by the following vote [ 6 - 0 ]:

|  | Aye | Nay | Abstain | Absent |
|---|---|---|---|---|
| Mayor Gerard Hudspeth: | ✓ | | | |
| Vicki Byrd, District 1: | ✓ | | | |
| Brian Beck, District 2: | ✓ | | | |
| Jesse Davis, District 3: | ✓ | | | |
| Alison Maguire, District 4: | | | ✓ | |
| Brandon Chase McGee, At Large Place 5: | ✓ | | | |
| Chris Watts, At Large Place 6: | ✓ | | | |

PASSED AND APPROVED this the _22nd_ day of _November_, 2022.

GERARD HUDSPETH, MAYOR

ATTEST:
ROSA RIOS, CITY SECRETARY

BY: _____

APPROVED AS TO LEGAL FORM:
MACK REINWAND, CITY ATTORNEY

BY: _____

ORDENANZA N.° <u>22-2447</u>

UNA ORDENANZA DE LA CIUDAD DE DENTON PARA ESCRUTAR RESULTADOS ELECTORALES Y DECLARAR LOS RESULTADOS DE LA ELECCIÓN ESPECIAL CELEBRADA EL 8 DE NOVIEMBRE DE 2022; Y QUE DISPONE UNA FECHA DE ENTRADA EN VIGOR.

POR CUANTO, el Concejo Municipal de la Ciudad de Denton, Texas ("Ciudad"), ordenó la celebración de una elección especial en la Ciudad el día 8 de noviembre de 2022 para las siguientes propuestas: (A) determinar si la concejala Alison Maguire será destituida del escaño del Distrito 4 del Concejo Municipal mediante revocación, y (B) modificar el Código de Ordenanzas de Denton creando el Capítulo 21, artículo V, que se denominará "*Imposición respecto a la marihuana*"; y

POR CUANTO, los funcionarios electorales que celebraron la elección han formulado debidamente las declaraciones de los resultados de las mismas, y dichas declaraciones han sido debidamente entregadas al Concejo Municipal; y

POR CUANTO, la reunión en la que se aprobó esta ordenanza estuvo abierta al público, y se dio aviso público de la hora, el lugar y el propósito de dicha reunión, todo como lo exige el Capítulo 551 del Código de Gobierno de Texas; EN VIRTUD DE LO CUAL;

EL CONCEJO MUNICIPAL DE LA CIUDAD DE DENTON ORDENA LO SIGUIENTE:

SECCIÓN 1. El Concejo Municipal constata y determina de manera oficial que la elección celebrada el día 8 de noviembre de 2022 se ordenó debidamente, se dio aviso oportuno de esta elección, se nombraron adecuadamente funcionarios electorales idóneos antes de esta elección, esta elección se celebró como corresponde, la Ciudad ha acatado tanto la Ley Federal de Derecho al Voto como el Código Electoral de Texas, se formularon y entregaron las declaraciones del resultado de esta elección al Concejo, y el Concejo Municipal ha escrutado debidamente estas declaraciones, todo de conformidad con la ley y la ordenanza que convoca a esta elección.

SECCIÓN 2. Habiéndose abierto, examinado y escrutado las declaraciones oficiales de los funcionarios electorales, y el Concejo Municipal constata y determina de manera oficial que se emitieron 16,270 votos en esta elección sobre la PROPUESTA A presentada, y que se emitieron 46,677 votos en esta elección sobre la PROPUESTA B presentada por parte de los residentes, electores calificados de la Ciudad, que votaron en la elección y que los votos emitidos para dichas propuestas en la boleta electoral para la elección fueron los siguientes:

VOTACIÓN ANTICIPADA/A DISTANCIA:

**CIUDAD DE DENTON PROPUESTA A**

¿Debe destituirse a Alison Maguire del Concejo Municipal mediante revocación?

A FAVOR <u>6,836</u>   EN CONTRA <u>3,782</u>

**CIUDAD DE DENTON PROPUESTA B**

¿Se debe aprobar una ordenanza de iniciativa para eliminar la imposición de delitos de bajo nivel relacionados con la marihuana?

A FAVOR 24,099    EN CONTRA 10,213

VOTACIÓN EN EL DÍA DE LA ELECCIÓN:

**CIUDAD DE DENTON PROPUESTA A**

¿Debe destituirse a Alison Maguire del Concejo Municipal mediante revocación?

A FAVOR 1,847    EN CONTRA 1,116

**CIUDAD DE DENTON PROPUESTA B**

¿Se debe aprobar una ordenanza de iniciativa para eliminar la imposición de delitos de bajo nivel relacionados con la marihuana?

A FAVOR 8,574    EN CONTRA 2,915

TOTAL DE VOTOS EMITIDOS:

**CIUDAD DE DENTON PROPUESTA A**

¿Debe destituirse a Alison Maguire del Concejo Municipal mediante revocación?

A FAVOR 8,683    EN CONTRA 4,898

**CIUDAD DE DENTON PROPUESTA B**

¿Se debe aprobar una ordenanza de iniciativa para eliminar la imposición de delitos de bajo nivel relacionados con la marihuana?

A FAVOR 32,673    EN CONTRA 13,128

SECCIÓN 3. El Concejo Municipal declara de manera oficial que el resultado de dichas elecciones especiales es que LAS PROPUESTAS A y B así presentadas HAN recibido un voto mayoritario favorable en todos los aspectos y han GANADO. El Concejo Municipal constata y declara que la concejala Alison Maguire es destituida de su cargo mediante revocación. De conformidad con la Sección 2 de la Ordenanza N.° 22-1198, que se incorpora al presente documento por referencia y forma parte de esta ordenanza para todos los propósitos, se ha aprobado el Capítulo 21, Artículo V del Código de la Ciudad, que se denominará "Imposición respecto a la marihuana", y adoptado por una mayoría de los votantes calificados de la Ciudad de Denton, y por la presente se ordena a la Secretaria Municipal que ingrese una copia completa de la Ordenanza N.° 22-1198 en las actas oficiales de esta reunión y que codifique la Sección 2 de la Ordenanza N.° 22-1198 en el Código de Ordenanzas de Denton.

SECCIÓN 4. El Concejo Municipal constata y determina que la reunión en la que se considera esta ordenanza está abierta al público, y que se notificó de la misma de conformidad con las disposiciones de la Ley de Reuniones Públicas de Texas (Capítulo 551 del Código de Gobierno de Texas), con sus modificaciones, y que hubo *quorum* del Concejo Municipal.

SECCIÓN 5. Esta ordenanza entrará en vigencia inmediatamente después de su promulgación y aprobación.

La moción para aprobar esta ordenanza fue formulada por <u>Gerard Hudspeth</u> y secundada por <u>Jesse Davis</u>; la ordenanza fue promulgada y aprobada por el siguiente voto [ 6 - 0 ]:

|  | Sí | No | Abstención | Ausente |
|---|---|---|---|---|
| Gerard Hudspeth, alcalde: | ✓ | | | |
| Vicki Byrd, Distrito 1: | ✓ | | | |
| Brian Beck, Distrito 2: | ✓ | | | |
| Jesse Davis, Distrito 3: | ✓ | | | |
| Alison Maguire, Distrito 4: | | | ✓ | |
| Brandon Chase McGee, posición en general 5: | ✓ | | | |
| Chris Watts, posición en general 6: | ✓ | | | |

PROMULGADA Y APROBADA el día <u>22</u> de <u>noviembre</u> de 2022.

_____
GERARD HUDSPETH, ALCALDE

DOY FE:
ROSA RÍOS, SECRETARIA MUNICIPAL

POR: _____

APROBADO EN CUANTO A LA FORMA JURÍDICA:
MACK REINWAND, ABOGADO DE LA CIUDAD



POR: _____

# PROPOSITION A
## NOVEMBER 8, 2022 SPECIAL ELECTION

**City of Denton Dist 4 Canvass**

Run Time 10:50 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022
Page 1

**Unofficial Results**

**Registered Voters**
16277 of 27166 = 59.92%

**Precincts Reporting**
11 of 11 = 100.00%

## CITY OF DENTON PROPOSITION A

| Precinct | YES | NO | Cast Votes | Undervotes | Overvotes | Absentee Voting Ballots Cast | Early Voting Ballots Cast | Election Day Voting Ballots Cast | Total Ballots Cast | Registered Voters | Turnout Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4161 | 680 | 509 | 1,189 | 255 | 2 | 61 | 981 | 404 | 1,446 | 3,122 | 46.32% |
| 4162 | 247 | 166 | 413 | 73 | 0 | 14 | 329 | 143 | 486 | 908 | 53.52% |
| 4164 | 1,090 | 795 | 1,885 | 457 | 0 | 128 | 1,683 | 532 | 2,343 | 4,433 | 52.85% |
| 4179 | 1,046 | 750 | 1,796 | 340 | 4 | 84 | 1,482 | 575 | 2,141 | 3,706 | 57.77% |
| 4180 | 447 | 286 | 733 | 156 | 1 | 55 | 653 | 182 | 890 | 1,394 | 63.85% |
| 4181 | 1,090 | 809 | 1,899 | 427 | 2 | 131 | 1,546 | 652 | 2,329 | 4,380 | 53.17% |
| 4182 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0.00% |
| 4183 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| 4184 | 1,232 | 693 | 1,925 | 519 | 2 | 98 | 1,628 | 720 | 2,446 | 4,196 | 58.29% |
| 4185 | 1,130 | 328 | 1,458 | 167 | 1 | 129 | 1,333 | 164 | 1,626 | 1,990 | 81.71% |
| 4186 | 1,721 | 562 | 2,283 | 283 | 0 | 174 | 2,163 | 233 | 2,570 | 3,033 | 84.73% |
| **Totals** | **8,683** | **4,898** | **13,581** | **2,677** | **12** | **874** | **11,798** | **3,605** | **16,277** | **27,166** | **59.92%** |

**Denton County**

General & Special Elections

11/8/2022

Page 2

*** End of report ***

**City of Denton Dist 4 Cumulative**

**Denton County**

**Unofficial Results**

**Registered Voters**

16277 of 27166 = 59.92%

**Precincts Reporting**

11 of 11 = 100.00%

General & Special Elections

| Run Time | 10:45 AM |
|---|---|
| Run Date | 11/21/2022 |

11/8/2022

Page 1

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| YES | | 459 | 60.63% | 6,377 | 64.67% | 1,847 | 62.34% | 8,683 | 63.93% |
| NO | | 298 | 39.37% | 3,484 | 35.33% | 1,116 | 37.66% | 4,898 | 36.07% |
| | Cast Votes: | 757 | 100.00% | 9,861 | 100.00% | 2,963 | 100.00% | 13,581 | 100.00% |
| | Undervotes: | 113 | | 1,925 | | 639 | | 2,677 | |
| | Overvotes: | 0 | | 10 | | 2 | | 12 | |

*** End of report ***

# City of Denton Dist 4 Precinct

**Denton County**

General & Special Elections

11/8/2022

Page 1

Run Time 10:46 AM
Run Date 11/21/2022

**Unofficial Results**

**Registered Voters**
16277 of 27166 = 59.92%

**Precincts Reporting**
11 of 11 = 100.00%

**4161**　　　　　　　　　　　　　　　　　　1,446 of 3,122 registered voters = 46.32%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| YES | | 35 | 66.04% | 459 | 57.74% | 186 | 54.55% | 680 | 57.19% |
| NO | | 18 | 33.96% | 336 | 42.26% | 155 | 45.45% | 509 | 42.81% |
| | Cast Votes: | 53 | 100.00% | 795 | 100.00% | 341 | 100.00% | 1,189 | 100.00% |
| | Undervotes: | 8 | | 184 | | 63 | | 255 | |
| | Overvotes: | 0 | | 2 | | 0 | | 2 | |

# City of Denton Dist 4 Precinct

**Denton County**

General & Special Elections

11/8/2022

Page 2

Run Time 10:46 AM
Run Date 11/21/2022

**Unofficial Results**

**Registered Voters**
16277 of 27166 = 59.92%

**Precincts Reporting**
11 of 11 = 100.00%

**4162**　　　　　　　　　　　　　　　　　　　　486 of 908 registered voters = 53.52%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|----------------:|---|-------------:|---|--------------------:|---|------:|---|
| YES |  | 7 | 63.64% | 156 | 55.71% | 84 | 68.85% | 247 | 59.81% |
| NO |  | 4 | 36.36% | 124 | 44.29% | 38 | 31.15% | 166 | 40.19% |
| Cast Votes: |  | 11 | 100.00% | 280 | 100.00% | 122 | 100.00% | 413 | 100.00% |
| Undervotes: |  | 3 | | 49 | | 21 | | 73 | |
| Overvotes: |  | 0 | | 0 | | 0 | | 0 | |

| City of Denton Dist 4 Precinct | | Denton County | Unofficial Results |
| --- | --- | --- | --- |
| | | | **Registered Voters** |
| | | | 16277 of 27166 = 59.92% |
| | | General & Special Elections | **Precincts Reporting** |
| | | | 11 of 11 = 100.00% |
| Run Time | 10:46 AM | 11/8/2022 | |
| Run Date | 11/21/2022 | Page 3 | |

**4164**                                                2,343 of 4,433 registered voters = 52.85%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| YES | | 50 | 45.87% | 778 | 57.16% | 262 | 63.13% | | 1,090 | 57.82% |
| NO | | 59 | 54.13% | 583 | 42.84% | 153 | 36.87% | | 795 | 42.18% |
| | Cast Votes: | 109 | 100.00% | 1,361 | 100.00% | 415 | 100.00% | | 1,885 | 100.00% |
| | Undervotes: | 18 | | 322 | | 117 | | | 457 | |
| | Overvotes: | 0 | | 0 | | 0 | | | 0 | |

**City of Denton Dist 4 Precinct**

Run Time 10:46 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022
Page 4

**Unofficial Results**

**Registered Voters**
16277 of 27166 = 59.92%

**Precincts Reporting**
11 of 11 = 100.00%

**4179**  2,141 of 3,706 registered voters = 57.77%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| YES | | 45 | 58.44% | 726 | 58.50% | 275 | 57.53% | 1,046 | 58.24% |
| NO | | 32 | 41.56% | 515 | 41.50% | 203 | 42.47% | 750 | 41.76% |
| Cast Votes: | | 77 | 100.00% | 1,241 | 100.00% | 478 | 100.00% | 1,796 | 100.00% |
| Undervotes: | | 7 | | 238 | | 95 | | 340 | |
| Overvotes: | | 0 | | 3 | | 1 | | 4 | |

# City of Denton Dist 4 Precinct

**Denton County**

General & Special Elections

11/8/2022

Page 5

Run Time 10:46 AM
Run Date 11/21/2022

**Unofficial Results**

**Registered Voters**
16277 of 27166 = 59.92%

**Precincts Reporting**
11 of 11 = 100.00%

**4180**                                                                 890 of 1,394 registered voters = 63.85%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|-----------------|--|--------------|--|---------------------|--|-------|--|
| YES | | 27 | 52.94% | 327 | 61.01% | 93 | 63.70% | 447 | 60.98% |
| NO | | 24 | 47.06% | 209 | 38.99% | 53 | 36.30% | 286 | 39.02% |
| | Cast Votes: | 51 | 100.00% | 536 | 100.00% | 146 | 100.00% | 733 | 100.00% |
| | Undervotes: | 4 | | 116 | | 36 | | 156 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

| City of Denton Dist 4 Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 16277 of 27166 = 59.92% |
| | | **Precincts Reporting** |
| | General & Special Elections | 11 of 11 = 100.00% |
| Run Time 10:46 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 6 | |

**4181**                                                    2,329 of 4,380 registered voters = 53.17%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| YES | | 62 | 56.88% | 697 | 56.26% | 331 | 60.07% | 1,090 | 57.40% |
| NO | | 47 | 43.12% | 542 | 43.74% | 220 | 39.93% | 809 | 42.60% |
| | Cast Votes: | 109 | 100.00% | 1,239 | 100.00% | 551 | 100.00% | 1,899 | 100.00% |
| | Undervotes: | 21 | | 305 | | 101 | | 427 | |
| | Overvotes: | 0 | | 2 | | 0 | | 2 | |

**City of Denton Dist 4 Precinct**

**Denton County**

**Unofficial Results**

**Registered Voters**

16277 of 27166 = 59.92%

**Precincts Reporting**

11 of 11 = 100.00%

General & Special Elections

Run Time 10:46 AM
Run Date 11/21/2022

11/8/2022

Page 7

**4182**                                                    0 of 4 registered voters = 0.00%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|-----------------|------|--------------|------|---------------------|------|-------|------|
| YES | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| NO | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Cast Votes: | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Undervotes: | | 0 | | 0 | | 0 | | 0 | |
| Overvotes: | | 0 | | 0 | | 0 | | 0 | |

# City of Denton Dist 4 Precinct

**Denton County**

General & Special Elections

11/8/2022

Page 8

**Unofficial Results**

**Registered Voters**

16277 of 27166 = 59.92%

**Precincts Reporting**

11 of 11 = 100.00%

Run Time 10:46 AM
Run Date 11/21/2022

**4183**

0 of 0 registered voters = 0.00%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|-----------------|---|--------------|---|---------------------|---|-------|---|
| YES | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| NO | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Cast Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Undervotes: | 0 | | 0 | | 0 | | 0 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

**City of Denton Dist 4 Precinct**

Run Time 10:46 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 9

**Unofficial Results**

**Registered Voters**
16277 of 27166 = 59.92%

**Precincts Reporting**
11 of 11 = 100.00%

**4184**                                                     2,446 of 4,196 registered voters = 58.29%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|-----------------|--|--------------|--|---------------------|--|-------|--|
| YES | | 54 | 65.85% | 819 | 63.74% | 359 | 64.34% | 1,232 | 64.00% |
| NO | | 28 | 34.15% | 466 | 36.26% | 199 | 35.66% | 693 | 36.00% |
| | Cast Votes: | 82 | 100.00% | 1,285 | 100.00% | 558 | 100.00% | 1,925 | 100.00% |
| | Undervotes: | 16 | | 342 | | 161 | | 519 | |
| | Overvotes: | 0 | | 1 | | 1 | | 2 | |

| City of Denton Dist 4 Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 16277 of 27166 = 59.92% |
| | General & Special Elections | **Precincts Reporting** |
| | | 11 of 11 = 100.00% |
| Run Time 10:46 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 10 | |

**4185**                                                1,626 of 1,990 registered voters = 81.71%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| YES | | 75 | 65.22% | 948 | 79.33% | 107 | 72.30% | 1,130 | 77.50% |
| NO | | 40 | 34.78% | 247 | 20.67% | 41 | 27.70% | 328 | 22.50% |
| | Cast Votes: | 115 | 100.00% | 1,195 | 100.00% | 148 | 100.00% | 1,458 | 100.00% |
| | Undervotes: | 14 | | 137 | | 16 | | 167 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

| City of Denton Dist 4 Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 16277 of 27166 = 59.92% |
| | General & Special Elections | **Precincts Reporting** |
| | | 11 of 11 = 100.00% |
| Run Time 10:46 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 11 | |

**4186**                                                   2,570 of 3,033 registered voters = 84.73%

## CITY OF DENTON PROPOSITION A

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| YES | | 104 | 69.33% | 1,467 | 76.05% | 150 | 73.53% | 1,721 | 75.38% |
| NO | | 46 | 30.67% | 462 | 23.95% | 54 | 26.47% | 562 | 24.62% |
| | Cast Votes: | 150 | 100.00% | 1,929 | 100.00% | 204 | 100.00% | 2,283 | 100.00% |
| | Undervotes: | 22 | | 232 | | 29 | | 283 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

*** End of report ***

# PROPOSITION B
## NOVEMBER 8, 2022 SPECIAL ELECTION

## City of Denton Canvass

| Run Time | 10:45 AM |
|---|---|
| Run Date | 11/21/2022 |

## Denton County

General & Special Elections

11/8/2022

Page 1

## Unofficial Results

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

# CITY OF DENTON PROPOSITION B

## CITY OF DENTON PROPOSITION B

| Precinct | FOR THE ORDINANCE | AGAINST THE ORDINANCE | Cast Votes | Undervotes | Overvotes | Absentee Voting Ballots Cast | Early Voting Ballots Cast | Election Day Voting Ballots Cast | Total Ballots Cast | Registered Voters | Turnout Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1007 | 26 | 14 | 40 | 1 | 0 | 1 | 25 | 15 | 41 | 76 | 53.95% |
| 1056 | 116 | 68 | 184 | 7 | 0 | 6 | 154 | 31 | 191 | 328 | 58.23% |
| 1057 | 184 | 70 | 254 | 5 | 0 | 3 | 162 | 94 | 259 | 574 | 45.12% |
| 1058 | 880 | 297 | 1,177 | 12 | 1 | 44 | 817 | 331 | 1,192 | 2,670 | 44.64% |
| 1059 | 1,415 | 477 | 1,892 | 23 | 3 | 95 | 1,314 | 512 | 1,921 | 3,311 | 58.02% |
| 1060 | 553 | 245 | 798 | 14 | 0 | 147 | 520 | 147 | 814 | 1,354 | 60.12% |
| 1061 | 1,249 | 424 | 1,673 | 26 | 4 | 68 | 1,207 | 428 | 1,703 | 3,545 | 48.04% |
| 1062 | 1,084 | 292 | 1,376 | 20 | 0 | 81 | 985 | 330 | 1,396 | 2,540 | 54.96% |
| 1063 | 711 | 350 | 1,061 | 18 | 1 | 48 | 805 | 228 | 1,081 | 1,938 | 55.78% |
| 1064 | 1,357 | 521 | 1,878 | 15 | 0 | 129 | 1,386 | 378 | 1,893 | 2,889 | 65.52% |
| 1065 | 417 | 128 | 545 | 8 | 1 | 23 | 363 | 168 | 554 | 1,294 | 42.81% |
| 1066 | 69 | 33 | 102 | 1 | 1 | 5 | 75 | 24 | 104 | 251 | 41.43% |
| 2067 | 377 | 253 | 630 | 14 | 0 | 21 | 482 | 141 | 644 | 1,564 | 41.18% |
| 2069 | 874 | 419 | 1,293 | 15 | 0 | 44 | 895 | 371 | 1,310 | 2,517 | 52.05% |
| 2070 | 94 | 65 | 159 | 2 | 0 | 3 | 119 | 39 | 161 | 272 | 59.19% |
| 4161 | 955 | 444 | 1,399 | 41 | 6 | 61 | 981 | 404 | 1,446 | 3,122 | 46.32% |
| 4162 | 308 | 162 | 470 | 15 | 1 | 14 | 329 | 143 | 486 | 908 | 53.52% |
| 4163 | 997 | 448 | 1,445 | 25 | 3 | 28 | 1,009 | 436 | 1,473 | 3,201 | 46.02% |
| 4164 | 1,477 | 791 | 2,268 | 68 | 6 | 128 | 1,683 | 532 | 2,343 | 4,433 | 52.85% |
| 4165 | 1,815 | 500 | 2,315 | 36 | 1 | 126 | 1,577 | 653 | 2,356 | 6,387 | 36.89% |

**City of Denton Canvass**

Run Time 10:45 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 2

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

## CITY OF DENTON PROPOSITION B

| Precinct | FOR THE ORDINANCE | AGAINST THE ORDINANCE | Cast Votes | Undervotes | Overvotes | Absentee Voting Ballots Cast | Early Voting Ballots Cast | Election Day Voting Ballots Cast | Total Ballots Cast | Registered Voters | Turnout Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4166 | 698 | 247 | 945 | 8 | 0 | 38 | 648 | 267 | 953 | 2,203 | 43.26% |
| 4167 | 1,492 | 321 | 1,813 | 14 | 1 | 62 | 1,272 | 497 | 1,831 | 4,498 | 40.71% |
| 4168 | 830 | 119 | 949 | 1 | 0 | 26 | 666 | 259 | 951 | 1,902 | 50.00% |
| 4169 | 1,340 | 228 | 1,568 | 22 | 1 | 67 | 1,125 | 399 | 1,591 | 3,012 | 52.82% |
| 4170 | 1,855 | 164 | 2,019 | 22 | 1 | 11 | 1,372 | 660 | 2,043 | 5,048 | 40.47% |
| 4171 | 153 | 20 | 173 | 2 | 0 | 2 | 120 | 53 | 175 | 396 | 44.19% |
| 4172 | 732 | 68 | 800 | 9 | 0 | 5 | 527 | 277 | 809 | 2,176 | 37.18% |
| 4173 | 4 | 1 | 5 | 0 | 0 | 0 | 5 | 0 | 5 | 20 | 25.00% |
| 4174 | 699 | 55 | 754 | 10 | 0 | 5 | 488 | 271 | 764 | 2,091 | 36.54% |
| 4175 | 106 | 14 | 120 | 1 | 0 | 1 | 77 | 43 | 121 | 386 | 31.35% |
| 4176 | 1,072 | 598 | 1,670 | 23 | 4 | 135 | 1,246 | 318 | 1,699 | 2,841 | 59.80% |
| 4177 | 268 | 48 | 316 | 1 | 0 | 4 | 217 | 96 | 317 | 906 | 34.99% |
| 4178 | 783 | 194 | 977 | 14 | 2 | 37 | 670 | 286 | 993 | 2,093 | 47.44% |
| 4179 | 1,339 | 754 | 2,093 | 43 | 4 | 84 | 1,482 | 575 | 2,141 | 3,706 | 57.77% |
| 4180 | 538 | 320 | 858 | 30 | 2 | 55 | 653 | 182 | 890 | 1,394 | 63.85% |
| 4181 | 1,495 | 765 | 2,260 | 64 | 4 | 131 | 1,546 | 652 | 2,329 | 4,380 | 53.17% |
| 4182 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 4 | 0.00% |
| 4183 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0.00% |
| 4184 | 1,362 | 995 | 2,357 | 87 | 2 | 98 | 1,628 | 720 | 2,446 | 4,196 | 58.29% |
| 4185 | 786 | 804 | 1,590 | 33 | 3 | 129 | 1,333 | 164 | 1,626 | 1,990 | 81.71% |

City of Denton Canvass

Run Time 10:45 AM
Run Date 11/21/2022

Denton County

General & Special Elections

11/8/2022

Page 3

Unofficial Results

Registered Voters
46705 of 92240 = 50.63%

Precincts Reporting
45 of 45 = 100.00%

## CITY OF DENTON PROPOSITION B

| Precinct | FOR THE ORDINANCE | AGAINST THE ORDINANCE | Cast Votes | Undervotes | Overvotes | Absentee Voting Ballots Cast | Early Voting Ballots Cast | Election Day Voting Ballots Cast | Total Ballots Cast | Registered Voters | Turnout Percentage |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 4186 | 1,300 | 1,207 | 2,507 | 56 | 3 | 174 | 2,163 | 233 | 2,570 | 3,033 | 84.73% |
| 4187 | 747 | 117 | 864 | 10 | 0 | 13 | 554 | 307 | 874 | 2,377 | 36.77% |
| 4189 | 110 | 80 | 190 | 5 | 0 | 9 | 124 | 62 | 195 | 390 | 50.00% |
| 4193 | 6 | 2 | 8 | 0 | 0 | 0 | 7 | 1 | 8 | 15 | 53.33% |
| 4197 | 0 | 6 | 6 | 0 | 0 | 1 | 5 | 0 | 6 | 9 | 66.67% |
| **Totals** | **32,673** | **13,128** | **45,801** | **821** | **55** | **2,162** | **32,816** | **11,727** | **46,705** | **92,240** | **50.63%** |

## Denton County

General & Special Elections

11/8/2022

Page 4

*** End of report ***

| City of Denton Cumulative | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 1 | |

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 1,343 | 64.51% | 22,756 | 70.61% | 8,574 | 74.63% | 32,673 | 71.34% |
| AGAINST THE ORDINANCE | | 739 | 35.49% | 9,474 | 29.39% | 2,915 | 25.37% | 13,128 | 28.66% |
| | Cast Votes: | 2,082 | 100.00% | 32,230 | 100.00% | 11,489 | 100.00% | 45,801 | 100.00% |
| | Undervotes: | 57 | | 544 | | 220 | | 821 | |
| | Overvotes: | 0 | | 39 | | 16 | | 55 | |

*** End of report ***

| City of Denton Precinct | Denton County | Unofficial Results |
| --- | --- | --- |
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 1 | |

## 1007                                             41 of 76 registered voters = 53.95%

### CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 1 | 100.00% | 14 | 56.00% | 11 | 78.57% | 26 | 65.00% |
| AGAINST THE ORDINANCE | | 0 | 0.00% | 11 | 44.00% | 3 | 21.43% | 14 | 35.00% |
| | Cast Votes: | 1 | 100.00% | 25 | 100.00% | 14 | 100.00% | 40 | 100.00% |
| | Undervotes: | 0 | | 0 | | 1 | | 1 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

**City of Denton Precinct**

Run Time 10:36 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022
Page 2

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**1056**

191 of 328 registered voters = 58.23%

### CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|-----------------|--|--------------|--|---------------------|--|-------|--|
| FOR THE ORDINANCE | | 4 | 66.67% | 92 | 62.59% | 20 | 64.52% | 116 | 63.04% |
| AGAINST THE ORDINANCE | | 2 | 33.33% | 55 | 37.41% | 11 | 35.48% | 68 | 36.96% |
| Cast Votes: | | 6 | 100.00% | 147 | 100.00% | 31 | 100.00% | 184 | 100.00% |
| Undervotes: | | 0 | | 7 | | 0 | | 7 | |
| Overvotes: | | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|

**Denton County**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

General & Special Elections

11/8/2022

Page 3

Run Time 10:36 AM
Run Date 11/21/2022

**1057**                                       259 of 574 registered voters = 45.12%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 1 | 33.33% | 117 | 74.05% | 66 | 70.97% | 184 | 72.44% |
| AGAINST THE ORDINANCE | | 2 | 66.67% | 41 | 25.95% | 27 | 29.03% | 70 | 27.56% |
| | Cast Votes: | 3 | 100.00% | 158 | 100.00% | 93 | 100.00% | 254 | 100.00% |
| | Undervotes: | 0 | | 4 | | 1 | | 5 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

**City of Denton Precinct**

**Denton County**

General & Special Elections

11/8/2022

Page 4

Run Time 10:36 AM
Run Date 11/21/2022

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**1058**                                                    1,192 of 2,670 registered voters = 44.64%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 27 | 62.79% | 607 | 75.12% | 246 | 75.46% | 880 | 74.77% |
| AGAINST THE ORDINANCE | | 16 | 37.21% | 201 | 24.88% | 80 | 24.54% | 297 | 25.23% |
| | Cast Votes: | 43 | 100.00% | 808 | 100.00% | 326 | 100.00% | 1,177 | 100.00% |
| | Undervotes: | 0 | | 8 | | 4 | | 12 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|

**Denton County**

General & Special Elections

11/8/2022

Page 5

**Registered Voters**

46705 of 92240 = 50.63%

**Precincts Reporting**

45 of 45 = 100.00%

Run Time 10:36 AM
Run Date 11/21/2022

**1059**  1,921 of 3,311 registered voters = 58.02%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 56 | 62.92% | 968 | 74.58% | 391 | 77.43% | 1,415 | 74.79% |
| AGAINST THE ORDINANCE | | 33 | 37.08% | 330 | 25.42% | 114 | 22.57% | 477 | 25.21% |
| | Cast Votes: | 89 | 100.00% | 1,298 | 100.00% | 505 | 100.00% | 1,892 | 100.00% |
| | Undervotes: | 3 | | 14 | | 6 | | 23 | |
| | Overvotes: | 0 | | 2 | | 1 | | 3 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 6 | |

**1060**                                            814 of 1,354 registered voters = 60.12%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 95 | 67.86% | 352 | 68.62% | 106 | 73.10% | 553 | 69.30% |
| AGAINST THE ORDINANCE | | 45 | 32.14% | 161 | 31.38% | 39 | 26.90% | 245 | 30.70% |
| | Cast Votes: | 140 | 100.00% | 513 | 100.00% | 145 | 100.00% | 798 | 100.00% |
| | Undervotes: | 5 | | 7 | | 2 | | 14 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | | Denton County | Unofficial Results |
| --- | --- | --- | --- |
| | | | **Registered Voters** |
| | | | 46705 of 92240 = 50.63% |
| | | General & Special Elections | **Precincts Reporting** |
| | | | 45 of 45 = 100.00% |
| Run Time | 10:36 AM | 11/8/2022 | |
| Run Date | 11/21/2022 | Page 7 | |

## 1061 — 1,703 of 3,545 registered voters = 48.04%

### CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 47 | 71.21% | 875 | 73.72% | 327 | 77.86% | 1,249 | 74.66% |
| AGAINST THE ORDINANCE | | 19 | 28.79% | 312 | 26.28% | 93 | 22.14% | 424 | 25.34% |
| | Cast Votes: | 66 | 100.00% | 1,187 | 100.00% | 420 | 100.00% | 1,673 | 100.00% |
| | Undervotes: | 2 | | 18 | | 6 | | 26 | |
| | Overvotes: | 0 | | 2 | | 2 | | 4 | |

| City of Denton Precinct | Denton County | Unofficial Results |
| --- | --- | --- |
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 8 | |

**1062**                                      1,396 of 2,540 registered voters = 54.96%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 55 | 71.43% | 771 | 79.00% | 258 | 79.88% | 1,084 | 78.78% |
| AGAINST THE ORDINANCE | | 22 | 28.57% | 205 | 21.00% | 65 | 20.12% | 292 | 21.22% |
| | Cast Votes: | 77 | 100.00% | 976 | 100.00% | 323 | 100.00% | 1,376 | 100.00% |
| | Undervotes: | 4 | | 9 | | 7 | | 20 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | | Denton County | Unofficial Results |
| --- | --- | --- | --- |
| | | | **Registered Voters** |
| | | | 46705 of 92240 = 50.63% |
| | | General & Special Elections | **Precincts Reporting** |
| | | | 45 of 45 = 100.00% |
| Run Time | 10:36 AM | 11/8/2022 | |
| Run Date | 11/21/2022 | Page 9 | |

**1063**                                                          1,081 of 1,938 registered voters = 55.78%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 24 | 52.17% | 529 | 66.54% | 158 | 71.82% | 711 | 67.01% |
| AGAINST THE ORDINANCE | | 22 | 47.83% | 266 | 33.46% | 62 | 28.18% | 350 | 32.99% |
| | Cast Votes: | 46 | 100.00% | 795 | 100.00% | 220 | 100.00% | 1,061 | 100.00% |
| | Undervotes: | 1 | | 10 | | 7 | | 18 | |
| | Overvotes: | 0 | | 0 | | 1 | | 1 | |

**City of Denton Precinct**

Run Time 10:36 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 10

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**1064**

1,893 of 2,889 registered voters = 65.52%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 85 | 66.41% | 998 | 72.58% | 274 | 73.07% | 1,357 | 72.26% |
| AGAINST THE ORDINANCE | | 43 | 33.59% | 377 | 27.42% | 101 | 26.93% | 521 | 27.74% |
| Cast Votes: | | 128 | 100.00% | 1,375 | 100.00% | 375 | 100.00% | 1,878 | 100.00% |
| Undervotes: | | 1 | | 11 | | 3 | | 15 | |
| Overvotes: | | 0 | | 0 | | 0 | | 0 | |

# City of Denton Precinct

**Denton County**

General & Special Elections

11/8/2022

Page 11

Run Time 10:36 AM
Run Date 11/21/2022

## Unofficial Results

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**1065**                                                                 554 of 1,294 registered voters = 42.81%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|-----------------|---|--------------|---|---------------------|---|-------|---|
| FOR THE ORDINANCE | | 15 | 68.18% | 274 | 76.54% | 128 | 77.58% | 417 | 76.51% |
| AGAINST THE ORDINANCE | | 7 | 31.82% | 84 | 23.46% | 37 | 22.42% | 128 | 23.49% |
| | Cast Votes: | 22 | 100.00% | 358 | 100.00% | 165 | 100.00% | 545 | 100.00% |
| | Undervotes: | 1 | | 4 | | 3 | | 8 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 12 | |

**1066**  104 of 251 registered voters = 41.43%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 3 | 60.00% | 52 | 69.33% | 14 | 63.64% | 69 | 67.65% |
| AGAINST THE ORDINANCE | | 2 | 40.00% | 23 | 30.67% | 8 | 36.36% | 33 | 32.35% |
| | Cast Votes: | 5 | 100.00% | 75 | 100.00% | 22 | 100.00% | 102 | 100.00% |
| | Undervotes: | 0 | | 0 | | 1 | | 1 | |
| | Overvotes: | 0 | | 0 | | 1 | | 1 | |

| City of Denton Precinct | Denton County | Unofficial Results |
| --- | --- | --- |
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 13 | |

**2067**                                                                     644 of 1,564 registered voters = 41.18%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 9 | 42.86% | 275 | 57.89% | 93 | 69.40% | 377 | 59.84% |
| AGAINST THE ORDINANCE | | 12 | 57.14% | 200 | 42.11% | 41 | 30.60% | 253 | 40.16% |
| | Cast Votes: | 21 | 100.00% | 475 | 100.00% | 134 | 100.00% | 630 | 100.00% |
| | Undervotes: | 0 | | 7 | | 7 | | 14 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 14 | |

**2069**                                                              1,310 of 2,517 registered voters = 52.05%

### CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 29 | 69.05% | 602 | 67.87% | 243 | 66.76% | 874 | 67.59% |
| AGAINST THE ORDINANCE | | 13 | 30.95% | 285 | 32.13% | 121 | 33.24% | 419 | 32.41% |
| | Cast Votes: | 42 | 100.00% | 887 | 100.00% | 364 | 100.00% | 1,293 | 100.00% |
| | Undervotes: | 0 | | 8 | | 7 | | 15 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 15 | |

**2070**                                                          161 of 272 registered voters = 59.19%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 1 | 33.33% | 72 | 61.02% | 21 | 55.26% | 94 | 59.12% |
| AGAINST THE ORDINANCE | | 2 | 66.67% | 46 | 38.98% | 17 | 44.74% | 65 | 40.88% |
| | Cast Votes: | 3 | 100.00% | 118 | 100.00% | 38 | 100.00% | 159 | 100.00% |
| | Undervotes: | 0 | | 1 | | 1 | | 2 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 16 | |

**4161**     1,446 of 3,122 registered voters = 46.32%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 35 | 60.34% | 646 | 67.86% | 274 | 70.44% | 955 | 68.26% |
| AGAINST THE ORDINANCE | | 23 | 39.66% | 306 | 32.14% | 115 | 29.56% | 444 | 31.74% |
| | Cast Votes: | 58 | 100.00% | 952 | 100.00% | 389 | 100.00% | 1,399 | 100.00% |
| | Undervotes: | 3 | | 27 | | 11 | | 41 | |
| | Overvotes: | 0 | | 2 | | 4 | | 6 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 17 | |

**4162**                                                                486 of 908 registered voters = 53.52%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 9 | 64.29% | 205 | 64.87% | 94 | 67.14% | 308 | 65.53% |
| AGAINST THE ORDINANCE | | 5 | 35.71% | 111 | 35.13% | 46 | 32.86% | 162 | 34.47% |
| | Cast Votes: | 14 | 100.00% | 316 | 100.00% | 140 | 100.00% | 470 | 100.00% |
| | Undervotes: | 0 | | 12 | | 3 | | 15 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 18 | |

**4163**                                                   1,473 of 3,201 registered voters = 46.02%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 23 | 82.14% | 687 | 69.46% | 287 | 67.06% | 997 | 69.00% |
| AGAINST THE ORDINANCE | | 5 | 17.86% | 302 | 30.54% | 141 | 32.94% | 448 | 31.00% |
| | Cast Votes: | 28 | 100.00% | 989 | 100.00% | 428 | 100.00% | 1,445 | 100.00% |
| | Undervotes: | 0 | | 18 | | 7 | | 25 | |
| | Overvotes: | 0 | | 2 | | 1 | | 3 | |

City of Denton Precinct

Denton County

General & Special Elections

11/8/2022

Page 19

Run Time          10:36 AM
Run Date          11/21/2022

Unofficial Results

Registered Voters
46705 of 92240 = 50.63%

Precincts Reporting
45 of 45 = 100.00%

**4164**                                                    2,343 of 4,433 registered voters = 52.85%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 76 | 62.81% | 1,044 | 63.97% | 357 | 69.32% | 1,477 | 65.12% |
| AGAINST THE ORDINANCE | | 45 | 37.19% | 588 | 36.03% | 158 | 30.68% | 791 | 34.88% |
| | Cast Votes: | 121 | 100.00% | 1,632 | 100.00% | 515 | 100.00% | 2,268 | 100.00% |
| | Undervotes: | 6 | | 47 | | 15 | | 68 | |
| | Overvotes: | 0 | | 4 | | 2 | | 6 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 20 | |

**4165**                                                              2,356 of 6,387 registered voters = 36.89%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 83 | 68.60% | 1,219 | 78.65% | 513 | 79.66% | 1,815 | 78.40% |
| AGAINST THE ORDINANCE | | 38 | 31.40% | 331 | 21.35% | 131 | 20.34% | 500 | 21.60% |
| | Cast Votes: | 121 | 100.00% | 1,550 | 100.00% | 644 | 100.00% | 2,315 | 100.00% |
| | Undervotes: | 1 | | 26 | | 9 | | 36 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

**City of Denton Precinct**

Run Time 10:36 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 21

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**4166**                                                                953 of 2,203 registered voters = 43.26%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 23 | 62.16% | 486 | 75.58% | 189 | 71.32% | 698 | 73.86% |
| AGAINST THE ORDINANCE | | 14 | 37.84% | 157 | 24.42% | 76 | 28.68% | 247 | 26.14% |
| | Cast Votes: | 37 | 100.00% | 643 | 100.00% | 265 | 100.00% | 945 | 100.00% |
| | Undervotes: | 1 | | 5 | | 2 | | 8 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 22 | |

**4167**                                          1,831 of 4,498 registered voters = 40.71%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 37 | 64.91% | 1,041 | 82.55% | 414 | 83.64% | 1,492 | 82.29% |
| AGAINST THE ORDINANCE | | 20 | 35.09% | 220 | 17.45% | 81 | 16.36% | 321 | 17.71% |
| | Cast Votes: | 57 | 100.00% | 1,261 | 100.00% | 495 | 100.00% | 1,813 | 100.00% |
| | Undervotes: | 2 | | 10 | | 2 | | 14 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

| City of Denton Precinct | Denton County | Unofficial Results |
| --- | --- | --- |
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 23 | |

**4168**                                                                                     951 of 1,902 registered voters = 50.00%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 23 | 92.00% | 583 | 87.54% | 224 | 86.82% | 830 | 87.46% |
| AGAINST THE ORDINANCE | | 2 | 8.00% | 83 | 12.46% | 34 | 13.18% | 119 | 12.54% |
| | Cast Votes: | 25 | 100.00% | 666 | 100.00% | 258 | 100.00% | 949 | 100.00% |
| | Undervotes: | 0 | | 0 | | 1 | | 1 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

**City of Denton Precinct**

Run Time           10:36 AM
Run Date          11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 24

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**4169**                                    1,591 of 3,012 registered voters = 52.82%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|--------|-------|-----------------|--|--------------|--|---------------------|--|-------|--|
| FOR THE ORDINANCE | | 57 | 86.36% | 954 | 85.56% | 329 | 85.01% | 1,340 | 85.46% |
| AGAINST THE ORDINANCE | | 9 | 13.64% | 161 | 14.44% | 58 | 14.99% | 228 | 14.54% |
| | Cast Votes: | 66 | 100.00% | 1,115 | 100.00% | 387 | 100.00% | 1,568 | 100.00% |
| | Undervotes: | 1 | | 9 | | 12 | | 22 | |
| | Overvotes: | 0 | | 1 | | 0 | | 1 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|

**City of Denton Precinct**

**Denton County**

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

General & Special Elections

11/8/2022

Page 25

| Run Time | 10:36 AM |
|---|---|
| Run Date | 11/21/2022 |

**4170**                                        2,043 of 5,048 registered voters = 40.47%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 8 | 80.00% | 1,249 | 92.18% | 598 | 91.44% | 1,855 | 91.88% |
| AGAINST THE ORDINANCE | | 2 | 20.00% | 106 | 7.82% | 56 | 8.56% | 164 | 8.12% |
| | Cast Votes: | 10 | 100.00% | 1,355 | 100.00% | 654 | 100.00% | 2,019 | 100.00% |
| | Undervotes: | 1 | | 16 | | 5 | | 22 | |
| | Overvotes: | 0 | | 0 | | 1 | | 1 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 26 | |

**4171**                                                                 175 of 396 registered voters = 44.19%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 2 | 100.00% | 104 | 87.39% | 47 | 90.38% | 153 | 88.44% |
| AGAINST THE ORDINANCE | | 0 | 0.00% | 15 | 12.61% | 5 | 9.62% | 20 | 11.56% |
| | Cast Votes: | 2 | 100.00% | 119 | 100.00% | 52 | 100.00% | 173 | 100.00% |
| | Undervotes: | 0 | | 1 | | 1 | | 2 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

**City of Denton Precinct**

Run Time 10:36 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 27

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**4172**                                              809 of 2,176 registered voters = 37.18%

**CITY OF DENTON PROPOSITION B**

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 4 | 100.00% | 481 | 92.15% | 247 | 90.15% | 732 | 91.50% |
| AGAINST THE ORDINANCE | | 0 | 0.00% | 41 | 7.85% | 27 | 9.85% | 68 | 8.50% |
| Cast Votes: | | 4 | 100.00% | 522 | 100.00% | 274 | 100.00% | 800 | 100.00% |
| Undervotes: | | 1 | | 5 | | 3 | | 9 | |
| Overvotes: | | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 28 | |

**4173**                                                      5 of 20 registered voters = 25.00%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 0 | 0.00% | 4 | 80.00% | 0 | 0.00% | 4 | 80.00% |
| AGAINST THE ORDINANCE | | 0 | 0.00% | 1 | 20.00% | 0 | 0.00% | 1 | 20.00% |
| | Cast Votes: | 0 | 0.00% | 5 | 100.00% | 0 | 0.00% | 5 | 100.00% |
| | Undervotes: | 0 | | 0 | | 0 | | 0 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|

**Denton County**

General & Special Elections

11/8/2022

Page 29

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

Run Time 10:36 AM
Run Date 11/21/2022

**4174**                                              764 of 2,091 registered voters = 36.54%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 4 | 80.00% | 449 | 93.54% | 246 | 91.45% | 699 | 92.71% |
| AGAINST THE ORDINANCE | | 1 | 20.00% | 31 | 6.46% | 23 | 8.55% | 55 | 7.29% |
| | Cast Votes: | 5 | 100.00% | 480 | 100.00% | 269 | 100.00% | 754 | 100.00% |
| | Undervotes: | 0 | | 8 | | 2 | | 10 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time          10:36 AM | 11/8/2022 | |
| Run Date          11/21/2022 | Page 30 | |

**4175**                                                                     121 of 386 registered voters = 31.35%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 0 | 0.00% | 71 | 92.21% | 35 | 83.33% | 106 | 88.33% |
| AGAINST THE ORDINANCE | | 1 | 100.00% | 6 | 7.79% | 7 | 16.67% | 14 | 11.67% |
| | Cast Votes: | 1 | 100.00% | 77 | 100.00% | 42 | 100.00% | 120 | 100.00% |
| | Undervotes: | 0 | | 0 | | 1 | | 1 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 31 | |

**4176**                                                      1,699 of 2,841 registered voters = 59.80%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 77 | 59.23% | 753 | 61.42% | 242 | 77.07% | 1,072 | 64.19% |
| AGAINST THE ORDINANCE | | 53 | 40.77% | 473 | 38.58% | 72 | 22.93% | 598 | 35.81% |
| | Cast Votes: | 130 | 100.00% | 1,226 | 100.00% | 314 | 100.00% | 1,670 | 100.00% |
| | Undervotes: | 3 | | 16 | | 4 | | 23 | |
| | Overvotes: | 0 | | 4 | | 0 | | 4 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|

**Denton County**

General & Special Elections

11/8/2022

Page 32

| | | |
|---|---|---|
| Run Time | 10:36 AM | |
| Run Date | 11/21/2022 | |

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**4177**

317 of 906 registered voters = 34.99%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 3 | 75.00% | 181 | 83.41% | 84 | 88.42% | 268 | 84.81% |
| AGAINST THE ORDINANCE | | 1 | 25.00% | 36 | 16.59% | 11 | 11.58% | 48 | 15.19% |
| | Cast Votes: | 4 | 100.00% | 217 | 100.00% | 95 | 100.00% | 316 | 100.00% |
| | Undervotes: | 0 | | 0 | | 1 | | 1 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|

**City of Denton Precinct**

**Denton County**

General & Special Elections

11/8/2022

Page 33

| Run Time | 10:36 AM |
|---|---|
| Run Date | 11/21/2022 |

**Unofficial Results**

**Registered Voters**

46705 of 92240 = 50.63%

**Precincts Reporting**

45 of 45 = 100.00%

**4178**                                                                993 of 2,093 registered voters = 47.44%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 26 | 70.27% | 540 | 81.45% | 217 | 78.34% | 783 | 80.14% |
| AGAINST THE ORDINANCE | | 11 | 29.73% | 123 | 18.55% | 60 | 21.66% | 194 | 19.86% |
| | Cast Votes: | 37 | 100.00% | 663 | 100.00% | 277 | 100.00% | 977 | 100.00% |
| | Undervotes: | 0 | | 5 | | 9 | | 14 | |
| | Overvotes: | 0 | | 2 | | 0 | | 2 | |

| City of Denton Precinct | | Denton County | Unofficial Results |
|---|---|---|---|
| | | | **Registered Voters** |
| | | | 46705 of 92240 = 50.63% |
| | | | **Precincts Reporting** |
| | | General & Special Elections | 45 of 45 = 100.00% |
| Run Time | 10:36 AM | 11/8/2022 | |
| Run Date | 11/21/2022 | Page 34 | |

**4179**                                                                     2,141 of 3,706 registered voters = 57.77%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 47 | 56.63% | 923 | 63.66% | 369 | 65.89% | 1,339 | 63.98% |
| AGAINST THE ORDINANCE | | 36 | 43.37% | 527 | 36.34% | 191 | 34.11% | 754 | 36.02% |
| | Cast Votes: | 83 | 100.00% | 1,450 | 100.00% | 560 | 100.00% | 2,093 | 100.00% |
| | Undervotes: | 1 | | 29 | | 13 | | 43 | |
| | Overvotes: | 0 | | 3 | | 1 | | 4 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 35 | |

**4180**                                          890 of 1,394 registered voters = 63.85%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 29 | 52.73% | 390 | 61.90% | 119 | 68.79% | 538 | 62.70% |
| AGAINST THE ORDINANCE | | 26 | 47.27% | 240 | 38.10% | 54 | 31.21% | 320 | 37.30% |
| | Cast Votes: | 55 | 100.00% | 630 | 100.00% | 173 | 100.00% | 858 | 100.00% |
| | Undervotes: | 0 | | 21 | | 9 | | 30 | |
| | Overvotes: | 0 | | 2 | | 0 | | 2 | |

| City of Denton Precinct | | Denton County | Unofficial Results |
| --- | --- | --- | --- |
| | | | **Registered Voters** |
| | | | 46705 of 92240 = 50.63% |
| | | General & Special Elections | **Precincts Reporting** |
| | | | 45 of 45 = 100.00% |
| Run Time | 10:36 AM | 11/8/2022 | |
| Run Date | 11/21/2022 | Page 36 | |

**4181**                                                                                 2,329 of 4,380 registered voters = 53.17%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 83 | 68.03% | 983 | 65.23% | 429 | 67.99% | 1,495 | 66.15% |
| AGAINST THE ORDINANCE | | 39 | 31.97% | 524 | 34.77% | 202 | 32.01% | 765 | 33.85% |
| | Cast Votes: | 122 | 100.00% | 1,507 | 100.00% | 631 | 100.00% | 2,260 | 100.00% |
| | Undervotes: | 8 | | 36 | | 20 | | 64 | |
| | Overvotes: | 0 | | 3 | | 1 | | 4 | |

# City of Denton Precinct

**Denton County**

General & Special Elections

11/8/2022

Page 37

| Run Time | 10:36 AM |
| Run Date | 11/21/2022 |

**Unofficial Results**

**Registered Voters**

46705 of 92240 = 50.63%

**Precincts Reporting**

45 of 45 = 100.00%

**4182**

0 of 4 registered voters = 0.00%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| AGAINST THE ORDINANCE | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Cast Votes: | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| | Undervotes: | 0 | | 0 | | 0 | | 0 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 38 | |

**4183**                                                     0 of 0 registered voters = 0.00%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| AGAINST THE ORDINANCE | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Cast Votes: | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| Undervotes: | | 0 | | 0 | | 0 | | 0 | |
| Overvotes: | | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 39 | |

**4184**                                                                            2,446 of 4,196 registered voters = 58.29%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 49 | 52.13% | 894 | 57.16% | 419 | 59.94% | 1,362 | 57.79% |
| AGAINST THE ORDINANCE | | 45 | 47.87% | 670 | 42.84% | 280 | 40.06% | 995 | 42.21% |
| | Cast Votes: | 94 | 100.00% | 1,564 | 100.00% | 699 | 100.00% | 2,357 | 100.00% |
| | Undervotes: | 4 | | 62 | | 21 | | 87 | |
| | Overvotes: | 0 | | 2 | | 0 | | 2 | |

| City of Denton Precinct | | Denton County | Unofficial Results |
|---|---|---|---|
| | | | **Registered Voters** |
| | | | 46705 of 92240 = 50.63% |
| | | General & Special Elections | **Precincts Reporting** |
| | | | 45 of 45 = 100.00% |
| Run Time | 10:36 AM | 11/8/2022 | |
| Run Date | 11/21/2022 | Page 40 | |

**4185**                                                1,626 of 1,990 registered voters = 81.71%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 83 | 65.35% | 633 | 48.58% | 70 | 43.75% | 786 | 49.43% |
| AGAINST THE ORDINANCE | | 44 | 34.65% | 670 | 51.42% | 90 | 56.25% | 804 | 50.57% |
| | Cast Votes: | 127 | 100.00% | 1,303 | 100.00% | 160 | 100.00% | 1,590 | 100.00% |
| | Undervotes: | 2 | | 27 | | 4 | | 33 | |
| | Overvotes: | 0 | | 3 | | 0 | | 3 | |

**City of Denton Precinct**

Run Time 10:36 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 41

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**4186**                                                          2,570 of 3,033 registered voters = 84.73%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 96 | 57.83% | 1,088 | 51.47% | 116 | 51.10% | 1,300 | 51.85% |
| AGAINST THE ORDINANCE | | 70 | 42.17% | 1,026 | 48.53% | 111 | 48.90% | 1,207 | 48.15% |
| | Cast Votes: | 166 | 100.00% | 2,114 | 100.00% | 227 | 100.00% | 2,507 | 100.00% |
| | Undervotes: | 6 | | 45 | | 5 | | 56 | |
| | Overvotes: | 0 | | 2 | | 1 | | 3 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 42 | |

**4187**                                                    874 of 2,377 registered voters = 36.77%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 8 | 61.54% | 478 | 87.23% | 261 | 86.14% | 747 | 86.46% |
| AGAINST THE ORDINANCE | | 5 | 38.46% | 70 | 12.77% | 42 | 13.86% | 117 | 13.54% |
| | Cast Votes: | 13 | 100.00% | 548 | 100.00% | 303 | 100.00% | 864 | 100.00% |
| | Undervotes: | 0 | | 6 | | 4 | | 10 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|

**City of Denton Precinct**

Run Time 10:36 AM
Run Date 11/21/2022

**Denton County**

General & Special Elections

11/8/2022

Page 43

**Unofficial Results**

**Registered Voters**
46705 of 92240 = 50.63%

**Precincts Reporting**
45 of 45 = 100.00%

**4189**                                                                    195 of 390 registered voters = 50.00%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 6 | 66.67% | 67 | 56.30% | 37 | 59.68% | 110 | 57.89% |
| AGAINST THE ORDINANCE | | 3 | 33.33% | 52 | 43.70% | 25 | 40.32% | 80 | 42.11% |
| | Cast Votes: | 9 | 100.00% | 119 | 100.00% | 62 | 100.00% | 190 | 100.00% |
| | Undervotes: | 0 | | 5 | | 0 | | 5 | |
| | Overvotes: | 0 | | 0 | | 0 | | 0 | |

| City of Denton Precinct | Denton County | Unofficial Results |
| --- | --- | --- |
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 44 | |

**4193**                                                                                      8 of 15 registered voters = 53.33%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| FOR THE ORDINANCE | | 0 | 0.00% | 5 | 71.43% | 1 | 100.00% | 6 | 75.00% |
| AGAINST THE ORDINANCE | | 0 | 0.00% | 2 | 28.57% | 0 | 0.00% | 2 | 25.00% |
| Cast Votes: | | 0 | 0.00% | 7 | 100.00% | 1 | 100.00% | 8 | 100.00% |
| Undervotes: | | 0 | | 0 | | 0 | | 0 | |
| Overvotes: | | 0 | | 0 | | 0 | | 0 | |

109

| City of Denton Precinct | Denton County | Unofficial Results |
|---|---|---|
| | | **Registered Voters** |
| | | 46705 of 92240 = 50.63% |
| | General & Special Elections | **Precincts Reporting** |
| | | 45 of 45 = 100.00% |
| Run Time 10:36 AM | 11/8/2022 | |
| Run Date 11/21/2022 | Page 45 | |

**4197**

6 of 9 registered voters = 66.67%

## CITY OF DENTON PROPOSITION B

| Choice | Party | Absentee Voting | | Early Voting | | Election Day Voting | | Total | |
|---|---|---|---|---|---|---|---|---|---|
| FOR THE ORDINANCE | | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% | 0 | 0.00% |
| AGAINST THE ORDINANCE | | 1 | 100.00% | 5 | 100.00% | 0 | 0.00% | 6 | 100.00% |
| Cast Votes: | | 1 | 100.00% | 5 | 100.00% | 0 | 0.00% | 6 | 100.00% |
| Undervotes: | | 0 | | 0 | | 0 | | 0 | |
| Overvotes: | | 0 | | 0 | | 0 | | 0 | |

*** End of report ***

After determining that a quorum was present, the City Council of the City of Denton, Texas convened in a Work Session on Tuesday, June 6, 2023, at 2:00 p.m. in the Council Work Session Room at City Hall, 215 E. McKinney Street, Denton, Texas.

PRESENT:     Mayor Gerard Hudspeth, Mayor Pro Tem Brian Beck and Council Members Vicki Byrd, Paul Meltzer, Brandon Chase McGee, Joe Holland, and Chris Watts

ABSENT:      None

Also present were City Manager Sara Hensley and City Attorney Mack Reinwand.

**The posted agenda noted the registration process for in-person, call-in, and public participation at this meeting. While citizen commentary received via the online registration process was not read, each member for the City Council received each online commentary as it was submitted. In-person, call-in, and online comments received are reflected in the exhibit to the minutes of this meeting**

## WORK SESSION

1. ### Citizen Comments on Consent Agenda Items

   None

2. ### Requests for clarification of agenda items listed on this agenda.

   - Clarification was requested on the following item:
     - Mayor Pro Tem Beck: Consent Items 4.D (23-1030) and 4.E (23-1142)
     - Council Member Byrd: Consent Items 4.G (23-1109)
     - Council Member Byrd: Individual Consent Item 5.A (23-1121)
     - Council Member McGee: Individual Consent Item 5.A (23-1121)

   - The following items were pulled for Individual Consideration:
     - Mayor Pro Tem Beck: Consent Items 4.F (23-931)
     - Council Member McGee: Consent Item 4.G (23-1109)

3. ### Work Session Reports

A. ID 23-424 Receive a report, hold a discussion, and give staff direction regarding Audit Project 032 - Fleet Services Operations: Fuel Card Administration. [Estimated Presentation/ Discussion Time: 30 minutes]

   The item was presented and discussion followed.

Following discussion, there was no direction provided as the item was for presentation/discussion purposes.

B.  ID 23-375 Receive a report, hold a discussion, and give staff direction regarding an update on the Wastewater Master Plan. [Estimated Presentation/Discussion Time: 45 minutes]

The item was presented and discussion followed.

Following discussion, there was no direction provided as the item was for presentation/discussion purposes.

C.  ID 23-421 Receive a report, hold a discussion, and give staff direction regarding the introduction of the Denton County Transportation Authority (DCTA) staffing updates. [Estimated Presentation/Discussion Time: 30 minutes]

The item was presented and discussion followed.

Following discussion, there was no direction provided as the item was for presentation/discussion purposes.

D.  ID 23-919 Receive a report, hold a discussion and give staff direction regarding the City of Denton and Texas Department of Transportation (TxDOT) collaboration including efforts relating to safety and planning measures.  [Estimated Presentation/Discussion Time: 30 minutes]

The item was presented and discussion followed.

Following discussion, there was no direction provided as the item was for presentation/discussion purposes.

E.  ID 23-216 Receive a report, hold a discussion, and give staff direction on pending City Council requests for: 1). Request for staff to research and prepare an Informal Staff Report (ISR) on Community Benefits Ordinances. 2). Request to bring the implementation of a Fair Chance Hiring Ordinance forward for Council consideration during the June 27 City Council meeting. 3). Request for a work session on the creation of a Public Health Official position. [Estimated Presentation/Discussion Time: 30 minutes]

The item was presented and discussion followed.

Following discussion, results were as follows:
•  ID 23-216 (1) Request for staff to research and prepare an Informal Staff Report (ISR) on Community Benefits Ordinances.
    o  Consensus for an Informal Staff Report (ISR).

- ID 23-216 (2) Request to bring the implementation of a Fair Chance Hiring Ordinance forward for Council consideration during the June 27 City Council meeting.
  - Consensus to bring forward a Fair Chance Hiring Ordinance for Council consideration during the June 27 City Council meeting.

- ID 23-216 (3) Request for a work session on the creation of a Public Health Official position.
  - Consensus for a future work session.

## CLOSED MEETING

1. The City Council convened into a Closed Meeting at 5:05 p.m. consistent with Chapter 551 of the Texas Government Code, as amended, or as otherwise allowed by law, as follows:

A. ID 23-1074 Consultation with Attorneys - Under Texas Government Code Section 551.071. Consult with the City's attorneys on the legal status, expenses, strategy and options for resolution of litigation in Cause No. 22-10794-393, styled "Alison Maguire, Keri Caruthers, and Olivia Jeffers v. Gerard Hudspeth, in his Official Capacities as Mayor of the City of Denton, Texas as Presiding Officer of the Final Canvassing Authority for the City of Denton, and as Presiding Officer of Authority Ordering Election" pending in the 393rd District Court, Denton County, Texas and litigation in Cause No. 22-4543-431, styled "Alison Maguire, Keri Caruthers, Tracy Runnels, and Emily Meisner v. Rosa Rios, in her Official Capacity as City Secretary of the City of Denton, Texas, the City of Denton, Texas, Donald Duff, in his Official Capacity as Representative of a Committee of Electors in the City of Denton, Texas; and, Frank Phillips, in his Official Capacity as Denton County Elections Administrator" pending in the 431st District Court, Denton County, Texas; where public discussion of these legal matters would conflict with the duty of the City's attorneys to the City of Denton and the Denton City Council under the Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas, or otherwise compromise the City's legal position in pending litigation. **DELIBERATED**

The closed meeting started at 5:23 p.m. and ended at 6:08 p.m. No votes or actions were taken during the closed meeting.

The work session ended at 6:08 p.m.

## REGULAR MEETING

After determining that a quorum was present, the City Council of the City of Denton, Texas convened in a Regular Meeting on Tuesday, June 6, 2023, at 6:34 p.m. in the Council Chambers at City Hall, 215 E. McKinney Street, Denton, Texas.

PRESENT:     Mayor Gerard Hudspeth, Mayor Pro Tem Brian Beck and Council Members Vicki Byrd, Paul Meltzer, Brandon Chase McGee, Joe Holland and Chris Watts

ABSENT:     None

Also present were City Manager Sara Hensley and City Attorney Mack Reinwand.

**The posted agenda noted the registration process for in-person, call-in, and public participation at this meeting. While citizen commentary received via the online registration process was not read, each member for the City Council received each online commentary as it was submitted. In-person, call-in, and online comments received are reflected in the exhibit to the minutes of this meeting**

1.  **PLEDGE OF ALLEGIANCE**

    A. U.S. Flag and B. Texas Flag

2.  **PROCLAMATIONS/PRESENTATIONS**

A.  ID 23-881 Proclamation: Elder Abuse Awareness Month
    **PRESENTED**

B.  ID 23-961 Proclamation: Waste and Recycling Workers Week
    **PRESENTED**

C.  ID 23-1145 Proclamation:  Diann Rozell Huber Day
    **PRESENTED**

3.  **PRESENTATIONS FROM MEMBERS OF THE PUBLIC**

    1)  Scheduled Citizen Reports from Members of the Public

        a.  ID 23-1158 Mr. Stephen Dillenberg regarding the practical interpretation of the US Human Capital Index Ranking: #36 overall with the most powerful armed forces and largest economy.
            **CANCELLED**

    2)  Additional Citizen Reports (Open Microphone)

        Citizen comments received are noted in Exhibit A.

4.  **CONSENT AGENDA**

The Consent Agenda consisted of Items 4.A-W. During the Work Session held earlier in the day, Item 4.F (23-931) was pulled for Individual Consideration by Mayor Pro Tem Beck, and Item 4.G (23-1109) was pulled for Individual Consideration by Council Member Chase McGee.

Mayor Pro Tem Beck moved to adopt the Consent Agenda, now consisting of Items 4.A-E and H-W. Motion seconded by Council Member McGee.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

A.   ID 23-031 Consider approval of the minutes of the May 2, 2023 Regular, May 16, 2023 Special Called, and May 16, 2023 Regular meetings.
     **APPROVED**

B.   ID 23-061 Consider nominations/appointments to the City's Boards, Commissions, and Committees: Special Citizens Bond Advisory Committee.
     **APPROVED**

     **APPOINTMENTS LISTED ON EXHIBIT B (or A if no Citizen Comments exhibit)**

C.   ID 23-774 Consider approval of a resolution of the City of Denton, Texas adopting the City of Denton's Vegetation Management Program ("VMP") to provide rules and policies necessary to manage transmission system and distribution providers' vegetation management standards to provide a safe system environment for customers and the general public to minimize tree related outages caused during high wind, snow, and ice storms, and trees losing their branches from disease or old age; and providing an effective date. The Public Utility Board recommends approval (6-0).
     **ASSIGNED RESOLUTION NO. 23-774**

D.   ID 23-1030 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, ratifying a contract and an extension thereto between the City of Denton and Akimeka, LLC, through March 31, 2024, to provide data related to Denton Municipal Electric's EV chargers in connection with a USDOE Project; and declaring an effective date.
     **ASSIGNED ORDINANCE NO. 23-1030**

E.   ID 23-1142 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing payment in an amount not to exceed Two Hundred Fifty Thousand Dollars ($250,000) pursuant to an engagement between the City of Denton and Carolyn Ahrens, Attorney at Law approved by the City Attorney on March 11, 2022, to provide legal services to the City of Denton for negotiating water rights, supply contracts, and submitting permit applications; providing for the expenditure of funds therefor; and providing an effective date.
     **ASSIGNED ORDINANCE NO. 23-1142**

H.   ID 23-1029 Consider adoption of an ordinance by the City of Denton ratifying and authorizing the City Manager, or designee, to execute and deliver an Advanced Funding Agreement with the Texas Department of Transportation (TxDOT) for bridge replacement or rehabilitation of the state system project located at Trinity Road at Cooper Creek in the City of Denton; Providing for the use of federal funds for a project of 100% funding with no local match required, in the amount of nine hundred seventy-three thousand and eighty-one

dollars ($973,081.00) for CSJ #0918-46-300; authorizing the expenditure of funds therefor; and providing an effective date.
**ASSIGNED ORDINANCE NO. 23-1029**

I. SED23-0002 Consider approval of a resolution amending the Southeast Denton Area Plan Steering Committee to add members. The Southeast Denton Area Plan is generally bounded by East McKinney Street to the north, South Bell Avenue to the west, Dallas Drive and Shady Oaks Drive to the south, and South Woodrow Lane to the east; and providing an effective date.
**ASSIGNED RESOLUTION NO. SED23-0002**

J. ID 23-998 Consider approval of a resolution of the City of Denton ratifying the submission of an application to the State of Texas, Office of the Governor, 2023 Urban Area Security Initiative (UASI) grant program funded through the US Department of Homeland Security in the amount of $73,087.86 for hazardous material detection equipment; and providing an effective date.
**ASSIGNED RESOLUTION NO. 23-998**

K. ID 23-999 Consider approval of a resolution of the City of Denton ratifying the submission of an application to the State of Texas, Office of the Governor, 2023 Urban Area Security Initiative (UASI) Law Enforcement Terrorism Prevention Activities (LETPA) grant program funded through the US Department of Homeland Security in the Amount of $66,115 for tactical communication equipment and personal protective equipment; and providing an effective date.
**ASSIGNED RESOLUTION NO. 23-999**

L. ID 23-1028 Consider approval of a resolution of the City of Denton ratifying the submission of an application to the U.S. Department of Agriculture - Forest Service Urban and Community Forestry Program in the amount not to exceed $2,000,000 for planting of trees, removal of invasive Chinese Privet, restoring native habitat, and education to the public of these activities; and providing an effective date.
**ASSIGNED RESOLUTION NO. 23-1028**

M. ID 23-1031 Consider adoption of an ordinance by the City of Denton authorizing the City Manager to execute nine (9) agreements for funding under the Denton County Transportation Reinvestment Program (TRiP), providing financial assistance to member cities for transit-supportive projects, through the Denton County Transportation Authority (DCTA) in the amount of $3,980,578 for the Fiscal Year (FY) 2022 funding period.
**ASSIGNED ORDINANCE NO. 23-1031**

N. ID 23-1055 Consider approval of a resolution of the City of Denton ratifying the submission of an application to the North Central Texas Council of Governments (NCTCOG) FY 2024 to 2025 Solid Waste Implementation Grant Program in the amount of $70,850 for a Styrofoam densifier; and providing an effective date.
**ASSIGNED RESOLUTION NO. 23-1055**

O. ID 23-1008 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Kimley-Horn and Associates, Inc., to provide permitting assistance for two (2) new Wastewater Reclamation Facilities for the Water Utilities Department; providing for the expenditure of funds therefor; and providing an effective date (RFQ 7574-028 - Professional Services Agreement for design services awarded to Kimley-Horn and Associates, Inc., in the not-to-exceed amount of $240,000.00). The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED ORDINANCE NO. 23-1008**

P. ID 23-1010 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, rejecting any and all competitive proposals under RFP 8154 for the Emily Fowler Library Remodel for the Facilities Department; and providing an effective date (RFP 8154).
**ASSIGNED ORDINANCE NO. 23-1010**

Q. ID 23-1011 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Texas Series of Lockton Companies, LLC, for property and casualty insurance brokerage services for Risk Management; providing for the expenditure of funds therefor; and providing an effective date (RFP 8203 - awarded to Texas Series of Lockton Companies, LLC, for three (3) years, with the option for two (2) additional one (1) year extensions, in the total five (5) year not-to-exceed amount of $980,000.00).
**ASSIGNED ORDINANCE NO. 23-1011**

R. ID 23-1048 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Guidehouse Inc., through the Department of Information Resources (DIR) Cooperative Purchasing Network Contract No. DIR-CPO-4947, for the JD Edwards system upgrade for the Technology Services Department; providing for the expenditure of funds therefor; and providing an effective date (File 8236 - awarded to Guidehouse Inc., in the not-to-exceed amount of $200,000.00).
**ASSIGNED ORDINANCE NO. 23-1048**

S. ID 23-1049 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Direct Packet, Inc. DBA OneVision Solutions, through the Department of Information Resources (DIR) Cooperative Purchasing Network Contract Number DIR-CPO-5088 for Technology-Based Recording and Conferencing Product and Related Services; through the Buy Board Cooperative Purchasing Network Contract 661-22 for Technology Equipment, Products, Services and Software & Contract and 644-21 for Audio Visual Equipment and Supplies; through The Interlocal Purchasing System (TIPS) Cooperative Program Contract #200105 Technology Solutions, Products and Services & Contract and #21050301 for Networking Equipment, Software, and Services; providing for the expenditure of funds therefor; and providing an effective date (File 8237 - awarded to Direct Packet, Inc. DBA OneVision

Solutions, for one (1) year, with the option for four (4) additional one (1) year extensions, in the total five (5) year not-to-exceed amount of $1,750,000.00).
**ASSIGNED ORDINANCE NO. 23-1049**

T.  ID 23-1090 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Kroll, LLC, for property appraisal services for insurance purposes for Risk Management as set forth in the contract; providing for the expenditure of funds therefor; and providing an effective date (RFQ 8197 - Professional Services Agreement for appraisal services awarded to Kroll, LLC, for three (3) years, with the option for two (2) additional one (1) year extensions, in the total five (5) year not-to-exceed amount of $114,000.00).
**ASSIGNED ORDINANCE NO. 23-1090**

U.  ID 23-1092 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to authorize the spend for an insurance binder to Archer Contingent Energy Risk, LLC, for forced outage insurance for the Denton Energy Center for the Summer of 2023; providing for the expenditure of funds therefor; and providing an effective date (RFP 8254 - authorizing the spend for Power Plant Forced Outage Insurance Coverage for the Summer of 2023, and awarding such insurance binder to Archer Contingent Energy Risk, LLC, in the not-to-exceed amount of $1,050,000.00).
**ASSIGNED ORDINANCE NO. 23-1092**

V.  ID 23-1107 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute an Interlocal Cooperative Purchasing Agreement with the Town of Flower Mound, under the Texas Government Code Section 791.001, to authorize the Town of Flower Mound and the City of Denton to utilize each entities' solicited contracts for the purchasing of various goods and services; authorizing the expenditure of funds therefor; and declaring an effective date (File 8278 - award an Interlocal Cooperative Purchasing Agreement with the Town of Flower Mound).
**ASSIGNED ORDINANCE NO. 23-1107**

W.  ID 23-1161 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager, or designee, to execute and deliver an Advance Funding Agreement ("AFA") for Highway Safety Improvement Project ("HSIP") off-system between the City of Denton and the Texas Department of Transportation ("TxDOT") providing for the furnishing of traffic signal equipment for the intersections of traffic signals and pedestrian facilities at the intersections of Hickory Street and Fry Street and West Oak Street and Thomas Street in the City of Denton; providing for the expenditure of funds for a total not to exceed $120,199.00 ($34,235.30 for the direct state costs and $85,964.00 for furnishing traffic signal equipment); and providing for an effective date.
**ASSIGNED ORDINANCE NO. 23-1161**

## 5.  ITEM(S) FOR INDIVIDUAL CONSIDERATION

A.  ID 23-1121 Consider adoption of an ordinance of the City of Denton adopting Chapter 21, Article V, of the City of Denton code of ordinances, titled "Marijuana Enforcement"; providing repealer, cumulative, and severability clauses; and declaring an effective date.
**DENIED**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Citizen comments received are noted on Exhibit A.

Following discussion, Council Member Holland moved to deny the item as presented. Motion seconded by Council Member Watts.

Motion carried.

AYES (4): Mayor Hudspeth, Council Members Byrd, Holland, and Watts
NAYS (3): Mayor Pro Tem Beck, Council Members Meltzer, and McGee

The meeting was recessed for a short break at 9:12 p.m. and reconvened at 9:32 p.m.

### CONSENT ITEMS PULLED FOR INDIVIDUAL CONSIDERATION

F.  ID 23-931 Consider adoption of an ordinance of the City of Denton amending the provisions of Ch. 21 Art. 1 Sec 21.6 of the code of ordinances "Prohibited Acts" to include an offense titled "aggressive solicitation" outlining prohibited acts; providing for a severability clause; providing for a savings clause; providing for a penalty; providing for codification; and providing an effective date.
**ASSIGNED ORDINANCE NO. 23-931**

There were no online registrations or call-ins on the item.

Pulled for Individual Consideration by Mayor Pro Tem Beck.

Items 4.F (23-931) and 4.G (23-1109) were collectively read into the record, presented, and discussed, but voted on individually.

Following discussion, Mayor Hudspeth moved to adopt the item as presented. Motion seconded by Council Member Watts.

Motion carried.

AYES (4): Mayor Hudspeth, Council Members Byrd, McGee, and Watts
NAYS (3): Mayor Pro Tem Beck, Council Member Holland and Meltzer.

G. ID 23-1109 Consider adoption of an ordinance of the City of Denton amending the provisions of Ch. 16, Art. III, Sec. 16-72 to remove panhandling from the definition of soliciting; providing for a severability clause; providing for a savings clause; providing for codification; and providing an effective date.
**ASSIGNED ORDINANCE NO. 23-1109**

There were no online registrations or call-ins on the item.

Pulled for Individual Consideration by Council Member Chase-McGee.

Items 4.F (23-931) and 4.G (23-1109) were collectively read into the record, presented, and discussed, but voted on individually.

Following discussion, Mayor Pro Tem Beck moved to adopt the item as presented. Motion seconded by Council Member McGee.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

## 6. PUBLIC HEARING(S)

A. ID 23-287 Hold a public hearing inviting citizens to comment on the 2023-2027 Consolidated Plan for Housing and Community Development and 2023 Action Plan.

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

The public hearing was opened and citizen comments received are noted on Exhibit A.

With no other callers on queue, the public hearing was closed.

Note: There was no action taken as the item was only a public hearing.

## 7. ITEM(S) FOR INDIVIDUAL CONSIDERATION - CONTINUED

B. ID 23-1026 Consider approval of a resolution of the City Council of the City of Denton to appoint a director to the Board of Directors of Hunter Ranch Improvement District No. 1 of Denton County, Texas; and providing an effective date.
**ASSIGNED RESOLUTION NO. 23-1026**

There were no online registrations or call-ins on the item.

Items 7.B (23-1026) and 7.C (23-1027) were collectively read into the record, presented, and discussed, but voted on individually.

Mayor Pro Tem Beck moved to adopt the item as presented. Motion seconded by Council Member Chris Watts.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

C.   ID 23-1027 Consider approval of a resolution of the City Council of the City of Denton to appoint a director to the Board of Directors of Cole Ranch Improvement District No. 1 of Denton County, Texas; and providing an effective date.
   **ASSIGNED RESOLUTION NO. 23-1027**

There were no online registrations or call-ins on the item.

Items 7.B (23-1026) and 7.C (23-1027) were collectively read into the record, presented, and discussed, but voted on individually.

Mayor Pro Tem Beck moved to adopt the item as presented. Motion seconded by Council Member Meltzer.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

D.   ID 23-929 Consider adoption of an ordinance considering all matters incident and related to the issuance, sale and delivery of up to $80,500,000 in principal amount of "City of Denton General Obligation Refunding and Improvement Bonds, Series 2023"; authorizing the issuance of the bonds; delegating the authority to certain City officials to execute certain documents relating to the sale of the bonds; approving and authorizing instruments and procedures relating to said bonds; enacting other provisions relating to the subject; and providing an effective date. The Public Utilities Board recommends approval (6-0).
   **ASSIGNED ORDINANCE NO. 23-929**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member Meltzer moved to adopt the item as presented. Motion seconded by Council Member Watts.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

E.  ID 23-930 Consider adoption of an ordinance considering all matters incident and related to the issuance, sale and delivery of up to $158,500,000 in principal amount of "City of Denton Certificates of Obligation, Series 2023"; authorizing the issuance of the certificates; delegating the authority to certain city officials to execute certain documents relating to the sale of the certificates; approving and authorizing instruments and procedures relating to said certificates; enacting other provisions relating to the subject; and providing an effective date. The Public Utilities Board recommends approval (6-0).
    **ASSIGNED ORDINANCE NO. 23-930**

There were no online registrations or call-ins on the item.

The item was presented and no discussion followed.

Council Member Watts moved to adopt the item as presented. Motion seconded by Council Member Byrd.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

F.  ID 23-1007 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a Professional Services Agreement with Kimley-Horn and Associates, Inc., to provide regulatory permitting/approval support, process evaluation, design services, bidding assistance, and construction phase services for the Pecan Creek Water Reclamation Plant (PCWRP) Expansion to 26MGD Project for the Wastewater Department; providing for the expenditure of funds therefor; and providing an effective date (RFQ 7574-027 - Professional Services Agreement for design services awarded to Kimley-Horn and Associates, Inc., in the not-to-exceed amount of $14,952,000.00). The Public Utilities Board recommends approval (6 - 0).
    **ASSIGNED ORDINANCE NO. 23-1007**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member Watts moved to adopt the item as presented. Motion seconded by Mayor Pro Tem Beck.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

G.   ID 23-1009 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Alamo Transformer Supply Company, for the purchase of refurbished, rebuilt, and salvaged transformers and transformer disposal for Denton Municipal Electric as set forth in the contract; providing for the expenditure of funds therefor; and providing an effective date (RFQ 8192 - contract for transformers awarded to Alamo Transformer Supply Company, in the three (3) year not-to-exceed amount of $10,000,000.00). The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED ORDINANCE NO. 23-1009**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Mayor Pro Tem Beck moved to adopt the item as presented. Motion seconded by Council Member Watts.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

H.   ID 23-1043 Consider adoption of an ordinance of the City of Denton, a Texas home-rule municipal corporation, authorizing the City Manager to execute a contract with Pure Technologies US Inc., for the Transmission Mains Condition Assessment for the Water Utilities Department; providing for the expenditure of funds therefor; and providing an effective date (RFP 8181 - awarded to Pure Technologies US Inc., for three (3) years, with the option for two (2) additional one (1) year extensions, in the total five (5) year not-to-exceed amount of $10,000,000.00). The Public Utilities Board recommends approval (6 - 0).
**ASSIGNED ORDINANCE NO. 23-1043**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Following discussion, Council Member Watts moved to adopt the item as presented. Motion seconded by Mayor Pro Tem Beck.

Motion carried.

AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
NAYS (0): None

I.  ID 23-489 Consider adoption of an ordinance of the City of Denton, a Texas home rule municipal corporation, amending Chapter 18, Article V, "Motor Vehicles and Traffic," of the City of Denton Code of Ordinances, to permit the operation of golf carts and off-highway vehicles on University Campus Streets adjacent to the University of North Texas (UNT) and Texas Woman's University (TWU) campus; providing a repealer clause; providing a severability clause; providing a penalty clause; providing for publication; providing codification; and providing an effective date.
    **ASSIGNED ORDINANCE NO. 23-489**

    There were no online registrations or call-ins on the item.

    The item was presented and discussion followed.

    Following discussion, Mayor Hudspeth moved to adopt the item as presented. Motion seconded by Council Member Watts.

    Motion carried.

    AYES (7): Mayor Hudspeth, Mayor Pro Tem Beck and Council Members Byrd, Meltzer, Holland, McGee, and Watts
    NAYS (0): None

8.  **CONCLUDING ITEMS**

    Council Members expressed items of interest.

With no further business, the meeting was adjourned at 10:41 p.m.

GERARD HUDSPETH
MAYOR
CITY OF DENTON, TEXAS

JESUS SALAZAR
INTERIM CITY SECRETARY
CITY OF DENTON, TEXAS

MINUTES APPROVED ON: _____June 27, 2023_____

**June 6, 2023 City Council Regular Meeting - EXHIBIT A**

**Citizen Registrations Online, Email, Phone**

| NAME | LAST | ADDRESS | CITY | AGENDA ITEM | POSITION | METHOD |
|---|---|---|---|---|---|---|
| Joseph | Adamo | 1710 Linden Dr. | Denton | 23-1121 | Supports | In-Person |
| Max | Anderson | 1708 Linden Dr. | Denton | 23-1121 | Supports | In-Person |
| Deb | Armintor | Not Provided | N/A | 23-1121 | Supports | In-Person |
| Eric | Beckwith | 4205 Aqueduct Dr. | Denton | 23-1121 | Opposed | In-Person |
| Kristine | Bray | 1204 Cordell St. | Denton | Open Mic | N/A | In-Person |
| Daryn | Briggs | 7160 Barthold Rd. | Denton | 23-1121 | Opposed | In-Person |
| Travis | Eaves | 1310 Scripture St. | Denton | 23-1121 | Supports | In-Person |
| Bret | Flores | Not Provided | N/A | 23-1121 | Supports | In-Person |
| Richard | Gladden | 1822 W. Oak St. | Denton | 23-1121 | Supports | In-Person |
| Eva | Grecco | Not Provided | N/A | 23-1121 | Supports | In-Person |
| Richard | Hayner | 3071 Olympia Dr. | Denton | 23-1121 | Supports | In-Person |
| Robert | Head | 2061 Le Mans Dr. | Carrolton | 23-1121 | Supports | In-Person |
| Willie | Hudspeth | Not Provided | Denton | Open Mic | N/A | In-Person |
| Canan | Johnson | 919 Eagle Dr., Apt 1012 | Denton | 23-1121 | Supports | In-Person |
| Mary | Kuhfeldt | 409 Magnolia St. | Denton | 23-1121 | Opposed | Submitted White Card indicating position on the issue. |
| Logan | Larson | Not Provided | Denton | 23-1121 | Supports | In-Person |
| Jeff | Laughlin | Not Provided | N/A | 23-1121 | Opposed | In-Person |
| Dillon | Luna | 3330 Eastpark | Denton | 23-1030 | Supports | eComment |
| Marshall | Lundsberg | 915 S. Welch St. | Denton | 23-1121 | Supports | In-Person |
| Aura | Masters | Not Provided | N/A | 23-1121 | Supports | In-Person |
| Walter | Mcelhinney | 517 Roberts | Denton | 23-1121 | Supports | Submitted White Card indicating position on the issue. |
| Jeannette | McKenzie | Not Provided | Denton | 23-1121 | Supports | In-Person |
| Rawley | McKinney | Not Provided | N/A | 23-1121 | Opposed | In-Person |
| Julie | Oliver | 3500 Werner Ave. | Austin | 23-1121 | Supports | In-Person |
| Jared | Panico | 2413 W Hickory St., #13-108A | Denton | 23-1121 | Supports | In-Person |
| Carson | Parker | 915 S. Welch St. | Denton | 23-1121 | Supports | In-Person |
| Louis | Pizana | Not Provided | Denton | 23-1121 | Opposed | In-Person |
| Madison | Powers | Not Provided | Denton | 23-1121 | Supports | In-Person |
| Rob | Rayner | 607 S. Locust St., #101 | Denton | 23-1121 | Opposed | Submitted White Card indicating position on the issue. |
| Kenny | Severson | 3330 Eastpark Blvd. | Denton | 23-1121 | Supports | In-Person |
| Keith | Shugart | 1326 Princton Ct. | Denton | 23-1121 | Opposed | Submitted White Card indicating position on the issue. |
| Donna | Smith | 3924 Yellowstone | Denton | 23-1121 | Opposed | In-Person |
| Nick | Stevens | 417 Amarillo St. | Denton | 23-1121 | Supports | In-Person |
| Chris | Summitt | 7160 Barthold | Denton | 23-1121 | Opposed | In-Person |
| Donald | Thornton | 8717 Swan Park Dr. | Denton | 23-1121 | Opposed | In-Person |
| Liam | Gaume-Wakefield | 411 Ponder Ave. | Denton | 23-1121 | Supports | In-Person |
| Liam | Gaume-Wakefield | 411 Ponder Ave. | Denton | 23-287 | N/A | In-Person |
| Liam | Gaume-Wakefield | 411 Ponder Ave. | Denton | Open Mic | N/A | In-Person |
| Kirby | Wallace | 100 N. Forest Prk Blvd. | Fort Worth | 23-1121 | Opposed | In-Person |
| Phillip | Young | 2041 Scripture St. | Denton | Open Mic | N/A | In-Person |
| Austin | Zamhariri | Not Provided | N/A | 23-1121 | Supports | In-Person |
| Sage | Not Provided | Not Provided | N/A | 23-1121 | Supports | In-Person |

**NOTES:**

- Information contained within this exhibit includes information regarding citizens who participated in the meeting by giving commentary during Open Microphone, Consent, Individual Consideration and Public Hearing Items, or by submitting eComments in advance.

- Full agenda, meeting video, and system transcript are available by visiting the City of Denton Public Meetings Page at www.cityofdenton.com/242/Public-Meetings-Agendas, going to the Archived Meetings Section, and selecting the applicable meeting date.

- eComments, if submitted, can be found here: https://denton-tx.granicusideas.com/meetings?scope=past

**Agenda Item 4.B (ID 23-061)**

| BOARD/COMMITTEE/COMMISSION | COUNCIL PLACE | NOMINATING AUTHORITY | MEMBER NAME | NEW TERM | STATUS & QUALIFICATION OR PREFERENCE, IF ANY |
|---|---|---|---|---|---|
| Special Citizens Bond Advisory Committee | 3 | Meltzer - City Council | Cynthia Hill | Appointment through August 21, 2023 | New |
| Special Citizens Bond Advisory Committee | BOC-4 | Bond Oversight Committee | Jeff Bowerman | Appointment through August 21, 2023 | New |
| Special Citizens Bond Advisory Committee | BOC-11 | Bond Oversight Committee | Aaron Newquist | Appointment through August 21, 2023 | New |

# EXHIBIT B

# ARTICLE IV. INITIATIVE, REFERENDUM AND RECALL

## Sec. 4.01. Power of initiative.

The electors shall have power to propose any ordinance, except an ordinance appropriating money or authorizing the levy of taxes, and to adopt or reject the proposed ordinance at the polls, such power being known as the initiative. Any initiative ordinance may be submitted to the council by a petition signed by qualified voters of the city equal in number to at least twenty-five percent of the number of votes cast at the last regular municipal election.

## Sec. 4.02. Power of referendum.

The electors shall have power to approve or reject at the polls any ordinance passed by the council or submitted by the council to a vote of the electors, except an ordinance appropriating money, issuing bonds or authorizing the levying of taxes, such power being known as the referendum. Within twenty (20) days after the enactment by the council of any ordinance which is subject to a referendum, a petition signed by qualified voters of the city equal in number to at least twenty-five percent (25%) of the number of votes cast at the last preceding regular municipal election may be filed with the city secretary requesting that any such ordinance be either repealed or submitted to a vote of the electors.

## Sec. 4.03. Form of petition, committee of petitioners.

Initiative petition papers shall contain the full text of the proposed ordinance. Referendum petition papers shall contain the full text of the ordinance which they propose to repeal. The signatures to initiative or referendum petitions need not all be appended to one paper, but to each separate petition there shall be attached a statement of the circulator thereof as provided by this section. Each signer shall sign his name in ink or indelible pencil and shall give after his name his place of residence by street and number, or other description sufficient to identify the place. There shall appear on each petition the names and addresses of the same five (5) electors, who, as a committee of the petitioners, shall be regarded as responsible for the circulation and filing of the petition. Attached to each separate petition paper there shall be an affidavit of the circulator thereof that he, and he only, personally circulated the foregoing paper, that it bears a stated number of signatures, that all the signatures were appended thereto in his presence and that he believes them to be the genuine signatures of the persons whose names they purport to be.

## Sec. 4.04. Filing, examination and certification of petitions.

All papers comprising an initiative or referendum petition shall be assembled and filed with the city secretary as one instrument. Within twenty (20) days after a petition is filed, the city secretary shall determine whether each paper of the petition bears the required affidavit of the circulator and whether the petition is signed by a sufficient number of qualified voters. After completing his examination of the petition, the city secretary shall certify the result thereof to the council at its next regular meeting. If he shall certify that the petition is insufficient he shall set forth in his certificate the particulars in which it is defective and shall at once notify the committee of the petitioners of his findings.

Denton, Texas, Code of Ordinances                                    Created: 2024-05-13 12:42:37 [EST]
(Supp. No. 34)

Page 1 of 4

### Sec. 4.05. Amendment of petitions.

An initiative or referendum petition may be amended at any time within ten (10) days after the notification of insufficiency has been sent by the city secretary, by filing a supplementary petition upon additional papers signed and filed as provided in the case of an original petition. The city secretary shall within five (5) days after such an amendment is filed, examine the amended petition and, if the petition is still insufficient, he shall file his certificate to that effect in his office and notify the committee of the petitioners of his findings and no further action shall be had on such insufficient petition. The findings of the insufficiency of a petition shall not prejudice the filing of a new petition for the same purpose.

### Sec. 4.06. Effect of certification of referendum petition.

When a referendum petition, or amended petition as defined in section 4.05 of this article, has been certified as sufficient by the city secretary, the ordinance specified in the petition shall not go into effect, or further action thereunder shall be suspended if it shall have gone into effect, until and unless approved by the electors as hereinafter provided.

### Sec. 4.07. Consideration by council.

Whenever the council receives a certified initiative or referendum petition from the city secretary, it shall proceed at once to consider such petition. A proposed initiative ordinance shall be read and provision shall be made for a public hearing upon the proposed ordinance. The council shall take final action on the ordinance within sixty (60) days after the date on which such ordinance was certified to the council by the city secretary. A referred ordinance shall be reconsidered by the council and its final vote upon such reconsideration shall be upon the question, "Shall the ordinance specified in the referendum petition be repealed?"

### Sec. 4.08. Submission of electors.

If the council shall fail to pass an ordinance proposed by initiative petition, or shall pass it in a form different from that set forth in the petition therefor, or if the council shall fail to repeal a referred ordinance, the proposed or referred ordinance shall be submitted to the electors not less than thirty (30) days nor more than sixty (60) days from the date the council takes its final vote thereon. If no regular election is to be held within such period the council shall provide for a special election.

### Sec. 4.09. Form of ballot for initiated and referred ordinances.

Ordinances submitted to a vote of the electors in accordance with the initiative and referendum provisions of this charter shall be submitted by ballot title, which shall be prepared in all cases by the city attorney. The ballot title may be different from the legal title of any such initiated or referred ordinance and shall be a clear, concise statement, without argument or prejudice, descriptive of the substance of such ordinance. If a paper ballot is used it shall have below the ballot title the following propositions, one above the other, in the order indicated: "FOR THE ORDINANCE" and "AGAINST THE ORDINANCE." Any number of ordinances may be voted on at the same election and may be submitted on the same ballot, but any paper ballot used for voting thereon shall be for that purpose only. If voting machines are used, the ballot title shall have below it the same two (2) propositions, one above the other or one preceding the other in the order indicated, and the elector shall be given an opportunity to vote for or against the ordinance.

## Sec. 4.10. Results of election, publication.

(a)  If a majority of the electors voting on a proposed initiative ordinance shall vote in favor thereof, it shall thereupon be an ordinance of the city. A referred ordinance which is not approved by a majority of the electors voting thereon shall thereupon be deemed repealed.

(b)  Initiative ordinances adopted and referendum ordinances approved by the electors shall be published, and may be amended or repealed by the council in the same manner as other ordinances.

## Sec. 4.11. Recall of councilmen.

Any member of the city council may be removed from office by a recall election.

## Sec. 4.12. Recall petition, committee of petitioners.

Recall petition papers shall contain the name of the councilman (or names of the councilmen) whose removal is sought, and a clear and concise statement of the grounds for his (or their) removal. There shall appear at the head of each petition the names and addresses of five electors, who, as a committee of the petitioners shall be regarded as responsible for the circulation and filing of the petition. Each signer of any petition paper shall sign his name in ink or indelible pencil and give after his name his place of residence by street and number, or other description sufficient to identify the place, and the date his signature was affixed. No signature to such petition shall remain effective or be counted which was placed thereon more than forty-five (45) days prior to the filing of such petition with the city secretary. The signatures to a recall petition need not all be appended to one paper, but to each separate petition there shall be attached an affidavit of the circulator thereof that he, and he only, personally circulated the foregoing paper, that it bears a stated number of signatures, that all signatures were appended thereto in his presence and that he believes them to be the genuine signatures of the persons whose names they purport to be.

## Sec. 4.13. Filing and certification of petitions, recall election.

(a)  All papers comprising a recall petition shall be assembled and filed with the city secretary as one instrument. Within seven (7) days after a petition is filed, the city secretary shall determine whether each paper bears the names of five (5) electors who constitute a committee of the petitioners, and the required affidavit of the circulator thereof, and whether the petition is signed by qualified voters of the constituency of the councilmember whose removal is sought equal in number to at least twenty-five (25) percent of the number of the votes cast for that councilmember and all of his opponents in the last preceding general municipal election in which he was a candidate. As used herein "constituency" shall mean the qualified voters eligible to vote for the councilmember whose removal is sought, either by geographical district or at large, as the case may be.

(b)  If the city secretary finds the petition insufficient he shall return it to the committee of the petitioners, without prejudice, however, to the filing of a new petition based upon new and different grounds, but not upon the same grounds. If the city secretary finds the petition sufficient and in compliance with the provisions of this Article of the Charter he shall submit the petition and his certificate of its sufficiency to the council at its next regular meeting and immediately notify the councilman whose removal is sought of such action.

(c)  If the councilman whose removal is sought does not resign within seven (7) days after such notice the city council shall thereupon order and fix a date for holding a recall election not less than thirty (30) nor more than sixty (60) days after the petition has been presented to the council. If no general election is to be held within this time the council shall provide for a special election.

(Ord. No. 79-86, § 2, 12-11-79, ratified 1-19-80)

## Sec. 4.14. Recall election ballots.

Ballots used at recall elections shall conform to the following requirements:

(a) With respect to each person whose removal is sought the question shall be submitted: "SHALL (name of person) BE REMOVED FROM THE CITY COUNCIL BY RECALL?"

(b) Immediately below each such question shall be printed the two following propositions, one above the other, in the order indicated:

"YES"

"NO"

## Sec. 4.15. Results of recall election.

If a majority of the votes cast at a recall election shall be against the recall of the councilman named on the ballot, he shall continue in office. If a majority of the votes cast at a recall election be for the recall of the councilman named on the ballot, he shall be deemed removed from office and the vacancy shall be filled in the manner prescribed in Article II, section 2.04 of this charter.

## Sec. 4.16. Limitations on recalls.

No petition shall be filed against a councilmember within six (6) months after he takes office nor against a councilmember who has been subjected to a recall election and not removed thereby until at least six (6) months after such election. Should a regular election occur during the time when a recall petition is current and should the person(s) being recalled be reelected, the recall petition shall be null and void.

(Ord. No. 79-86, § 2, 12-11-79, ratified 1-19-80)

## Sec. 4.17. District judge may order election.

Should the city council fail or refuse to order any recall election when all of the requirements for such election have been complied with by the petitioning electors in conformity with this Article of the charter, then it shall be the duty of the District Judge of Denton County, upon proper application therefor, to order such election and effectuate the provisions of this Article of the charter.

# EXHIBIT C



**City Manager's Office**

215 E. McKinney St., Denton, TX 76201 • (940) 349-8307

TO:        City Council

FROM:      Sara Hensley, City Manager

RE:        **Proposition B Implementation**

DATE:      Nov. 9, 2022

---

In yesterday's election, an ordinance relating to marijuana enforcement, Proposition B, was approved by voters. This ordinance will become effective after the election is canvassed by the City Council, currently scheduled to be considered during a Special Meeting on Friday, Nov. 18.

Implementation Considerations for Proposition B

While we continue to be dedicated to serving the community by making marijuana possession a low priority and recognize the statement expressed by voters regarding marijuana enforcement, the passage of Proposition B presents a challenge to the City regarding our ability to implement its provisions. These issues have previously been described in briefings to the City Council but can essentially be reduced to the issue of certain provisions of Proposition B being in direct conflict with state law. Chapter 370.003 of the Texas Local Government Code prohibits the City Council and Police Department from adopting a policy that does not fully enforce state and federal laws relating to drugs, including marijuana. While Proposition B imposes explicit prohibitions on the Denton Police Department's ability to enforce laws related to low-level marijuana possession, **those prohibitions are in direct conflict with, and are superseded by, the Texas Code of Criminal Procedure**, which vests police officers with the authority and duty to enforce state law, including the ability to use the smell of marijuana as probable cause to conduct a search or seizure, the right to make an arrest, and where appropriate, the right to issue a citation for the possession of marijuana or drug paraphernalia, regardless of the quantity of marijuana. **In short, the City does not have the authority to implement some provisions of Proposition B** without changes to current drug laws by Congress and the Texas Legislature.

In practice, a Denton Police Officer will continue to have the authority to enforce state laws relating to marijuana. Neither the City, the City Manager, nor the Chief of Police has the authority to direct officers to do otherwise or to discipline an officer when they are acting in accordance with state law.

Proposition B further prescribes obligations on the part of the City Manager. In Section 21-84(b) of the ordinance, the City Manager is directed, along with the Chief of Police, to "update city policies and internal operating procedures in accordance with this ordinance" including updates to the Denton Police Department General Orders. The Chief of Police cannot adopt a General Order that is in conflict with state law and I, as the City Manager to whom the Chief of Police reports, do not have the authority to direct him to act in violation of state law.

**EXHIBIT**

**1**

Copy from re:SearchTX

In addition, Proposition B prohibits the City from using City funds or personnel to request, conduct, or obtain THC testing of any cannabis-related substance. While Council has budgetary authority, this provision of Proposition B is in direct conflict with the City Charter, which expressly excludes the appropriation of money from an initiative ordinance, though the Council may choose to amend the budget at its discretion. The passage of Proposition B will also not impact the city's existing employee drug testing policies.

Public Statement Regarding Proposition B
Given the above challenges in implementation, the recognition that other law enforcement agencies are not subject to Proposition B, and the legal distinctions between marijuana and other THC derivatives, the City has drafted and released the **attached** public statement.

I am and City staff are concerned with the potential for incorrect information regarding the applicability and enforceability of Proposition B to quickly spread in the community, which could lead to a confrontation between the police and a member of the community should an officer act in accordance with State law, while the community member mistakenly believes that action violates Proposition B. Therefore, staff have shared this statement with the media and community stakeholders in order to mitigate the negative effects stemming from incorrect information.

Ongoing Approach to Marijuana Enforcement
Prior to the passing of Proposition B, the City of Denton Police Department already significantly revised its marijuana enforcement policy and practices which are enumerated in its General Orders. Between June 2021 and July 2022, of the 65 arrests that the Denton Police Department made for marijuana possession under 4 ounces, 15 of these charges accompanied other controlled substances unrelated to marijuana, and weapons were involved in 31 of these cases.

Going forward, Chief Shoemaker has affirmed that enforcement of marijuana possession will continue to be a low priority for the Denton Police Department. However, public safety requires the Police Department's ability to use the smell and possession of marijuana, regardless of the amount, as well as the possession of drug paraphernalia, as probable cause to conduct further investigation, which as noted above, may lead to more serious crimes being charged, including the possession of a firearm and crimes of violence against members of our community.

Next Steps
In accordance with Section 21-86 of the ordinance, I will report to Council within three months' time regarding its implementation.

Attachment

CC:   Mack Reinwand, City Attorney
      Frank Dixon, Assistant City Manager
      Doug Shoemaker, Chief of Police
      City Manager's Office

2

Copy from re:SearchTX

# Information on the Passing of Proposition B, Relating to Marijuana Possession

**DENTON, TX, Nov. 9, 2022** – Following the passage of Proposition B, which outlines actions to be taken regarding marijuana possession in the City of Denton, there is important information to share to help understand what this means for the Denton community. This ordinance, which was approved by voters, will become effective after the election is canvassed by the City Council, currently scheduled to be considered during a Special Meeting on Friday, Nov. 18.

## Current Practices

Prior to the passage of Proposition B, the City of Denton Police Department already significantly revised its marijuana enforcement policy and practices which are enumerated in its general orders. Between June 2021 and July 2022, of the 65 arrests that the Denton Police Department made for marijuana possession under 4 ounces, 15 of these charges accompanied other controlled substances unrelated to marijuana, and weapons were involved in 31.

The existing policy leaves officers with the discretion to continue an investigation after the discovery of marijuana if other crimes are suspected, such as driving while impaired, unlawful carrying of a weapon, or possession of a controlled substance in a drug-free zone (such as a school, park, or daycare).

"As a forward-thinking agency, marijuana possession alone has not been a priority for the Denton Police Department for several years," said Police Chief Doug Shoemaker. "This will continue to be the case. With that said, officers must maintain discretion to be able to keep our community safe from harm. When marijuana possession pairs with other crimes that affect public safety, including offenses such as driving while intoxicated or firearms violations, such acts cannot and will not be ignored."

## Implementation

With the voter approval of Proposition B, City staff has been working to determine which portions of the ordinance will be incorporated into the Police Department's General Orders, also known as department policies. This review is necessary since Chapter 370.003 of the Texas Local Government Code prohibits the City Council and Police Department from adopting a policy that does not fully enforce state and federal laws relating to drugs, including marijuana, as well as the Texas Code of Criminal Procedure which vests police officers with the authority and duty to enforce state law, including the possession of marijuana. Because portions of Proposition B conflict with and may be superseded by existing state and federal laws, some provisions of Proposition B may not be implemented without changes to those laws by the United States Congress and Texas Legislature.

**OUR CORE VALUES**

Inclusion • Collaboration • Quality Service • Strategic Focus • Fiscal Responsibility

Copy from re:SearchTX

It is also important to note, especially for students and visitors, that City policies and the Denton Police Department's General Orders do not apply to the other law enforcement agencies that have jurisdiction to enforce state law within the City of Denton. These agencies include, but are not limited to, the University of North Texas Police Department, Texas Woman's University Department of Public Safety, the Denton County Sheriff's Office, and the Texas Department of Public Safety, which all have their own policies and practices when it comes to marijuana investigations and arrests and are not subject to Proposition B.

Another important distinction is that the possession of marijuana and the possession of THC products are entirely different offenses. Per Texas state law, possessing any amount of THC, which is often the substance in edibles or vape cartridges, is a felony offense and this is not covered by Proposition B. As a result, possessing a single vape cartridge or a single edible would be classified as a felony. Also, when THC is added to any other substance, such as brownies or cookies, state law takes the total weight of the combined substances into consideration rather than the pure weight of the added THC. Meaning, per state law, if you bake a small amount of THC into a pound of brownies, you could be charged with possessing a pound of THC, a first-degree felony.

The Denton Police Department is dedicated to serving the community in a fair and safe manner. The department understands that, with the voter approval of Proposition B, voters wish to reduce punishments for low-level marijuana possession. The department is committed to continuing the innovative policies that are in place, which have resulted in a significant reduction in arrests since implemented in 2019 and updated in 2022, but must do so within the parameters of state and federal law. The Police Department will continue to assess all aspects of this ordinance, as passed by voters, to determine what may be implemented in accordance with both the current law as well as the voices of the population we serve.

###

Visit www.cityofdenton.com for more news and to stay updated.

2

Copy from re:SearchTX

# EXHIBIT D

CAUSE NO. 24-1005-481

| | | |
|---|---|---|
| THE STATE OF TEXAS,<br>    *Plaintiff,* | §<br>§<br>§ | IN THE DISTRICT COURT |
| v. | §<br>§ | |
| CITY OF DENTON; GERARD<br>HUDSPETH, Mayor of Denton;<br>BRIAN BECK, Mayor Pro Tem of<br>Denton, VICKI BYRD, PAUL<br>MELTZER, JOE HOLLAND,<br>BRANDON CHASE McGEE, and<br>CHRIS WATTS, Members of the<br>City Council of Denton; SARA<br>HENSLEY, City Manager of<br>Denton; and DOUG SHOEMAKER,<br>Chief of Police of Denton, in their<br>official capacities,<br>    *Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | DENTON COUNTY, TEXAS<br><br><br><br>481st JUDICIAL DISTRICT |

## DECLARATION OF CITY MANAGER SARA HENSLEY

1.     "My name is Sara Hensley, and I am the current City Manager for the City of Denton, Texas. I am over the age of eighteen years, am of sound mind, am competent in all respects to make this declaration, and the following facts are true and correct and within my personal knowledge as the City Manager for the City of Denton.

2.     I have more than 20 years of public service and leadership experience. Before joining the City of Denton, I served as the Parks and Recreation Director for the City of Austin and also served as Interim Assistant City Manager for two years. I led large-scale teams in multiple program and service areas and operations, served as the executive lead for several citywide cross-departmental efforts, and had frequent interaction with elected officials, community stakeholders, and residents.

3.     I joined the City of Denton in May 2019 as the Assistant City Manager, was promoted to Deputy City Manager in July 2020, then to Interim City Manager in February 2021, and was then appointed City Manager in March 2022.

4.     As City Manager, I am responsible for the implementation of Council policies and priorities. Together with my team, I provide leadership and direction to all departments of the City, coordinate the official business of the City Council, submit and administer the annual budget and capital improvement programs, and act as liaisons among the City Council, citizens, and the City organization.  My

authority as City Manager is described in Article V, Section 5.03 of the City of Denton's Charter.

5.    In the State's petition, the State cites the memo I sent to the Denton City Council on November 9, 2022, discussing the potential implementation of Proposition B. Orig. Pet.¶ 20–21. In this memo, I explained that the voters of the City of Denton had approved and passed Proposition B in the November 8, 2022 election. Exh. 1, City Manager Memo, at 1. I also state, not that the City is adopting or shall adopt a specific policy, but that the City would "not have the authority to implement some of the provisions of Proposition B." *Id.* Ultimately, I stated my conclusion that the Denton City Police Officers will continue to have authority enforce state laws relating to marijuana.

6.    This memo does not establish and is not a "policy" by which the City of Denton "will not fully enforce laws relating to drugs," as discussed in Texas Local Government Code § 370.003. As explained above, this memo discusses the issues regarding any potential implementation of Proposition B, which was approved and passed by the voters of the City of Denton on November 8, 2022, but does not set or adopt any policy for the City.

7.    Article II, Section 2-28(c) of the City of Denton Code of Ordinances does authorize me to issue policies, including any policy for how city personnel should handle marijuana related offenses. Specifically, Section 2-28(c) provides that:

> The city manager is hereby authorized to issue such administrative procedures and directives as he deems necessary to implement approved policies relating to personnel and internal operational matters. Such procedures and directives shall be contained in a manual available for inspection by city employees.

8.    I have not, as City Manager or otherwise, promulgated a policy not to fully enforce laws relating to drugs in response to or in connection with the Ordinance, and I do not plan to do so."

My                                             name                                          is
__Sara_____Lynn_____Hensley_____,
                    (First)              (Middle)            (Last)

and I am an employee of the following governmental agency: the City of Denton.

I am executing this declaration as part of my assigned duties and responsibilities.

I declare under penalty of perjury that the foregoing is true and correct.

2

Executed in Denton County, State of Texas, on the _16_ day of _May_____,
2024.

_____
Declarant

3

# EXHIBIT E

| | | |
|---|---|---|
| THE STATE OF TEXAS, *Plaintiff,* | § § § | IN THE DISTRICT COURT |
| v. | § § § | |
| CITY OF DENTON; GERARD HUDSPETH, Mayor of Denton; BRIAN BECK, Mayor Pro Tem of Denton, VICKI BYRD, PAUL MELTZER, JOE HOLLAND, BRANDON CHASE McGEE, and CHRIS WATTS, Members of the City Council of Denton; SARA HENSLEY, City Manager of Denton; and DOUG SHOEMAKER, Chief of Police of Denton, in their official capacities, *Defendants.* | § § § § § § § § § § § § § § § § | DENTON COUNTY, TEXAS 481st JUDICIAL DISTRICT |

## DECLARATION OF INTERIM CHIEF OF POLICE JESSICA ROBLEDO

1. "My name is Jessica Robledo, and I am the Interim Chief of Police for the City of Denton, Texas.

2. I am over the age of eighteen years, am of sound mind, am competent in all respects to make this declaration, and the following facts are true and correct and within my personal knowledge as the Interim Chief of Police for the City of Denton.

3. I was appointed Interim Chief of Police for the City of Denton in April 2024, replacing Acting Chief Bryan Cose, who served as Acting Chief of Police following the resignation of Chief Doug Shoemaker.

4. I have 34 years of public safety experience and last served as chief of the Pflugerville Police Department until 2021. Before that, I served as an assistant chief for the Austin Police Department until 2016.

5. As the Interim Chief of Police for the City of Denton, I have the powers, rights, duties, and jurisdiction granted to and imposed on me by the laws of the State of Texas. As Interim Chief of Police, all general orders and policies for the City of Denton Police Department must be approved by me. Furthermore, I have both the authority to publish directives and an obligation to follow the laws of the State of Texas. The City Manager, therefore, cannot abrogate my obligations to

comply with the law, and has not done so. So, to the extent that I have the authority to publish directives, I have not issued and will not issue a policy inconsistent with Section 370.003 of the Texas Local Government Code. Additionally, neither the Denton Police Department nor either of my immediate predecessors, Chief Shoemaker and Acting Chief Cose, adopted any policy or issued any directive by which the Denton Police Department would not fully enforce federal or state laws relating to drugs.

6. As the Interim Chief of Police, I also report directly to the City of Denton City Manager, Sara Hensley. Under the supervision of the Denton City Manager, I likewise have not adopted and do not intend to adopt any policy under which the police department will not fully enforce federal or state laws relating to drugs.

7. Thus, no policy of the City of Denton or of the Denton Police Department has been adopted that would change the pre-existing discretion of Denton police officers to enforce drug laws, as that pre-existing discretion was summarized by then-Chief Shoemaker in his public statement on November 9, 2022 found at Exhibit 1 of Plaintiff's Original Petition."

My name is ___Jessica___ ___J.___ ___Robledo___ ,
         (First)       (Middle)     (Last)

and I am an employee of the following governmental agency: the City of Denton.

I am executing this declaration as part of my assigned duties and responsibilities.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Denton County, State of Texas, on the _20_ day of _May_, 2024.

_____
Declarant

2

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cathy Daniels on behalf of Jose de la Fuente
Bar No. 00793605
cdaniels@lglawfirm.com
Envelope ID: 87929221
Filing Code Description: Plea to Jurisdiction
Filing Description: Defendants' Plea to the Jurisdiction
Status as of 5/21/2024 8:37 AM CST

Associated Case Party: The State Of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Johnathan Stone | 24071779 | Johnathan.Stone@oag.texas.gov | 5/20/2024 3:18:49 PM | SENT |
| Jacob Przada | 24125371 | jacob.przada@oag.texas.gov | 5/20/2024 3:18:49 PM | SENT |
| Tamera Martinez | | tamera.martinez@oag.texas.gov | 5/20/2024 3:18:49 PM | SENT |

Associated Case Party: Decriminalize Denton

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Gladden | | richscot1@hotmail.com | 5/20/2024 3:18:49 PM | SENT |

Associated Case Party: Deb Armintor

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Gladden | | richscot1@hotmail.com | 5/20/2024 3:18:49 PM | SENT |

Associated Case Party: The City Of Denton, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Amy Hoffee | | amy.hoffee@cityofdenton.com | 5/20/2024 3:18:49 PM | SENT |
| Mack Reinwand | | mack.reinwand@cityofdenton.com | 5/20/2024 3:18:49 PM | SENT |
| Jose E.de la Fuente | | jdelafuente@lglawfirm.com | 5/20/2024 3:18:49 PM | SENT |
| James F.Parker | | jparker@lglawfirm.com | 5/20/2024 3:18:49 PM | SENT |
| Gabrielle C.Smith | | gsmith@lglawfirm.com | 5/20/2024 3:18:49 PM | SENT |
| Sydney P.Sadler | | ssadler@lglawfirm.com | 5/20/2024 3:18:49 PM | SENT |

Case Contacts

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cathy Daniels on behalf of Jose de la Fuente
Bar No. 00793605
cdaniels@lglawfirm.com
Envelope ID: 87929221
Filing Code Description: Plea to Jurisdiction
Filing Description: Defendants' Plea to the Jurisdiction
Status as of 5/21/2024 8:37 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Sharon Murray | | sharon.murray@oag.texas.gov | 5/20/2024 3:18:49 PM | SENT |

Associated Case Party: Doug Shoemaker

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Devin Q.Alexander | | Devin.Alexander@cityofdenton.com | 5/20/2024 3:18:49 PM | SENT |

# TAB E



# *Tex. Gov't Code § 551.102*

\*\*\* This document is current through the 2023 Regular Session; the 1st C.S.; the 2nd C.S.; the 3rd C.S. and the 4th C.S. of the 88th Legislature; and the November 7, 2023 general election results. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis® > Government Code > Title 5 Open Government; Ethics (Subts. A — B) > Subtitle A Open Government (Chs. 551 — 570) > Chapter 551 Open Meetings (Subchs. A — G) > Subchapter E Procedures Relating to Closed Meeting (§§ 551.101 — 551.104)*

## Sec. 551.102. Requirement to Vote or Take Final Action in Open Meeting.

A final action, decision, or vote on a matter deliberated in a closed meeting under this chapter may only be made in an open meeting that is held in compliance with the notice provisions of this chapter.

## History

Enacted by *Acts 1993, 73rd Leg., ch. 268 (S.B. 248), § 1*, effective September 1, 1993.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

**End of Document**

# TAB F



## Tex. Local Gov't Code § 370.003

*** This document is current through the 2023 Regular Session; the 1st C.S.; the 2nd C.S.; the 3rd C.S. and the 4th C.S. of the 88th Legislature; and the November 7, 2023 general election results. ***

*Texas Statutes & Codes Annotated by LexisNexis® > Local Government Code > Title 11 Public Safety (Subts. A — C) > Subtitle C Public Safety Provisions Applying to More Than One Type of Local Government (Chs. 361 — 370) > Chapter 370 Miscellaneous Provisions Relating to Health and Public Safety of More Than One Type of Local Government (§§ 370.001 — 370.007)*

# Sec. 370.003. Municipal or County Policy Regarding Enforcement of Drug Laws.

The governing body of a municipality, the commissioners court of a county, or a sheriff, municipal police department, municipal attorney, county attorney, district attorney, or criminal district attorney may not adopt a policy under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law.

# History

Enacted by *Acts 1997, 75th Leg., ch. 971 (H.B. 2213), § 1*, effective September 1, 1997.

Texas Statutes & Codes Annotated by LexisNexis®

Copyright © 2025 All rights reserved.

**End of Document**

# TAB G



# Tex. R. Civ. P. 192.4

The State and Federal rules are current through February 28, 2025. Local District rules are updated periodically throughout the year.

*TX - Texas Local, State & Federal Court Rules  >  TEXAS RULES OF CIVIL PROCEDURE  >  PART II. RULES OF PRACTICE IN DISTRICT AND COUNTY COURTS  >  SECTION 9. Evidence and Discovery  >  B. DISCOVERY  >  Rule 192. Permissible Discovery: Forms and Scope; Work Product; Protective Orders; Definitions*

## Rule 192.4. Limitations on Scope of Discovery.

The discovery methods permitted by these rules should be limited by the court if it determines, on motion or on its own initiative and on reasonable notice, that:

**(a)** the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or

**(b)** the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Texas Local, State & Federal Court Rules

Copyright © 2025 All rights reserved.

**End of Document**

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Melissa Ethridge on behalf of Jose de la Fuente
Bar No. 00793605
methridge@lglawfirm.com
Envelope ID: 98658426
Filing Code Description: Original Proceeding Petition
Filing Description: Petition for Writ of Mandamus
Status as of 3/19/2025 4:53 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Laurie DiPierro | | laurie.dipierro@dentoncounty.gov | 3/19/2025 4:35:10 PM | SENT |
| Kyle Tebo | | kyle.tebo@oag.texas.gov | 3/19/2025 4:35:10 PM | SENT |
| Zachary L.Rhines | | zachary.rhines@oag.texas.gov | 3/19/2025 4:35:10 PM | SENT |
| Gabrielle C.Smith | | gsmith@lglawfirm.com | 3/19/2025 4:35:10 PM | SENT |
| Sydney Sadler | | ssadler@lglawfirm.com | 3/19/2025 4:35:10 PM | SENT |
| James F.Parker | | jparker@lglawfirm.com | 3/19/2025 4:35:10 PM | SENT |
| Jose Ede la Fuente | | jdelafuente@lglawfirm.com | 3/19/2025 4:35:10 PM | SENT |